William J. Friedman (DC Bar. No. 117050)
107 S. West St.
Alexandria, VA 22314
Tel.:  571.217.2190
Email:  pedlarfarm@gmail.com

Andrea M. Downing (DC Bar No.1005865)
Wade, Grimes, Friedman,
Meinken & Leischner, PLLC
616 North Washington Street
Alexandria, Virginia 22314
Tel.: (703) 836-9030
Fax: (703) 683-154
downing@oldtownlawyers.com

Attorneys for *Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORGANIC TRADE ASSOCIATION,<br>444 North Capitol Street, N.W., Suite 445A<br>Washington,  D.C. 20001<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>SONNY PERDUE, in his official capacity as the Secretary of the United States Department of Agriculture,<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>and<br><br>BRUCE SUMMERS, in his official capacity as Administrator of the Agricultural Marketing Service<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>        Defendants. | Civil Case No:<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT**

Plaintiff Organic Trade Association ("OTA") on behalf of itself and its members alleges:

**INTRODUCTION**

1. This is an action for declaratory and injunctive relief rising from the Defendants' failure to observe procedural mandates set forth in the Administration Procedure Act ("APA") and the Organic Foods Production Act[1] ("OFPA"). The APA imposes rulemaking due process minima on Defendants.  The OFPA imposes additional statutory duties that mandate the Secretary "consult" with and consider recommendations of an expert advisory board, the National Organic Standards Board ("NOSB"), prior to adopting, or amending by rulemaking, organic livestock standards.  Defendants failed to discharge the required duties under each statute respectively.

2. On January 19, 2017, after approximately ten years of public process and numerous public hearings and formal recommendations from the NOSB, a final rule entitled *Organic Livestock and Poultry Practices,* was published by USDA in the Federal Register. 82 Fed. Reg. at 7042-92 (January 19, 2017)("Organic Livestock Rule")

3. The Organic Livestock Rule was scheduled to take effect on March 18, 2017. *Id.* at 7042.

4. On February 9, 2017, USDA issued a stay entitled, "Final rule; delay of effective date," without prior notice or an opportunity for public comment, or any meaningful consultation with the NOSB, delaying the effective date of the Organic Livestock Rule for 60 days to May 19, 2017.  82 Fed. Reg. at 9967 (February 9, 2017) ("First Delay Rule").

---

[1] Organic Foods Production Act of 1990, Pub. L. No. 101-624, § 2102, 104 Stat. 3359 (1990) (codified at 7 U.S.C. §§ 6501-6522) ("OFPA"); 7 C.F.R. pt. 205 (National Organic Program); S. Rep. No. 101-357 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 4656, 4949.

5. On May 10, 2017, just days before the stay in the First Delay Rule dissipated, USDA issued another stay entitled, "Final rule; delay of effective date" without prior notice or an opportunity for public comment, or any meaningful consultation with the NOSB, delaying the effective date of the Organic Livestock Final Rule by an additional 180 days. 82 Fed. Reg. at 21677 (May 10, 2017) ("Second Delay Rule") (together "the Delay Rules").

6. On the same day, USDA published a *new proposed rule* styled, "Livestock and Poultry Practices Second Proposed Rule" without prior notice or an opportunity for public comment, or any consultation with the NOSB.  USDA invited comment solely on four options:

   a. Let the Organic Livestock Rule become effective on November 14, 2017;
   b. Suspend the Organic Livestock Rule indefinitely;
   c. Further delay the effective date of the Organic Livestock Rule; or
   d. Withdraw the Organic Livestock Rule.

82 Fed. Reg. at 21742 (May 10, 2017) ("the New Proposed Rule").

7. The New Proposed Rule posited no substantive inquiry, identified no deficiency in the existing administrative record made over approximately ten years, and no outstanding issue of law, fact or policy was cited.  Options (b) and (c) posit indefinite further delay.  Option (d) posits unwinding years of public process by mere fiat.  *Id.*

8. USDA continues to unlawfully withhold implementation of the Organic Livestock Rule and its serial use of fixed-period delays is materially indistinguishable from indefinite delay. The New Proposed Rule posits indefinite delay in Options (b) and (d).

9. Because the Delay Rules and the New Proposed Rule have the effect of waiving the requirements of, or impermissibly amending, the duly published and promulgated organic

standard in the Organic Livestock Rule, each is an arbitrary, capricious and *ultra vires* action under the APA and OFPA.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1361.

11. USDA's Delay Rules and New Proposed Rule are final agency actions subject to judicial review. 5 U.S.C. §§ 702, 704, 706.

12. This Court has the authority to issue the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 702 and 706; 28 U.S.C. § 1651 (writs).

13. An actual controversy exists between the parties within the meaning of 28 U.S.C. §§ 2201.

14. Venue is proper in this district because plaintiff Organic Trade Association resides and has its principal place of business in this judicial district, and because a substantial part of the acts or omissions giving rise to the claim occurred in this judicial district. 28 U.S.C. § 1391(c)(2), (e)(1).

## PARTIES AND STANDING

15. Plaintiff the Organic Trade Association ("OTA"), is a membership-based business association for organic agriculture and products in North America and is the leading voice for the organic trade in the United States, representing almost 9,500 farms and organic businesses across 50 states. OTA brings consumers, farmers and livestock growers, ingredient suppliers, processors, manufacturers, distributors, retailers, certifying agents and those in international trade--together to promote and protect the growing organic business sector. OTA's members grow, make, distribute, and certify organic products worldwide, with the majority of organic production and OTA's members

operating both organic and non-organic farms, ranches and businesses. OTA's mission is to promote and protect organic standards, ensure the due process rights of its members, and provide a unifying voice to federal and state entities. OTA's members are harmed by the failure of the Defendants to implement the Final Rule.

