UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ORGANIC TRADE ASSOCIATION,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 17-1875 (RMC) |
| **UNITED STATES DEPARTMENT, OF AGRICULTURE,** *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

This case involves an Administrative Procedure Act challenge to one agency final rule withdrawing another. Plaintiff Organic Trade Association has moved, *inter alia*, to supplement the administrative record for the current challenge to the withdrawing rule with comments from the separate record for the rule that was withdrawn. For the reasons stated below, that motion will be denied.

**I.   BACKGROUND**

The Court has laid out in detail the background for this case in its last opinion, *Organic Trade Ass'n v. U.S. Dep't of Agric.*, 370 F. Supp. 3d 98 (D.D.C. 2019), and so recounts relevant specifics only briefly.

On January 19, 2017, the last day of the administration of former President Barack Obama, the United States Department of Agriculture (USDA) issued the final Organic Livestock and Poultry Practices Rule (Final OLPP Rule), which made more stringent the regulations that govern the certification of livestock as "organic" by USDA. *See* 82 Fed. Reg. 7042 (Jan. 19, 2017). On January 20, 2017, the first day of the administration of President Donald Trump, the White House directed executive agencies to delay implementation of all

1

pending regulations that had not yet become effective, which included the Final OLPP Rule. *See* Mem. for the Heads of Exec. Dep't and Agencies, 2017 WL 280678 (Jan. 20, 2017). USDA thereafter issued "Delay Rules" in February, May, and November 2017, each further delaying the effective date of the Final OLPP Rule. *See* 82 Fed. Reg. 9967, 21,677, 52,643. The May 2017 Delay Rule was also accompanied by a separate notice seeking public comment on possible fates of the Final OLPP Rule, which included implementation, indefinite suspension, further delay, and withdrawal. *See* 82 Fed. Reg. 21,742 (May 10, 2017) (Options Rule). USDA ultimately concluded both that there was a mathematical error underlying the Final OLPP Rule, and that it did not have the statutory authority to issue the regulations in the Final OLPP Rule. In December 2017 USDA proposed to withdraw the Final OLPP Rule on these bases, *see* 82 Fed. Reg. 59,988 (Dec. 18, 2017) (Proposed Withdrawal Rule), and formally did so on March 13, 2018. *See* 83 Fed. Reg. 10,755 (Mar. 13, 2018) (Withdrawal Rule).

The Organic Trade Association (OTA) challenged the delays to the effective date of the Final OLPP Rule in September 2017, and eventually challenged the Withdrawal Rule itself. *See* Second Am. Compl. (SAC) [Dkt. 34-3]. After denial of the government's motion to dismiss, the parties have been working together to determine the scope of the Administrative Record (Record) in preparation for summary judgment briefing. *See* Joint Mot. for Scheduling Order Extending Defs.' Deadline to File Answer & Setting Dates for Produc. of Admin. R. [Dkt. 78]. Although the parties have resolved several issues, OTA now asks for a court order to include three additional sets of documents in the Record:

1. The "Office of Inspector General Report" cited in the Final OLPP Rule. *See* 82 Fed. Reg. at 7044.

2. The "nine separate recommendations" of the National Organic Standards Board (NOSB or Board) cited in the Final OLPP Rule,

        *see id.*, as well as any written responses by USDA to those recommendations.[1]

    3.    The 6,675 comments to the Proposed OLPP Rule.

OTA also asks the Court to rename an NOSB document already included in the Record, currently titled "Formal Recommendation," because OTA believes the title gives a false impression of the document's development. Finally, OTA requests time to confer with the government regarding a privilege log generated during parallel litigation in California. *See Ctr. for Envtl. Health v. Perdue*, No. 18-CV-1763 (N.D. Cal. Mar. 21, 2018). This matter is ripe for review.[2,3]

## II.    LEGAL STANDARD

In keeping with the principle that a court sitting to review agency action under the APA does not engage in *de novo* review of the matter, judicial review is generally limited to the administrative record. *Camp v. Pitts*, 41 U.S. 138 (1973). To facilitate such review, the law requires that the agency identify and produce the complete administrative record. *NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). That record "properly consists of the materials before the agency and no more nor less," *see Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78

---

[1] OTA asks separately for the same documents cited in the rule proposing the Final OLPP Rule, *see* 81 Fed. Reg. 21,956, 21,958-59 (Apr. 13, 2016) (Proposed OLPP Rule), but both parties now agree that the NOSB recommendations cited in the Proposed OLPP Rule are the same as those cited in the Final OLPP Rule.

