**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ORGANIC TRADE ASSOCIATION,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, *et al.,*

    Defendants.

Civil Case No. 1:17-cv-01875-RMC

## REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPLETE AND CORRECT THE ADMINISTRATIVE RECORD

    Pursuant to Local Civil Rule 7 (d) Plaintiff OTA timely submits the following Reply Memorandum in support of its Motion to Complete the Administrative Record and Correct an Error in the Existing Record and Suggestion of Further Conferral Between the Parties. *See* ECF No. 85 ("Motion to Complete"). The Administrative Record ("AR") presently includes some of the materials that were relied upon in this extraordinary cycle of federal rulemakings, but is not complete.[1] *See* ECF No. 86 (Index to AR) A revised proposed Order is submitted with this Memorandum.[2]

    OTA's Motion to Complete requests this Court add the comments to the Organic Livestock Production Practices proposed rule ("Proposed OLPP") and a few specific documents that were directly considered in the Organic Livestock Production Practices

[1] The list of Federal Register publications appears in fn 1 to the Memorandum in
[2] The OLPP Proposed Rule, the OLPP Final Rule, the Proposed Options Rule, the Proposed Rescission and Final Rescission are already in the AR. *See* ECF No. 86, at Doc. Nos. 1; 6; 24; 18; and 32, respectively. The public comments on the Proposed Rescission are in the AR. *See* ECF No. 86, at Doc. Nos. 28. The public comments on the Proposed Options Rule are forthcoming.

OLPP Final Rule ("OLPP Final Rule") and directly and indirectly considered throughout the rulemakings that lead to a withdrawal of the OLPP Final Rule ("the Rescission"). *See* ECF No. 85, Motion to Complete at ¶ 7 (listing documents)

The agency refuses to produce the remaining requested documents on the grounds that the AR it produced is presumptively complete and it did not "consider" the requested comments and documents while preparing its Rescission. *See e.g.* ECF No. 87, at pg. 7 (Defendants' Opposition) ("[U]SDA did not consider them at the time it made its decision to withdraw the OLPP Rule."); *see also* pgs. 8-13 (argument)

## Reply Argument

The agency's Opposition unduly minimizes the interconnectedness of the administrative actions at issue in this case and its impact on the composition of the administrative record. *See e.g.* Opposition at pgs. 2-5  In fact, the agency characterizes OTA as attempting, "to spin two different final agency actions reaching opposite outcomes as aspects of a single decisionmaking process…"  Opp. at pg. 9.

Contrary to the agency's arguments, a review of the Federal Register publications over the 14-month period conclusively demonstrates that there is essentially one record spread over several administrative actions and the agency now seeks to restrict judicial review to only the last administrative action and an artificially narrow record.[3]  If allowed, it would achieve indirectly that which is disallowed directly: purging the record of the documents that reflected the long-standing policies of

---

[3]  As noted in other written submissions in this case, the court in a case captioned *Center for Environmental Health v. Perdue et al.*, No. 18-1763-RS (N.D. Cal.) has rejected the agency's production of a limited administration record and ordered it be supplemented.

the agency and that are presumptively adverse to the agency's course reversal in its

Rescission. *See e.g. Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792

(D.C. Cir. 1984) (requiring whole record include documents adverse to agency position

to ensure meaningful judicial review);.

     The agency's Opposition overlooks that the OLPP Final Rule was a duly

published and binding regulation of the agency. *See Clean Air Council v. Pruitt*, 862

F.3d 1, 9 (D.C. Cir. 2017) (agency is "bound by the rule until that rule is amended or

revoked.")  As such, it reflected the agency's well-settled construction of the Organic

Foods Production Act ("OFPA") and was consistent with past policies regarding animal

welfare requirements on organic farms and the role of recommendations of the National

Organic Standards Board ("NOSB").  The agency said,

> OFPA mandates that detailed livestock regulations be developed thorough
> notice and comment rulemaking and intends for the involvement of the National
> Organic Standards Board (NOSB) in that process.  82 Fed. Reg. at 7082 (Jan.
> 19, 2017)

OTA has challenged the abrogation of these agency policies and the sufficiency of the

agency decisionmaking. *See e.g.* ECF No. 80 (OTA's Second Amended Complaint *at*

¶¶'s 1-15) ("SAC");

     No party sought reconsideration of the OLPP Final Rule. The post-publication

administrative actions undertaken by the agency before the rule had become effective

had a single origin: a *sua sponte* reconsideration of the OLPP Final Rule in order to

eliminate an existing regulation.[4]  *See* 83 Fed. Reg. at 10777 ("AMS has broad

---

[4] The arrival of a new administration may justify reconsideration of an existing agency
policy or regulation, but the composition of the administrative record is governed by the

discretion to reconsider a regulation at any time."); *Id* at 10775 (March 13, 2018)

(rescission of the OLPP "[I]s considered a deregulatory action under Executive Order

13771")  In fact, the agency claimed in the Federal Register that it discovered its own

errors in the rulemaking by "reviewing the rulemaking record for the OLPP Final Rule."