16. OTA conducts public and policymaker education and outreach and, when necessary, litigation. OTA actively participates before the National Organic Standards Board ("NOSB") and the National Organic Program ("NOP").

17. OTA routinely submits comments on NOSB recommendations and NOP Guidance Documents and related matters that impact organic businesses, producers, handlers, certifying agents and consumers.

18. Defendant USDA is a department in the U.S. government charged with administering the the Agricultural Marketing Service and implementing the Organic Foods Production Act;

19. Defendant Sonny Perdue ("Secretary") is sued in his official capacity as the Secretary of the United States Department of Agriculture. The Secretary is the official ultimately responsible for the USDA's activities and policies and for compliance with the OFPA and the APA.

20. Defendant Bruce Summers is sued in his official capacity as the acting Administrator of the Agricultural Marketing Service.   He is legally responsible for administering marketing programs of the USDA, including the National Organic Program.

21. Defendants are collectively referred to as "USDA."

## STATUTORY AND REGULATORY FRAMEWORK

### Organic Foods Production Act and National Organic Program

22. The Organic Food Products Act ("OFPA") was enacted in 1990 to eliminate a patchwork of state and private organic product standards that resulted in inconsistent organic product standards.

23. The purpose of the OFPA was to "facilitate interstate commerce" by "establishing national standards governing the production and marketing of certain agricultural products. . . ." in order to "assure consumers that organically produced products meet a consistent standard." 7 U.S.C. § 6501.

24. Congress took an "opt-in" approach to regulating organic products by creating "national standards" solely for those persons that voluntarily choose to produce and market products bearing an organic marketing claim. 7 U.S.C. § 6504.

25. Congress directed the USDA to implement more detailed "national standards" for agricultural products produced using organic methods. 7 U.S.C.§ 6503.

26. Congress created a non-discretionary, 15-member expert citizen-advisory board, the National Organic Standards Board ("NOSB"). 7 U.S.C. § 6518.  The NOSB conducts all meetings and voting on recommendations in public under the "Government in the Sunshine Act." 5 U.S.C. § 552(b).

27. The Senate Report states "The Committee regards this Board as an essential advisor to the Secretary on all issues concerning this bill and anticipates that many of the key decisions concerning standards will result from recommendations by this Board." Senate Committee on Agriculture, Forestry and Nutrition, *Report of the Committee on Agriculture, Forestry and Nutrition to Accompany S. 2830 Together with Additional and*

6

*Minority Views, 101st Congress,* S. REP. NO. 101–357, at 289 (1990)("Senate Organic Report") at p. 296.

28. The NOSB is composed of members appointed according to statutory criteria; the expertise necessary for each is set in the statute. 7 U.S.C. § 6518(b).

29. The NOSB: "[S]hall provide recommendations to the Secretary regarding the implementation of this chapter," 7 U.S.C. § 6518(k)(1), and [the NOSB shall] "advise the Secretary on any other aspects of the implementation of this chapter."   7 U.S.C. § 6518(a). Congress correspondingly instructed the Secretary to "consult with the National Organic Standards Board…" 7 U.S.C. § 6503(c).

30. At the time of passage of the OFPA in 1990, the Senate found a special need for additional livestock standards evaluation by the NOSB: "[T]he Committee expects that USDA, with the assistance of the National Organic Standards Board will elaborate on livestock criteria." *Senate Report* at p. 289.  "The Board shall recommend livestock standards, in addition to those specified in this bill, to the Secretary."  *Id.* at pg. 303.

31. Congress gave the NOSB specific responsibility for developing livestock standards: "[the NOSB] shall recommend to the Secretary standards in addition to those in [the Act] *for the care of livestock* to ensure that such livestock are organically produced." 7 U.S.C. § 6509(d)(2) (emphasis added).

32. The partnership created by Congress was in part to ensure continual updating of organic standards, a kind of regulatory "continual improvement" model: "The Committee is concerned that production materials and practices keep pace with our evolving knowledge of production systems."  Senate Organic Report at 297.

33. In addition to the NOSB recommendations, Congress mandated USDA to obtain

maximum public input on organic livestock standards via notice and comment

rulemaking: "[the Secretary] [S]hall hold public hearings and shall develop detailed

regulations, with notice and public comment, to guide the implementation of the

standards for livestock products…" 7 U.S.C. § 6509(g)

34. In December 2000, USDA, nearly ten years after passage of the OFPA, implemented the

National Organic Program ("NOP"). *National Organic Program*, 65 Fed. Reg. 80,548

(Dec. 21, 2000) (codified at 7 C.F.R. pt. 205) ("Program Rule")

**The Administrative Procedure Act**

35. The APA provides that "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute,

is entitled to judicial review thereof." 5 U.S.C. § 702.

36. Under the APA, an agency must publish a notice of proposed legislative rulemaking in

the Federal Register and solicit public comment before adopting or repealing a rule,

unless the rule constitutes an "interpretative rule", "general statement of policy", or "rule

of agency organization, procedure, or practice" or the agency "for good cause" finds that

notice and comment are "impracticable, unnecessary, or contrary to the public interest." 5

U.S.C. § 553.