[2] *See* Mot. to Complete the Admin. R. & Correct an Error in the Existing R. and Suggestion of Further Conferral Between the Parties [Dkt. 85]; Mem. of Law in Supp. of Mot. to Complete & Correct the Admin. R. (Mem.) [Dkt. 85-1]; Defs.' Opp'n to Pl.'s Mot. to Complete the Admin. R & for Other Relief (Opp'n) [Dkt. 87]; Reply to Defs.' Opp'n to Pl.'s Mot. to Complete & Correct the Admin. R. (Reply) [Dkt. 88-1].

[3] OTA moved to file its Reply brief because the parties' joint proposed, and accepted, briefing schedule did not provide for a reply. *See* Request for Leave to File a Reply Mem. [Dkt. 88]. The Court will grant OTA's motion.

(D.D.C. 2018), which "includes all materials [the agency] directly or indirectly relied on to make all decisions, not just final decisions." *Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs*, No. 01-0273, 2002 WL 34724414, at *3 (citing *Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 10 (D.D.C. 2001)); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("It is black-letter administrative law that in an [Administrative Procedure Act] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (citations omitted)). "As part of the record, the Court may consider any document that might have influenced the agency's decision and not merely those documents the agency expressly relied on in reaching its final determination." *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (citing *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975) (quotation omitted)). Indeed, to be complete, the record must include "all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *Amfac Resorts*, 143 F. Supp. 2d at 12 (citations omitted).

An agency enjoys a presumption of regularity with respect to the administrative record it prepares; as the decisionmaker, it is generally in the best position to identify and compile the record. *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." (citations omitted)). Therefore, to prevail on a motion to supplement or complete the record, a plaintiff must "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Oceana*, 290 F. Supp. 3d at 78-79 (citations omitted). If a court finds that the record produced

4

"clearly do[es] not constitute the 'whole record' compiled by the agency," it will order the agency to complete the record. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (quoting 5 U.S.C. § 706), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Charleston Area Med. Ctr.*, 216 F. Supp. 3d at 23.

### III.  ANALYSIS

#### A.  The Office of Inspector General Report

OTA first asks to complete the Record with the 2010 "Office of Inspector General Report" cited in the Final OLPP Rule. *See* 82 Fed. Reg. at 7044. The government's opposition notes that this document is already included in the Administrative Record, and OTA does not renew its request in its Reply. This request will be denied as moot.

#### B.  National Organic Standards Board Recommendations and USDA Written Responses

OTA next asks to complete the Record with the "nine separate recommendations from the NOSB" cited in the Final OLPP Rule and USDA's written responses thereto. 82 Fed. Reg. at 7082. Specifically, NOSB issued recommendations dated June 1994, April 1995, October 1995, March 1998, May 2002, March 2005, November 2009, October 2010, and December 2011. *See* 81 Fed. Reg. at 21,958-59. Both parties acknowledge that three of those recommendations—from May 2002, November 2009, and December 2011—as well as USDA's responses are already included in the Record because they were attached to comments to the Withdrawal Rule.

OTA asserts that the remaining six recommendations should also be included because (a) USDA considered them when developing the Final OLPP Rule, and (b) USDA reviewed the Final OLPP Rule when developing the Withdrawal Rule. The government responds that its review of the Final OLPP Rule was narrow and focused on mathematical errors

in the Regulatory Impact Analysis (RIA) and USDA's statutory authority to promulgate the Final OLPP Rule, neither of which was affected by the NOSB recommendations or USDA's written responses thereto. That is to say, the government affirms that USDA "did not consider [the omitted NOSB recommendations] at the time it made its decision to withdraw the [Final] OLPP Rule." Opp'n at 7.

The Court agrees with the government. USDA is entitled to a presumption of regularity when developing the Administrative Record, and OTA provides no reason why the bases for the Withdrawal Rule—mathematical error and review of statutory authority—were affected by the missing NOSB recommendations or why the Court should find that USDA had again considered those recommendations. In any event, OTA already has the benefit of the conclusion USDA drew from the NOSB recommendations: the Final OLPP Rule itself. This request will be denied.

### C. Comments Filed in Response to the Proposed OLPP Rule

Similarly, OTA asks to complete the Record with 6,675 comments filed in response to the Proposed OLPP Rule. As explanation for this request, OTA submits that these comments were part of the "whole record" before USDA when it issued the Withdrawal Rule, and that USDA relied on these comments in its decision to limit the duration of the comment period to 30 days. OTA cites as an example USDA's prior consideration of comments arguing against its authority to promulgate the Final OLPP Rule and argues that USDA must have revisited such comments when issuing the Withdrawal Rule. At bottom, OTA's argument is that USDA must explain the inconsistency between the Final OLPP Rule and the Withdrawal Rule. *See* Reply at 8.