*See e.g.* 82 Fed. Reg. at 52643-44 (November 14, 2017)

### The NOSB Recommendations are Part of the Administrative Record

The agency's Opposition states the NOSB recommendations on farm animal

welfare are "long outdated administrative materials."  *See* Opp. at 2. But the NOSB

recommendations were specifically cited in the OLPP Final Rule as the source of the

substance of the OLPP Final Rule.[5]  The Opposition also acknowledged certain of the

NOSB recommendations on animal welfare are already in the record, but objects to

adding the missing ones because "OTA presents no evidence that such

recommendations were considered by the agency." *Id.*  This argument should be

rejected. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,* No. CV 16-

1534 (JEB), 2019 WL 2028709, at *3 (D.D.C. May 8, 2019) (citing *Oceana, Inc. v.

Ross,* 290 F. Supp. 3d 73, 79–80 (D.D.C. 2018) (reasoning that "documents ... that were

---

APA.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29, 59, 103 S. Ct. 2856, 2875, 77 L. Ed. 2d 443 (1983)("As long as the agency
remains within the bounds established by Congress, it is entitled to assess
administrative records and evaluate priorities in light of the philosophy of the
administration."); *Clean Air Council v. Pruitt*, 862 F.3d 1, 8–9 (D.C. Cir.
2017)("Agencies obviously have broad discretion to reconsider a regulation at any time.
To do so, however, they must comply with the Administrative Procedure Act
(APA)…")

[5] 82 Fed. Reg. at 7044 (OLPP Final Rule is "[C]onsistent with recommendations
provided by USDA's Office of Inspector General and nine separate recommendations
from the NOSB."); 81 Fed. Reg. at 21958-59 (April 2016) (OLPP Proposed Rule)
(same).

cited substantively, *i.e.* to justify a factual statement or assertion made in the [decisional document] ... [were] clearly considered" while "mere mention of a document's existence" does not show agency consideration)). Moreover, it makes little sense that some of the NOSB recommendations are in the record but others are not.  Here the agency relied upon the NOSB recommendations in the OLPP Final Rule and the agency admitted it reviewed the OLPP Final Rule record in preparing the Rescission. For purposes of assessing the proper administrative record, the NOSB recommendations were "considered" during the Rescission rulemaking.

On judicial review the question is whether the whole record before the agency is before the court. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (requiring the "full administrative record that was before the [agency] at the time [it] made [its] decision.")  The agency is not allowed to limit the record to that which supports its conclusions.  "If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision. . . .." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). The missing recommendations should be supplied.

**The Public Comments to the OLPP are Part of the Administrative Record**

The record is clear that the agency examined only the existing record of the OLPP Final Rule to propose its Rescission. 82 Fed. Reg. at 52643-44.  The agency's Opposition misapprehends OTA's argument as contending that agency's curtailing the comment Rescission comment period meant the agency intended to re-examine all of the comments submitted in support of the OLPP prior to January 2017.  *See* Opp. at 12

("USDA never suggested that it was [denying extension requests] because it intended to re-review the comments to the OLPP Rule.")  All OTA is arguing is that the whole record before the agency at the time of rescission included the comments filed prior to the adoption of the OLPP Final Rule and were expressly acknowledged by the agency's decision to limit the comment period.

As an example, the agency's Opposition states the agency determined the "animal welfare regulations contained in the OLPP Rule exceeded" its statutory authority. *See* Opp. at 3.  This precise issue was the subject of public comment during the OLPP rulemaking.

> Several comments argued that USDA does not have sufficient regulatory authority under OFPA to publish final rules for livestock living conditions and animal welfare as described in the proposed rule. They argued that the livestock section of OFPA only provides authority to prepare regulations regarding feeds and animal health care issues. 82 Fed. Reg. at 7043 (Jan. 19, 2017)

In January 2017 the agency dispensed with this objection by statutory analysis and a summary of the historical practice of the program. *Id.* at 7043-44.  It is highly unlikely that less than a year later the agency reversed course and agreed with these public comments, but simply arrived at the same conclusion without considering the prior comments at all.  Such a contention strains credulity.