37. The APA defines "rule making" as the "agency process for formulating, amending, or

repealing a rule." *Id*. § 551(5).

38. The APA defines "rule" to include "the whole or a part of an agency statement of general

or particular applicability and future effect designed to implement, interpret, or prescribe

law or policy." *Id*. § 551(4). 29.

39. Under the APA, a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id*. § 706(2)(A), or that is "without observance of procedure required by law," *Id.* § 706(2)(D).

40. The APA also grants reviewing courts the power to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

## FACTUAL ALLEGATIONS

41. The OFPA is the first federal law to establish a nationwide system requiring full disclosure of farming and food processing practices and use of synthetic substances by any producer or handler of agricultural products. 7 U.S.C. § 6506

42. The OFPA created a unique, collaborative, public-private partnership by mandating that the Secretary consult with the National Organic Standards Board on an ongoing basis. 7 U.S.C. §§ 6518 and 6518(e).

43. The statutory criteria for NOSB members establishes and mandates the perspectives that the Secretary must include and evaluate when considering new organic standards.  7 U.S.C. § 6518.

44. The NOSB includes four certified farmers, three certified handlers, one organic retailer, and three members that are public or consumer interest groups.  In addition to the perspectives of the parties regulated under the National Organic Program, consideration of consumer interests and expectations regarding organic standards by the Secretary is mandated. 7 U.S.C. § 6518(b).

45. The Senate Report demonstrates that the unique public-private partnership between the Secretary and the NOSB was understood and intentional. Congress recognized that

"[M]uch of this title breaks new ground for the Federal government and will require the development of a unique regulatory scheme." *Senate Organic Report*, at pg. 293

46. The USDA's *NOSB Policy Manual* states: "The unique nature of the NOSB and its relationship with the NOP, as established through OFPA, requires that the volunteer Board, which regularly receives stakeholder input through public comment, must work collaboratively with the NOP. Similarly the NOP, as required through OFPA, must consult and collaborate with the NOSB." *NOSB Policy Manual*, at Pg. 26 available

**History of Organic Livestock Standards**

47. In December 2000, at the time of promulgation of the National Organic Program, the Secretary acknowledged that many livestock production questions remained unanswered: "We anticipate that additional NOSB recommendations and public comment will be necessary for the development of space requirements." 65 Fed. Reg. at 80573. "The NOP will work with the NOSB to develop additional guidance for managing ruminant production operations." *Id.* "We will continue to explore with the NOSB specific conditions under which certain species could be temporarily confined to enhance their well-being." *Id.*

48. Shortly thereafter, the NOSB began soliciting public comments on animal welfare issues at public meetings.

49. In 2001, the NOSB recommended that the NOP issue more detailed standards for ruminant livestock. *Available at https://www.ams.usda.gov/sites/default/files/media/Recommendations on Pasture.pdf* (last visited Sept. 12, 2017)

50. In 2002, the NOSB made a recommendation for poultry including outdoor access, stating this should include open air and direct access to sunshine.  In addition, the May 2002 recommendation stated that access to soil is necessary to meet the intent of outdoor access for poultry.  *Available at*

*https://www.ams.usda.gov/sites/default/files/media/Recommended Clarification on Access to Outdoors Poultry.pdf* (last visited Sept. 12, 2017).

51. In 2002, the USDA's Agricultural Marketing Service (AMS) issued an administrative appeal decision that reversed a certifying agent's denial of certification of a poultry operation on the grounds that it had concrete "porches" but did not have "outdoor access" for its birds.  81 Fed. Reg. at 21980 (discussion of case).

52. According to the Secretary in 2016, "This Decision served to address a fact-specific enforcement issue. Some certifying agents used this appeal decision to grant certification to poultry operations using porches to provide outdoor access. Thereafter, certification and enforcement actions have remained inconsistent and contributed to wide variability in living conditions for organic poultry, as well as consumer confusion about the significance of the organic label with regard to outdoor access." 81 Fed. Reg. at 21980.

53. In March 2005, the NOSB made recommendations regarding the temporary confinement of livestock.  On October 24, 2008, AMS published a proposed rule on access to pasture for ruminant livestock, 73 Fed. Reg. 63584 and published the final rule, *Access to Pasture (Livestock)* on February 17, 2010. 75 Fed. Reg. at 7154.  According to AMS, this rule was based on several NOSB recommendations regarding ruminant livestock feed and living conditions. *Id.* at 7154-55; 7183-85.

54. Between 2009 and 2011, the NOSB issued a series of recommendations on animal welfare that incorporated prior NOSB recommendations that AMS had not addressed. A November 5, 2009 NOSB recommendation suggested revisions and additions to the livestock health care practice standards and living conditions standards.

55. On October 13, 2010, AMS published draft guidance, *Outdoor Access for Organic Poultry*, (NOP 5024) for public comment. The draft guidance advised certifying agents to use the 2002 and 2009 NOSB recommendations as the basis for certification decisions regarding outdoor access for poultry.

56. On May 6, 2011, USDA stated that, "Based upon the comments received, the NOP is not finalizing the draft guidance, "NOP 5024—Outdoor Access for Poultry". The NOP intends to initiate a separate rulemaking on the outdoor access requirements for poultry in 2011." *Available at https://www.regulations.gov/document?D=AMS-NOP-10-0048-0001* (last visited September 12, 2017).