Agency action which changes prior policy is not subject to a "heightened standard" of review under the APA, which "makes no distinction . . . between initial agency

action and subsequent agency action undoing or revising that action." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). An agency must acknowledge that it is changing its policy and must provide good reasons for that change, "[b]ut it need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better which the conscious change of course adequately indicates." *Id.* (emphasis in original). That said, a more detailed justification may be necessary where the "new policy rests upon factual findings that contradict those which underlay its prior policy." *Id.*

OTA argues that *Fox Television Stations* stands for the following syllogism: comments to a proposed rule would be part of the record for a final rule; the APA "makes no distinction between initial agency action and subsequent agency action undoing or revising that action," *id.*; therefore, comments to a first final rule should be part of the record for a subsequent final rule that undoes the first final rule. *See* Reply at 7 ("The same symmetry should apply here."). OTA misreads *Fox Television Stations* and incorrectly collapses separate agency actions into a single proceeding. Rather, the "symmetry" OTA asks for is to be found by requiring the Withdrawal Rule to stand on its own record. While an agency must acknowledge a first final rule and reconsider earlier factual findings if such findings are contradicted by a subsequent final rule, OTA identifies no such facts here—only legal arguments and conclusions related to statutory interpretation—and USDA has affirmed that it did not rely on the comments to the Proposed OLPP Rule when crafting the Withdrawal Rule.

OTA also argues that the government provided only 30 days to comment on the Proposed Withdrawal Rule "because interested parties had the opportunity to comment on the

underlying OLPP final rule as well as the [Options Rule]," Withdrawal Rule at 10,781, which must mean that the government reconsidered the comments to the underlying Final OLPP Rule. This argument is unconvincing. The government argues that its point was merely that OTA and other commenters were not faced with a novel issue necessitating research in the first instance, such that 30 days was enough time to develop comments. *See* Opp'n at 11-12. The Court finds that the government's interpretation is the most sensible reading of the quoted language, particularly since the Withdrawal Rule further elaborated that "commenters were on notice of the proposal since November 14, 2017," and the "proposed rule presented discrete issues that interested parties should have been able to address within the 30-day comment period." Withdrawal Rule at 10,781. Indeed, the government notes that several commenters understood this and resubmitted their comments to the underlying Final OLPP Rule in response to the Proposed Withdrawal Rule. *See, e.g.*, Ex. C, Withdrawal Rule Comment Resubmitting Final OLPP Rule Comment [Dkt. 87-3].

In the same vein, OTA argues that USDA only discovered its mathematical error "during the course of reviewing the rulemaking record for the OLPP final rule," and so again must have considered the comments to the Final OLPP Rule in developing the Withdrawal Rule. But the Withdrawal Rule focuses only on specific, discrete issues, and OTA has not explained why it follows that *all* of the comments to the Final OLPP Rule should be included in this Record. *Cf. Dania Beach v. FAA*, 628 F.3d 581, 590-91 (D.C. Cir. 2010) ("Petitioners' claim that the supplementary documents would manifest FAA exaggeration of the problems . . . is too generalized to support such a massive inflation of the record."). Further, the Final OLPP Rule is already part of the Record which means that USDA's summaries of the comments it previously received are included. More to the point, this means that USDA's response to those comments,

*i.e.*, its explanation of why it previously believed it had statutory authority to issue the Final OLPP Rule, is already part of the Record. This request will be denied.

### D. Renaming the 2017 NOSB "Formal Recommendation"

OTA argues that the 2017 "Formal Recommendation" from NOSB to USDA is improperly named because NOSB and USDA did not follow the process typically adhered to when NOSB issues such recommendations, and the current title implies more in-depth consultation than otherwise occurred. The government notes that NOSB itself gave the document its title and argues that OTA cites no precedent that authorizes a court to rename documents in an administrative record. OTA does not reply.

This request too will be denied. If OTA believes that the NOSB's "Formal Recommendation" was the product of less consultation than is required by statute, policy, practice, or rule, it may argue the substance of that position on summary judgment.

### E. Further Conferral

Finally, the parties disagree as to whether a privilege log pertaining to deliberative materials generated as part of the parallel litigation in California should be included in the Record for this case. OTA recognizes that under D.C. Circuit precedent, the government would not have been required to generate the privilege log for deliberative materials in the first instance. *See Oceana v. Ross*, 902 F.3d 855, 865 (D.C. Cir. 2019) (rejecting inclusion of deliberative documents in the administrative record). OTA believes that a privilege log which *already* exists may be treated differently, but both parties have declined to litigate the issue at this time. OTA says that it still needs to confer with the government and the government says it is willing to confer. Without a motion on this issue, the Court will not decide.

## IV.   CONCLUSION

For the reasons stated above, Organic Trade Association's Motion to Complete the Administrative Record and Correct an Error in the Existing Record and Suggestion of Further Conferral Between the Parties, Dkt. 85, will be denied, except for the request to further confer, which requires no decision from the Court.  A memorializing Order accompanies this Memorandum Opinion.


Date:  August 13, 2019

ROSEMARY M. COLLYER
United States District Judge