The agency's Opposition also overlooks the asymmetry in the AR it has already produced. The Proposed OLPP and the OLPP Final Rule are in the AR.  *See* Certified AR at Doc. Nos. 1 and 6. All public comments from each of the interconnected rulemakings are already in the AR, or are promised, except those from the OLPP rulemaking. The agency has even cherry picked a few of the records from that

rulemaking while rejecting OTA's request that the comments and NOSB recommendations and agency responses expressly referred to in the OLPP Final Rule, be added. *See* ECF No. 86, Index to Admin Record, at Doc. Nos. 23-27 (Economic Impact Analyses predating the Proposed OLPP)  This Court should decline the agency's invitation to conduct judicial review on a record narrowly constructed to support a revisionist characterization of the OFPA and the role of the NOSB. *Walter O. Boswell Mem'l Hosp. v. Heckler,* 749 F.2d at 792  ("To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case…")

The agency's Opposition cites *City of Dania Beach v. F.A.A.,* 628 F.3d 581, 590 (D.C. Cir. 2010) in support of its objection to completing the record.  However the *Dania* court expressly recognized that a record may be completed "if the agency "deliberately or negligently excluded documents that may have been adverse to its decision" and rejected the petitioners' request in that case because the documents were unspecified and were from prior proceedings that in some cases were ten years old. The agency's reliance on *Dania Beach* is misplaced.

Furthermore, the agency's crabbed reading of what constitutes consideration of a document is inconsistent with recent cases. "[C]itation of a source to support a factual proposition is generally enough to manifest actual consideration by the agency and support inclusion in the record. *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,* No. CV 16-1534 (JEB), 2019 WL 2028709, at *3 (D.D.C. May 8, 2019) (citing *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 79–80 (D.D.C. 2018)

OTA cited *F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 515, 129 S. Ct.

1800, 1811, 173 L. Ed. 2d 738 (2009) for the simple proposition that the same quality record must exist to support the enactment of a policy as it rescission.  *See* Motion to Complete, at 7.  The agency's Opposition misapprehended this citation, which is clarified here.  In *Fox*, a 5–4 majority concluded that while an "[A]gency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate. Sometimes it must—when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account."); *see also Perez v. Mortgage Bankers Ass'n*, 135 S.Ct. 1199, 1209, 191 L.Ed.2d 186 (2015) (same); *accord United States Telecom Ass'n v. Fed. Commc'ns Comm'n*, 825 F.3d 674, 708 (D.C. Cir. 2016) (internal quotations omitted); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Unexplained inconsistency is, at most, a reason for holding an interpretation to be an arbitrary and capricious change from agency practice under the Administrative Procedure Act.")

OTA has here challenged the radical departure from prior constructions of the OFPA, with regard to the scope of livestock production standards governing animal wellbeing and with regard to the role of the National Organic Standards Board, and the role of cost/benefit analyses in marketing program rulemakings.  *See SAC at ¶¶'s 1-15*

It is also worth noting that the several U.S. Supreme Court justices flatly rejected the approach suggested to this Court by the agency.  In *In re U.S.*, 138 S. Ct. 371, 372, 199 L. Ed. 2d 417 (2017) (dissent of Justice Breyer, joined by Justices Ginsberg, Sotomayor, Kagan) the dissenting justicies said: "We held in *Citizens to*

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136

(1971), that the "whole record" means "the full administrative record that was before

the Secretary at the time he made his decision." *Ibid.* Neither this Court nor the lower

courts has ever read *Overton Park* to limit the "full administrative record" to those

materials that the agency unilaterally decides should be considered by the reviewing

court."

### The Privilege Log Question

OTA recognizes that absent special circumstances the generation of a privilege

log in APA review cases is not required in this Circuit. *Oceana, Inc. v. Ross*, 920 F.3d

855, 865 (D.C. Cir. 2019). OTA is asking that this Court hold open the question of

whether an *existing* privilege log should be produced. OTA's suggestion of continued

conferral while the agency produces the tranches of documents it has already promised

to produce avoids prematurely litigating this question. But, as noted in OTA's motion,

in addition to fairness in the instant litigation, an overarching issue is reducing the risk

of inconsistent judgments arising from asymmetric administrative records.

### Conclusion

For the foregoing reasons the Motion to Complete the Record should be granted.

Respectfully Submitted:

 _/S/_ William J. Friedman
William J. Friedman
Counsel for Plaintiff Organic Trade Association
107 S. West St.
Alexandria, VA 22314
Tel.:  571.217.2190
Email:  pedlarfarm@gmail.com