57. In October 2010, the NOSB passed a recommendation to allow the administration of drugs in the absence of illness to prevent disease or alleviate pain stating such a change would improve the welfare of organic livestock.

58. In March 2010, the USDA's Office of Inspector General conducted an audit of the NOP and issued a report entitled, *Oversight of the National Organic Program.* The Report found inconsistent treatment of outdoor access questions by accredited certifying agents and noted that AMS "agreed that additional guidance would be beneficial." *Oversight of the National Organic Program,* OIG Audit Report No. 01601-03-Hy at pg. 22 ("OIG

Report") *Available at* https://www.usda.gov/oig/webdocs/01601-03-HY.pdf (last visited September 12, 2017).

59. On December 2, 2011, the NOSB unanimously adopted a Recommendation entitled "*Animal Welfare and Stocking Rates*" that combined its prior work on animal space requirements and handling, with its prior recommendations regarding animal welfare, handling, transport, and slaughter. *Welfare provisions are available at https://www.ams.usda.gov/sites/default/files/media/NOP%20Livestock%20Final%20Rec %20Animal%20Welfare%20and%20Stocking%20Rates.pd ; Handling provisions are available at  https://www.ams.usda.gov/sites/default/files/media/NOP Livestock Final Rec Animal Handling and Transport to Slaughter.pdf*  (last visited on September 12, 2017).

60. On March 21, 2012, the Secretary acknowledged the NOSB recommendation on animal welfare and said it would conduct assessments of its regulatory burdens and particularly how certifying agents would monitor and enforce the proposed welfare requirements. Available at https://www.ams.usda.gov/sites/default/files/media/recommendationsga.pdf (last visited September 12, 2017).

61. In total, between 1994 and 2011 NOSB made nine recommendations regarding livestock health and welfare in organic production.

62. The NOSB invited public testimony on animal raising practices on approximately eleven occasions between 2001 and 2012, among them were specific instances of public comment opportunities appearing in Federal Register Notices: **67 Fed. Reg. 19375** (April 19, 2002); **74 Fed. Reg. at 46411** (September 9, 2009); **75 Fed. Reg. at 57194** (September 20, 2010); and **76 Fed. Reg. at 62336** (October 7, 2011).

63. In contrast, the USDA has published just two final rules regarding livestock since the passage of the OFPA in 1990 and its implementation in December 2000.  71 Fed. Reg. 32803 (June 7, 2006)(in response to a court order); 75 Fed. Reg. 7154 (February 17, 2010).

### The Proposed Organic Livestock Rule

64. On April 16, 2016, the AMS proposed the *Organic Livestock and Poultry Practices Rule* ("the Proposed Organic Livestock Rule") in an extremely detailed 54-page publication. 81 Fed. Reg. at 21,956-22,009 (April 13, 2016).

65. The Secretary said, "AMS is proposing this rulemaking to maintain consumer confidence in the high standards represented by the USDA organic seal." 81 Fed. Reg. at 21980.

66. The Secretary said, "[T]he provisions for outdoor access for poultry have a long history agency and NOSB actions and are a focal issue [here]."  81 Fed. Reg. at 21957.

67. The Proposed Organic Livestock Rule established detailed standards for organic livestock in order to eliminate the inconsistencies amongst certifying agents identified in the OIG report, ensure consistent standards and better align with consumer expectations established in the administrative record regarding organic livestock production practices. *Id.*

68. AMS estimated that 4,177 currently certified foreign and domestic livestock operations will be subject to the amendments.  81 Fed. Reg. at 22004.

69. The Secretary said, "AMS has determined that the current USDA organic regulations (7 CFR part 205) covering livestock health care practices and living conditions need additional specificity and clarity to better ensure consistent compliance by certified organic operations and to provide for more effective administration of the National

Organic Program (NOP) by AMS. * * * By facilitating improved compliance and enforcement of the USDA organic regulations, the proposed regulations would better satisfy consumer expectations that organic livestock meet a uniform and verifiable animal welfare standard." *Id.*

70. The Secretary said, "Potentially affected entities include * * * Existing livestock farms and slaughter facilities that are currently certified organic under the USDA organic regulations. Certifying agents accredited by USDA to certify organic livestock operations and organic livestock handling facilities. *Id.*

71. The Secretary proposed regulatory language for all *mammalian livestock*: "The producer of an organic livestock operation must establish and maintain year-round livestock living conditions which accommodate the health and natural behavior of animals, including: (1) Year-round access for all animals to the outdoors, soil, shade, shelter, exercise areas, fresh air, clean water for drinking, and direct sunlight, suitable to the species, its stage of life, the climate, and the environment…" 81 Fed. Reg. at 22006.

72. The Secretary proposed regulatory language for all *poultry*: "An organic poultry operation must establish and maintain year-round poultry living conditions which accommodate the health and natural behavior of poultry, including: Year-round access to outdoors; shade; shelter; exercise areas; fresh air; direct sunlight; clean water for drinking; materials for dust bathing; adequate outdoor space to escape from predators and aggressive behaviors suitable to the species, its stage of life, the climate and environment. 81 Fed. Reg. at 22007.

73. The Secretary assessed consumer expectations: "We believe that organic consumers generally have high regard for animal welfare-friendly products." 81 Fed. Reg. at 21988.

74. The Secretary said, "We believe that the space and outdoor access requirements in this proposed rule would enable consumers to better differentiate the animal welfare attributes of organic eggs and maintain demand for these products." 81 Fed. Reg. at 21988.

75. The Secretary considered consumer expectations and the impact of extended implementation periods.  "Conversely, a 10-year implementation period could erode consumer demand for organic eggs if the organic label requirements do not keep pace with growing consumer preferences for more stringent outdoor living conditions. Prolonging the disparity in organic egg production practices and the resulting consumer confusion would be detrimental to the numerous organic egg producers who could readily comply with this proposed rule." 81 Fed. Reg. at 21986.

76. The Secretary specifically concluded: "This proposed rule will maintain consumer trust in the value and significance of the USDA organic seal, particularly on organic livestock products. Clear and consistent standards for organic livestock practices, especially maximum stocking density and outdoor access for poultry, are needed and broadly anticipated by most livestock producers, consumers, trade groups, certifying agents, and OIG. This action completes the process, as intended by OFPA and reiterated in the USDA organic regulations, to build more detailed standards for organic livestock. By resolving the ambiguity about outdoor access for poultry, this action furthers an objective of OFPA: Consumer assurance that organically produced products meet a consistent standard. 81 Fed. Reg. at 21998.

77. The Proposed Organic Livestock Rule received more than 6500 comments and an overwhelming number of commenters supported the proposed rule.

**The Final Organic Livestock Rule**

78. On January 19, 2017, the USDA issued a 51-page final rule containing extremely detailed standards for production of animals on organic farms entitled *Organic Livestock and Poultry Practices*. 82 Fed. Reg. at 7042-92 (January 19, 2017).

79. The Secretary said, "Based on recommendations from the Office of Inspector General and the National Organic Standards Board, AMS determined that the current USDA organic regulations covering livestock care and production practices and living conditions needed additional specificity and clarity to better ensure consistent compliance by certified organic operations and to provide for more effective administration of the National Organic Program (NOP) by AMS." 82 Fed. Reg. at 7042.

80. The Secretary said, "The provisions in this rule on outdoor access for organic poultry have a significant history of AMS actions that are based on National Organic Standards Board (the NOSB) recommendations. Outdoor access is a prominent issue in this final rule." 82 Fed. Reg. 7043.

81. The Secretary said, "To assist with this rulemaking, the NOSB developed a series of recommendations to further clarify organic livestock and poultry care and production practices, transport, slaughter, and living conditions, including outdoor access for poultry. The NOSB deliberations on these recommendations revealed that there is considerable support for these recommendations within the organic community and consumers have specific expectations for organic livestock care, which includes outdoor access for poultry." *Id.*

82. The Secretary said, "This rule would continue the process initiated with the Access to Pasture rulemaking to establish clear and comprehensive requirements for all organic

17

livestock, consistent with recommendations provided by USDA's Office of Inspector

General and nine separate recommendations from the NOSB." 82 Fed. Reg. at 7044.

83. The Secretary dropped specific space requirements for turkeys from the final rule in part

because of the "absence of an NOSB recommendation." 82 Fed. Reg. at 7066.

84. The Secretary recognized the OFPA mandated notice and comment rulemaking for

livestock standards and said, "Section 6509(g) directs the Secretary to develop detailed

regulations through notice and comment rulemaking to implement livestock production

standards. * * * [T]he statute contemplated that the assurance of organic integrity for

livestock products would require more specific guidelines and provided the authority for

that future regulatory activity." *Id.*

85. The Secretary said, "The NOSB deliberated and made the recommendations described in

this proposal at public meetings announced [in the Federal Register] on:

    a. April 19, 2002;
    b. September 9, 2009;
    c. September 20, 2010;
    d. October 7, 2011."

86. The record demonstrates a deep collaboration between the NOP and the NOSB and

repeated and ongoing efforts to gather the necessary information and make the best

decisions.

**The Delay Rules and the New Proposed Livestock Rule**

87. President Trump was inaugurated at noon on Friday, January 20, 2017. Later that day,

White House Chief of Staff Reince Priebus issued a "Memorandum for the Heads of

Executive Departments and Agencies" ("Priebus Memorandum"). The Priebus

18

Memorandum was published in the Federal Register on Tuesday, January 24, 2017. 82 Fed. Reg. 8346 (Jan. 24, 2017).

88. Among other things, the Priebus Memorandum purports to direct agencies that have promulgated "regulations that have been published in the [Federal Register] but have not taken effect" to "temporarily postpone their effective date for 60 days from the date of th[e] memorandum." *Id*. The Priebus Memorandum further states that agencies should exclude from delay such regulations that OMB has determined should be excluded because of their impact on "health, safety, financial, or national security matters, or otherwise..." *Id*.

**The First Stay--60 Days**

89. The Organic Livestock Rule was originally set to take effect on March 20, 2017.  On February 9, 2017 the effective date was delayed to May 19, 2017.  82 Fed. Reg. at 9967 (February 9, 2017). ("First Delay Rule").

90. The USDA claimed the First Delay Rule was undertaken to comply with the Priebus Memorandum.  82 Fed. Reg. at 9967.

91. The First Delay Rule was not exempt from notice and comment requirements under the APA.  It was a final rule that amended an existing, important and duly promulgated regulation.

92. Alternatively, and also without legally meritorious basis, USDA claimed the First Delay Rule was exempt from notice and comment under the APA because it was "impracticable, unnecessary, or contrary to the public interest pursuant to 5 U.S.C. 553(b)(B)."  No explanation was given.  Because the final rule's effective date was delayed, there was no reason that notice and comment could not be received, and as

further delay was imposed until November 2017, the impracticability of receiving comments in February 2017 appears incorrect. 82 Fed. Reg. at 9967.

93. At a minimum, comment should have been received on whether the Priebus memorandum applied to duly vetted and promulgated organic standards at all. Organic standards only affect those parties that voluntarily choose to market such products and impose no duty or obligation on persons that do not. Thus organic standards, like the Organic Livestock Rule, affect only those parties that opt-in to the program and no person's business is adversely affected by governmental fiat.

94. Thus had USDA received comment it could have, and should have, seriously considered whether the Organic Livestock Rule fell into the category in the Priebus memorandum of rules that are inappropriate for delay.

95. The Priebus memorandum specifically directed agency heads to consider whether "any regulations" should be excluded from the 60-day delay for "some other reason" than health, safety, financial, and national security reasons. 82 Fed. Reg. at 8346. The memorandum further directed that the OMB Director would determine whether an exclusion was appropriate. *Id.*

96. Had the USDA sought comment, it could have fulfilled the duty to inform the OMB director of the organic rule's status, and the failure to seek comment foreclosed the possibility that OMB would have let the Organic Livestock Rule move forward on schedule.

97. On April 28, 2017, three hundred and thirty four (334) certified organic livestock and poultry producers with estimated revenue of $1.95 billion dollars sent a letter to the Secretary requesting immediate implementation of the Organic Livestock Rule. The

producers said, "As organic farmers, our very survival is dependent upon the trust that we have built with the American consumer. We are proud to be delivering a product that meets the highest standards possible and is in line with consumer expectations of what the USDA organic label means. The decision to become certified organic is voluntary, if consumers lose confidence in the organic seal it will have catastrophic impacts throughout the industry." *Available at  https://www.regulations.gov/document?D=AMS-NOP-17-0031-0006.*

98.   The NOSB conducted its semi-annual public meeting on April 19-21, 2017.  81 Fed. Reg. at 85205 (Nov. 25, 2016)(meeting notice).  During the meeting the NOSB voted unanimously to recommend that the final rule not be delayed any longer and be released and become effective at the conclusion of the 60-day delay period established in the Secretary's First Delay Rule. (Meeting Transcripts not yet available) The USDA ignored this request.

**The Second Stay--180 Days**

99. On May 10, 2017, USDA issued another stay of the effective date, this time to November 14, 2017. 82 Fed. Reg. at 21,677 (May 10, 2017) (the Second Delay Rule)

100.  The Second Delay Rule was entitled "Final rule; delay of effective date," was published without prior notice or an opportunity for public comment, or any meaningful consultation with the NOSB, and delayed the effective date of the Organic Livestock Final Rule by an additional 180 days. 82 Fed. Reg. at 21677.

101. USDA claimed, "Because there are significant policy and legal issues addressed within the final rule that warrant further review by USDA, AMS is delaying the effective date of this rule by 180 days…" 82 Fed. Reg. at 21677.

102. USDA again claimed "good cause" existed for waiving notice and comment and further claimed the 180-day stay was exempt from notice and comment under the APA because it was "impracticable, unnecessary, or contrary to the public interest pursuant to 5 U.S.C. 553(b)(B)." *Id.*

103. The Second Delay Rule was not exempt from notice and comment requirements under the APA or for any of the reasons cited by USDA.  It was a final rule that amended an existing, important and duly promulgated regulation.

104. That same day, USDA published the New Proposed Rule with four procedural options. The four options presented are:

    a.   Let the Organic Livestock Rule become effective on November 14, 2017;
    b.   Suspend the Organic Livestock Rule indefinitely;
    c.   Further delay the effective date of the Organic Livestock Rule; or
    d.   Withdraw the Organic Livestock Rule.

82 Fed. Reg. at 21742 (May 10, 2017).

105. The New Proposed Rule posited no substantive inquiry, identified no deficiency in the existing administrative record made over approximately ten years, and no outstanding issue of fact or policy was cited.  Options (b) and (c) posit indefinite further delay. Option (d) posits unwinding years of public process by mere fiat. *Id.*

106. USDA received approximately 47,000 comments regarding the four options. Approximately 45,000 urged removing the stay and allowing the Organic Livestock Rule to be fully implemented.

107. USDA did not meaningfully consult with the NOSB regarding the New Proposed Rule in contravention of the consultation requirements set forth in the OFPA.

108. The overwhelming record that underpins the Organic Livestock Rule, made over a ten-year period, constituting thousands of hours of public and government effort is being shunted aside in favor of no record, or a record made on a 30-day comment period and upon an inquiry framework that raises no issue of law, fact, or policy. The Delay Rules were issued without any public process and violate the notice and comment requirements of the Administrative Procedure Act and violate the consultation requirement of the OFPA.

109. The Delay Rules are "final rules" reviewable under the APA.

110. The New Proposed Rule is final agency action as to Options (b), (c), and (d) because each constitutes an unexplained, arbitrary reversal of the Agency's prior position in January 2017 thus subjecting those three options to judicial scrutiny under the APA as well.

111. The Organic Livestock Rule remains unlawfully in limbo.

### Impact on Plaintiff and Plaintiff's Members

112. Plaintiff and its members are injured by the challenged actions, because USDA deprived them of procedural rights, as organic market participants and consumers, to meaningfully participate in an important rulemaking process and further harmed Plaintiff's members by suddenly halting the implementation of the Organic Livestock Rule after Plaintiff's members had relied to make affirmative changes in their production systems and management systems to meet the new requirements.

113. Plaintiff and its members have been and will continue to be injured by the USDA's decision to issue the Delay Rules and the New Proposed Rule.  Plaintiff has expended significant resources for many years to support the collaborative process between the NOSB and NOP on developing detailed organic production standards for livestock and

poultry.  Plaintiff's membership includes many parties whose agricultural activities are governed by the standards on livestock and poultry production, including egg production, and have made investments in reliance on anticipation of the implementation of the now delayed final rule.

114. As a result of the Delay Rules, Plaintiff has diverted—and will continue to divert—staff time and other resources to efforts that would have been unnecessary had the Organic Livestock Rule been timely implemented. This diversion diminishes Plaintiff's ability to carry out other responsibilities.

115. Three declarations are attached to and incorporated in this Complaint and the statements made therein are fully realleged herein.  Each declarant provides insight into the risk of irreparable harm arising from the loss of consumer trust in the federal program upon a record in the last six months that subverts the nearly 10-year process that comports with the OFPA's unique public-private partnership requirements.  *See Exhibit A: Declaration of Pete and Gerry's Organics; Exhibit B: Declaration of National Cooperative Grocers; and Exhibit C: Declaration of Accredited Certifiers Association.*

### FIRST CAUSE OF ACTION
### VIOLATION OF THE APA

116.  Each foregoing allegation is re-alleged in this paragraph.

117.  The USDA published the Organic Livestock Rule on January 19, 2017 pursuant to Congressional mandates set forth in the OFPA and in accordance with the APA. 5 U.S.C. § 552(a)(1)(D); 7 U.S.C. § 6503(c); 7 U.S.C. § 6509(d)(2); 7 U.S.C. § 6509(g)

118.  A "rule" is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or

policy." 5 U.S.C. § 551(4).  The "effective" date and "implementation" dates set in the

Final Organic Livestock Rule inescapably are measures "to implement * * * law or

policy."

119. The Delay Rules are subject to notice and comment rulemaking because they amend the

duly promulgated Organic Livestock Rule and alter the legal rights of affected parties,

including certified organic farmers, certifying agents, organic meat processors and

consumers of organic products, including Plaintiff's members.

120. USDA published the Delay Rules amending the Organic Livestock Rule's effective date

and implementation dates without publishing a notice of proposed rulemaking or

providing an opportunity for public comment in violation of 5 U.S.C. § 553.

121. None of the exceptions to notice and comment in the APA are applicable.

122. The Delay Rules are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," *id.* § 706(2)(A), and were published "without observance of

procedure required by law," *id.* § 706(2)(D).

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE APA FOR ACTION UNLAWFULLY WITHELD**

123. Each foregoing allegation is re-alleged in this paragraph.

124. The USDA published the Organic Livestock Rule on January 19, 2017 pursuant to

Congressional mandates set forth in the OFPA and in accordance with the APA. 5 U.S.C.

§ 552(a)(1)(D); 7 U.S.C. § 6503(c); 7 U.S.C. § 6509(d)(2); 7 U.S.C. § 6509(g)

125. A "rule" is "the whole or a part of an agency statement of general or particular

applicability and future effect designed to implement, interpret, or prescribe law or

policy." 5 U.S.C. § 551(4).  The "effective" date and "implementation" dates set in the

Final Organic Livestock Rule inescapably are measures "to implement * * * law or policy."

126. The definition of "agency action" includes a "failure to act." *Id.* § 551(13).

127. USDA published the Delay Rules on February 9, 2017 and May 10, 2017 respectively and the Organic Livestock Rule has been delayed 240 days without any public comment and there is no date certain to end the delay.

128. The Delay Rules have the effect of blocking the Organic Livestock Rule in its entirety and altering the legal rights of affected parties, including certified organic farmers, certifying agents, organic meat processors and consumers of organic products, including Plaintiff's members, for which they have no adequate remedy at law.

129. USDA's failure to timely implement the Organic Livestock Rule upon the effective date set forth in the rule constitutes a "failure to act" pursuant to 5 U.S.C. § 551(13); 5 U.S.C. § 702, 706(1).

## THIRD CAUSE OF ACTION
## VIOLATION OF THE APA: THE USDA FAILED TO EXPLAIN ITS DEPARTURE FROM PRIOR CONCLUSIONS

130. The allegations set forth above are incorporated by reference.

131. USDA published the Organic Livestock Rule on January 19, 2017 pursuant to Congressional mandates set forth in the OFPA and in accordance with its authority under the APA. 5 U.S.C. § 552(a)(1)(D); 7 U.S.C. § 6503(c); 7 U.S.C. § 6509(d)(2); 7 U.S.C. § 6509(g).

132. As set forth above in this Complaint, at the time of publication of the proposed rule in April 2016, and the final rule in January 2017, USDA made repeated, extensive and unequivocal statements regarding the need for the Organic Livestock Rule and that its

publication comported with duties imposed on the Secretary by the OFPA to adopt

detailed regulations for organic livestock standards by notice and comment rulemaking

and to develop those standards based on the recommendations of the OFPA.

133. The proposed rule and final rule cited to the approximately 10-year record of study,

public testimony, NOSB recommendations and revised recommendations as support for

the proposals therein.

134. In stark contrast, just a few short months later, USDA issued the Delay Rules and the

current New Proposed Rule which simply states: "Because there are significant policy

and legal issues addressed within the FR that warrant further review by USDA the public

is being asked to comment on which of the following four actions [should be taken]"  82

Fed. Reg. at 21742.  The options are:

   a.  Let the Organic Livestock Rule become effective on November 14, 2017;
   b.  Suspend the Organic Livestock Rule indefinitely;
   c.  Further delay the effective date of the Organic Livestock Rule of 2017; or
   d.  Withdraw the Organic Livestock Rule.

135. The New Proposed Rule options (b), (c), and (d) posit complete negation of the Organic

Livestock Rule.  The options (b), (c), and (d) are an inexplicable departure from USDA's

prior interpretation of the OFPA and its prior conclusions about the importance of the

Congressional directive to develop detailed standards for certified organic livestock and

poultry producers, and the need for additional specificity and clarity to better ensure

consistent compliance by certified organic operations and to provide for more effective

administration of the National Organic Program.

136. Options (b), (c), and (d) posit indefinite delay in bringing the National Organic Program

regulations into compliance with the OFPA and the recommendations of the NOSB

without rationally explaining why the USDA is changing its interpretation of the OFPA and the record upon which the Organic Livestock Rule rests.

137. The Delay Rules amend the implementation dates of the Organic Livestock Rule without any rational explanation whatsoever.

138. Taken together, the Delay Rules and three of the four options in the New Proposed Rule are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of 5 U.S.C. § 706(2)(A).

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE OFPA**

139. Each foregoing allegation is re-alleged in this paragraph.

140. The OFPA imposes unique pre-rulemaking duties on the USDA that are in addition to the procedural assurances in the APA, and require the Secretary to meaningfully consult with the NOSB prior to promulgating final rules like the Delay Rules and three of the four options in the New Proposed Rule.  7 U.S.C. § 6503(c); 7 U.S.C. § 6509(d)(2); 7 U.S.C. § 6509(g)

141. The USDA's failure to meaningfully consult the NOSB violated the statutory duty to "consult with the National Organic Standards Board…" 7 U.S.C. § 6503(c).

142. The New Proposed Rule contains proposed four options:

    a.  Let the Organic Livestock Rule become effective on November 14, 2017;
    b.  Suspend the Organic Livestock Rule indefinitely;
    c.  Further delay the effective date of the Organic Livestock Rule of 2017; or
    d.  Withdraw the Organic Livestock Rule.

143. Three of the four options (b), (c), and (d) are contrary to the USDA's statutory duty to "develop detailed regulations" regarding organic livestock production practices because they do not implement any standard whatsoever and each actually unwinds a duly

28

promulgated rule setting out detailed regulations that properly discharged the statutory

duty to develop detailed standards. 7 U.S.C. § 6509 (g).

144. There is nothing in the administrative record that supports a finding that the USDA has

discharged its duties under the OFPA in promulgation of the Delay Rules and the New

Proposed Rule.

145. The USDA's ongoing failure to implement the Final Organic Livestock Rule erases ten

years of collaborative effort with the NOSB and unlawfully blocks a rule based on series

of NOSB recommendations that comport with the NOSB's duty to "recommend to the

Secretary standards in addition to those in [the Act] for the care of livestock to ensure that

such livestock are organically produced." 7 U.S.C. § 6509(d)(2).

146. The correct procedures under the APA and OFPA were followed in developing the

Organic Livestock Rule.

147. Option (a) in the New Proposed Rule is the sole option that does not violate the OFPA,

because it is substantively indistinguishable from the Final Organic Livestock Rule that

was adopted in accord with the statutory consultation and collaboration requirements.

148. Enacting Options (b), (c), or (d) would be an *ultra vires* act in direct conflict with the

OFPA.

### REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that this Court:

149. Declare USDA's Delay Rules were published "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2)(D);

150. Declare USDA's Delay Rules are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the APA, 5 U.S.C. §706(2)(A);

151. Declare the Delay Rules and Options (b), (c), and (d) of the New Proposed Rule are in violation of the OFPA's consultation requirements and are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the APA, 5 U.S.C. §706(2)(A);

152. Declare the Delay Rules and Options (b), (c), and (d) of the New Proposed Rule are *ultra vires* under the OFPA's consultation provisions;

153. Vacate the Delay Rules and vacate or strike the New Proposed Rule's Options (b), (c), and (d);

154. Enjoin USDA from further delay in implementation of the Organic Livestock Rule;

155. Vacate the first and second delay Orders and require the USDA to implement and follow the Organic Livestock Rule;

156. Award Plaintiff its reasonable attorneys' fees, costs and expenses associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 or other authority; and

157. Grant Plaintiff such other injunctive and/or declaratory relief as the Court deems just and equitable.

Respectfully Submitted:


   /s/ William J. Friedman
William J. Friedman (*pro hac vice motion pending*)
107 S. West St.
Alexandria, VA 22314
Tel.:  571.217.2190
Email:  pedlarfarm@gmail.com


/s/ Andrea M. Downing
Andrea M. Downing
Wade, Grimes, Friedman,
Meinken & Leischner, PLLC
616 North Washington Street
Alexandria, Virginia 22314
(t) 703-836-9030
(f) 703-683-1543
downing@oldtownlawyers.com

Counsel for OTA