UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ORGANIC TRADE ASSOCIATION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, et al., <br><br> Defendants. | Civil Action No. 17-1875 (PLF) |

OPINION

Defendants the United States Department of Agriculture ("USDA"), et al., have filed a Motion for Voluntary Remand ("Def. Mot.") [Dkt. No. 142]. Plaintiff Organic Trade Association ("OTA") opposes the motion and argues that the Court should rule on the merits of the parties' cross-motions for summary judgment, which are ripe for review. See Plaintiff's Opposition to USDA's Request for Remand Without Vacatur ("Pl. Opp.") [Dkt. No. 151]. For the following reasons, the Court will grant defendants' motion to remand without vacatur and deny the summary judgment motions as moot.[1]

---

[1] The documents that the Court has considered in connection with the pending motion include: Complaint ("Compl.") [Dkt. No. 1.]; First Amended Complaint ("First. Am. Compl.") [Dkt. No. 13]; Second Amended Complaint ("Second. Am. Compl.") [Dkt. No. 34]; Third Amended Complaint ("Third Am. Compl.") [Dkt. No. 121]; Joint Status Report and Motion to Stay ("Feb. 19, 2021 Mot. Stay") [Dkt. No. 128]; Joint Status Report and Stipulation to Lift Stay ("Stip. Lift Stay") [Dkt. No. 137]; plaintiff's Motion for Summary Judgment on its Third Amended Complaint ("Pl. Mot. Summ. J.") [Dkt. No. 140]; defendants' Motion for Voluntary Remand ("Def. Mot.") [Dkt. No. 142]; defendants' Motion for Summary Judgment ("Def. Mot. Summ. J.") [Dkt. No. 149]; plaintiff's Opposition to USDA's Request for Remand Without Vacatur ("Pl. Opp.") [Dkt. No. 151]; Reply in Support of Defendants' Motion for

I.  BACKGROUND

The dispute in this case involves two rules issued by the USDA in relation to regulating organic livestock and poultry conditions:  the Organic Livestock and Poultry Practice Rule ("OLPP Rule") and a subsequent rule withdrawing the OLPP Rule ("Withdrawal Rule"). Because these rules, the legal framework in which they were promulgated, and the history of litigation in this case all bear on the question of whether the Court should remand this matter to the USDA, the Court summarizes the background and procedural history of this case.

The USDA issued the OLPP Rule pursuant to its authority under the Organic Foods Production Act ("OFPA"), which Congress enacted in 1990 "to establish national standards governing the marketing of certain agricultural products as organically produced products"; "assure consumers that organically produced products meet a consistent standard"; and "facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501.  The OFPA established the National Organic Standards Board ("NOSB") to "provide recommendations to the Secretary [of Agriculture] regarding . . . implementation" of the organic certification program.  7 U.S.C. § 6518(k)(1); Organic Trade Ass'n v. U.S. Dep't of Agriculture ("Organic Trade Ass'n I"), 370 F. Supp. 3d 98, 101 (D.D.C. 2019).

On April 13, 2016, the USDA published its proposed OLPP Rule pursuant to the OFPA.  See National Organic Program; Organic Livestock and Poultry Practices, 81 Fed.

---

Voluntary Remand ("Def. Reply") [Dkt. No. 153]; plaintiff's Consolidated Reply in Support of OTA's Motion for Summary Judgment and Opposition to USDA's Motion for Summary Judgment [Dkt. No. 154]; defendants' Reply in Support of Defendants' Motion for Summary Judgment [Dkt. No. 157]; defendants' Notice of Supplemental Authority [Dkt. No. 162]; defendants' Response to the Court's March 9, 2022 Order ("Def. Suppl. Br.") [Dkt. No. 165]; plaintiff's Motion to Accept Brief for Filing Nunc Pro Tunc [Dkt. No. 166]; plaintiff's Supplemental Brief in Support of Proceeding to Reach the Merits of this Case ("Pl. Suppl. Br.") [Dkt. No. 167]; and plaintiff's Notice of Consent [Dkt. No. 168].

Reg. 21,956 (Apr. 13, 2016).  The proposed OLPP Rule sought to "amend the organic livestock and poultry production requirements by:  adding new provisions for livestock handling and transport for slaughter and avian living conditions; and expanding and clarifying existing requirements covering livestock health care practices and mammalian living conditions."  Id. at 21,956.  On January 19, 2017, after receiving and considering public comments to the proposed OLPP Rule, the USDA issued the final OLPP Rule.  National Organic Program (NOP); Organic Livestock and Poultry Practices, 82 Fed. Reg. 7,042 (Jan. 19, 2017).  The OLPP Rule was set to become effective on March 20, 2017, and to be fully implemented, with two exceptions, by March 20, 2018.  See id.

On January 20, 2017, Donald J. Trump assumed the presidency.  That same day, the Trump administration issued a moratorium mandating reconsideration of all federal regulations that were finalized under the Obama administration but had not yet taken effect at the time of the transition.  See The White House, Memorandum for the Heads of Executive Departments and Agencies, 2017 WL 280678, at *1 (Jan. 20, 2017).  Consistent with that directive, the USDA delayed the effective date of the OLPP Rule three times.  National Organic Program (NOP); Organic Livestock and Poultry Practices ("February Delay Rule"), 82 Fed. Reg. 9,967 (Feb. 9, 2017); National Organic Program (NOP); Organic Livestock and Poultry Practices ("May Delay Rule"), 82 Fed. Reg. 21,677 (May 10, 2017); National Organic Program (NOP); Organic Livestock and Poultry Practices ("November Delay Rule"), 82 Fed. Reg. 52,643 (Nov. 14, 2017); see also Organic Trade Ass'n I, 370 F. Supp. 3d at 104.  In analyzing the OLPP Rule, the USDA further determined that the Rule had "significant policy and legal issues" requiring additional assessment.  May Delay Rule at 21,677.

3

On September 13, 2017, OTA brought suit alleging that the February and May Delay Rules violated the OFPA and the Administrative Procedure Act ("APA") by delaying the effective date of the Final OLPP Rule without proper notice and opportunity for the public to comment, and without properly consulting the NOSB. Compl. ¶¶ 1-9. OTA filed an amended complaint on December 8, 2017, alleging that the additional November Delay Rule violated the OFPA and the APA for similar reasons. First. Am. Compl.

On December 18, 2017, the USDA initiated a proposed rulemaking to formally revoke the OLPP Rule. See National Organic Program (NOP); Organic Livestock and Poultry Practices – Withdrawal, 82 Fed. Reg. 59,988 (Dec. 18, 2017) (providing notice and a 30-day comment period). The USDA published its final Withdrawal Rule, which rescinded the OLPP Rule, on March 13, 2018. See National Organic Program (NOP); Organic Livestock and Poultry Practices ("Withdrawal Rule"), 83 Fed. Reg. 10,775 (Mar. 13, 2018). The basis for the USDA's withdrawal of the OLPP Rule was two-fold: (1) "nothing in [7 U.S.C. § 6509] authorize[d] the broadly prescriptive, stand-alone animal welfare regulations contained in the OLPP final rule"; and (2) even if the USDA had the statutory authority to issue the OLPP Rule, "the costs of the OLPP final rule outweigh potential benefits." Id. at 10,776-79. The USDA noted three primary errors in the OLPP's Regulatory Impact Analysis ("RIA"):

> First, in applying the discount rates to assess the net present value of the OLPP Rule's benefits over a 15-year time frame, USDA used an incorrect mathematical formula. . . . Second, the OLPP RIA 'estimated [costs] to be constant over time' while its 'benefits were . . . straight line reduced over time,' leading to 'an inconsistency in the treatment of costs and benefits over time.' . . . [And] third, the measure of benefits in the OLPP RIA was based on research that USDA believed overstated the measure of consumer willingness-to-pay for standards adopted by the Rule.

4

Def. Mot. at 4 (quoting Withdrawal RIA [Dkt. No. 102-2] at 11).  After correcting for these errors, the USDA determined there was "little, if any, economic justification for the OLPP final rule."  Withdrawal Rule, 83 Fed. Reg. at 10,782.

On April 11, 2018, OTA again amended its complaint, alleging that the Withdrawal Rule was arbitrary and capricious under the APA and that it violated the OFPA because the USDA had failed to engage with NOSB in finalizing the Withdrawal Rule.  Second Am. Compl.  Judge Rosemary Collyer, who presided over this case prior to her retirement, granted the USDA's motion for voluntary remand "to ensure the Court has a complete record at summary judgment."  Organic Trade Ass'n v. U.S. Dep't of Agriculture ("Organic Trade Ass'n II"), Civ. Action No. 17-1875, 2020 WL 12118917, at *2 (D.D.C. Mar. 12, 2020).  On September 4, 2020, after seeking public comment on the RIAs, the USDA issued a final decision concluding that the OLPP Rule and Withdrawal Rule RIAs were "seriously flawed and thus did not produce a reliable projection of the costs and benefits."  National Organic Program (NOP); Final Decision on OLPP Rule and Summary of Comments on the Economic Analysis Report ("Final Decision"), 85 Fed. Reg. 57,937, 57,943 (Sept. 17, 2020).  The USDA stated that it did not intend to prepare another RIA because it did not believe the OFPA even granted the agency authority to issue the OLPP Rule in the first place.  Id.  On November 2, 2020, OTA filed its Third Amended Complaint stating causes of action based on the delay rules and the Withdrawal Rule.  Third Am. Compl. ¶¶ 245-80.

On January 20, 2021, Joseph R. Biden was inaugurated as President of the United States.  Following the change of administration, the parties jointly moved to stay the proceedings "while they explore[d] the potential for an agreement that would allow resolution of this matter without further litigation."  Feb. 19, 2021 Mot. Stay at 2.  After the parties failed to reach an

5

agreement, the Court entered a scheduling order to govern summary judgment briefing and directed that if "the United States wishes to file a motion for voluntary remand, it may do so at any time." Order [Dkt. No. 139] at 1.

On June 24, 2021, the USDA filed its motion for voluntary remand in order to "reconsider the prior Administration's interpretation [in the Withdrawal Rule] that the Organic Foods Production Act does not authorize . . . the 2017 Organic Livestock and Poultry Practices (OLPP) final rule." Def. Mot. at 9 (quoting Press Release, Tom Vilsack, Secretary, U.S. Department of Agriculture, Statement from Agriculture Secretary Tom Vilsack on Organic Livestock and Poultry Practices Final Rule ("Secretary Vilsack Press Release") (June 17, 2021), https://www.usda.gov/media/press-releases/2021/06/17/statement-agriculture-secretary-tom-vilsack-organic-livestock-and.) (alterations in original). According to public statements by Secretary of Agriculture Tom Vilsack, this would involve "a rulemaking to address this [issue] and to include a proposal . . . [on] topics that were the subject of the OLPP final rule." Id. (alterations in original).

On March 4, 2022, Judge Richard Seeborg of the United States District Court for the Northern District of California issued a decision in a case challenging the exact same rule at issue here. See Center for Environmental Health v. Vilsack, 2022 WL 658965 (N.D. Cal. Mar. 4, 2022). Judge Seeborg granted the USDA's motion to remand without vacatur, remanded the matter back to the USDA, and ordered the parties to file a status report within 180 days of his decision. Id. at *5. On March 9, 2022, this Court ordered the filing of supplemental memoranda to solicit the parties' positions regarding the impact of Judge Seeborg's order on this action. See Minute Order (Mar. 9, 2022). Both parties stated in their supplemental memoranda that they do not believe Judge Seeborg's decision deprives this Court of authority to decide the pending

motions for summary judgment.  See Pl. Suppl. Br. at 23; Def. Suppl. Br. at 2.  OTA requested that the Court proceed to a merits ruling on the summary judgment motions and deny the USDA's motion for remand, while the USDA requested that the Court remand the matter to the USDA and deny as moot the pending motions for summary judgment.  All motions for summary judgment and the motion for voluntary remand have now been fully briefed.

## II.  LEGAL STANDARD

"A district court has broad discretion to decide whether and when to grant an agency's request for a voluntary remand."  Limnia, Inc. v. U.S. Dep't of Energy, 857 F.3d 379, 381 (D.C. Cir. 2017).  Three considerations inform a court's exercise of that discretion.

First, "voluntary remand is typically appropriate only when the agency intends to revisit the challenged agency decision on review."  Limnia, Inc. v. U.S. Dep't of Energy, 857 F.3d at 381.  While this "is not to say that an agency need confess error or impropriety . . . . the agency ordinarily does at least need to profess intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge."  Id. at 387; accord Keltner v. United States, 148 Fed. Cl. 552, 562 (2020).  Courts have described this as a "threshold requirement," see American Waterways Operators v. Wheeler, 427 F. Supp. 3d 95, 97 (D.D.C. 2019), and it is also the most important hurdle for the agency to clear.  "[S]o long as 'the agency intends to take further action with respect to the original decision on review,'" courts "generally grant an agency's motion to remand."  Utility Solid Waste Activities Grp. v. EPA, 901 F.3d 414, 436 (D.C. Cir. 2018) (quoting Limnia, Inc. v. Dep't of Energy, 857 F.3d at 386).

Second, if the agency appropriately demonstrates its intent to revisit the challenged decision, a court may consider whether the request for remand is "substantial and legitimate," Keltner v. United States, 148 Fed. Cl. at 563, or alternatively, "if the agency's

7

request appears to be frivolous or made in bad faith," Utility Solid Waste Activities Grp. v. EPA, 901 F.3d at 436. "Courts commonly grant such requests when the motion [for remand] is made in response to intervening events outside of the agency's control," American Waterways Operators v. Wheeler, 427 F. Supp. 3d at 97; but "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position," Utility Solid Waste Activities Grp. v. EPA, 901 F.3d at 436 (quotation marks omitted). "Remand has the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.'" Utility Solid Waste Activities Grp. v. EPA, 901 F.3d at 436 (quoting Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993)). If a request for remand is frivolous or made in bad faith, however, "it is appropriate to deny remand." Id.

Third, the reviewing court "must 'consider whether remand would unduly prejudice the non-moving party.'" American Waterways Operators v. Wheeler, 427 F. Supp. 3d at 98 (quoting Utility Solid Waste Activities Grp. v. EPA, 901 F.3d at 436); Clean Wisconsin v. EPA, 964 F.3d 1145, 1175-76 (D.C. Cir. 2020). Courts are more likely to find a lack of undue prejudice where "[g]ranting [the defendant] a voluntary remand will merely put [p]laintiffs in the materially same position as if the Court were to grant [the defendant] summary judgment." Empire Health Found. v. Becerra, Civ. Action No. 20-2149, 2022 WL 370559, at *5 (D.D.C. Feb. 8, 2022) (internal quotations omitted). Courts also factor in the potential for unreasonable delay. See Clark v. Perdue, Civ. Action No. 19-394, 2019 WL 2476614, at * 3-4 (D.D.C. June 13, 2019) (remanding where "[d]isposing of the Government's Motion exactly as [the plaintiff] requests would not . . . necessarily result in less delay than granting the request.").

III.  DISCUSSION

Defendants ask the Court to remand "so that USDA can revisit the issues in this case on its own initiative, through further rulemaking." Def. Mot. at 1.  Specifically, the USDA seeks to revisit the conclusions that the OLPP rule "was not authorized under the Organic Foods Production Act," and "that it was not economically justified." Id.  The USDA asserts that it now proposes "to reconsider the justifications for the prior withdrawal and readopt policies embodied by the OLPP Rule, while simultaneously conducting a new regulatory impact analysis to support that proposal."  Def. Reply at 1.

### A. The USDA Intends to Revisit the Challenged Decision on Remand

On June 17, 2021, Secretary of Agriculture Tom Vilsack issued the following public statement:

> We intend to reconsider the prior Administration's interpretation that the Organic Foods Production Act does not authorize USDA to regulate the practices that were the subject of the 2017 Organic Livestock and Poultry Practices (OLPP) final rule.  I have directed the National Organic Program to begin a rulemaking to address this statutory interpretation and to include a proposal to disallow the use of porches as outdoor space in organic production over time and on other topics that were the subject of the OLPP final rule.  We anticipate sending the proposed rule to OMB within six to nine months from the date of the remand.  We look forward to receiving public comments on those topics and, after reviewing the comments, USDA will publish a final rule.

See Secretary Vilsack Press Release.  The USDA contends that the rulemaking that would result from this process "if finalized, would moot this case."  Def. Mot. at 9.

Secretary Vilsack's announcement is powerful evidence that that the USDA "intends to take further action with respect to the original agency decision on review."  Limnia, Inc. v. United States Dep't of Energy, 857 F.3d at 386.  The original agency decision that OTA

9

challenges is the Withdrawal Rule, which was premised in part upon the conclusion that the OFPA does not provide authority to issue the OLPP Rule and that the underlying economic analysis of the rule was flawed.  Withdrawal Rule, 83 Fed. Reg. at 10,776-81.  Secretary Vilsack's statement announces an explicit intention to "begin a rulemaking to address this statutory interpretation," Secretary Vilsack Press Release, and includes "a proposed timeline," Utility Solid Waste Activities Grp. v. EPA, 901 F.3d at 437, demonstrating concrete and specific plans for reconsideration.  In the most literal sense, therefore, agency leadership has publicly stated that the agency intends to revisit the challenged rule.

OTA disagrees with this interpretation, arguing that Secretary Vilsack's statement "does not propose to reconsider the original agency decision under review" because it "[i]nstead . . . proposes a 'new rulemaking supported by a new economic analysis.'"  Pl. Opp. at 11 (quoting Def. Mot. at 14).  Yet the "two grounds" that plaintiff identifies as forming the basis of the USDA's reasoning in the Withdrawal Rule – lack of statutory authority and flawed economic analysis – directly correspond to Secretary Vilsack's statement.  See Secretary Vilsack Press Release; Def. Mot. at 10.[2]

In addition to Secretary Vilsack's statement, the representations in the USDA's briefing before this Court support the assertion that the agency intends to swiftly reconsider the Withdrawal Rule if this case is remanded.  The USDA reiterated in its motion to remand that the agency "has indicated its intent to reconsider the Withdrawal Rule . . . [and] intends to complete its work on a proposed rule within six-to-nine months of a remand order."  Def. Mot. at 11.  The

---

[2]    OTA's underlying concern appears to be that a remand will "leave the litigant facing another multi-year stretch of living without the benefit of the important improvements of the OLPP."  Pl. Opp. at 11.  Even if true, this goes to the question of prejudice, discussed below, and cannot support an argument that the agency does not intend to revisit the challenged action on remand.

issues that formed the basis for withdrawing the OLPP Rule – namely, the concern that the rule exceeded statutory authority and was not economically justified – "are under review in this case, [and] are exactly what USDA intends to reconsider." Def. Reply at 2-3. The USDA also intends to take action on the RIA at issue "by preparing a new regulatory impact analysis to support promulgation of the forthcoming proposed rule." Id. at 3. The USDA further contends that "[i]f the anticipated proposed rule is finalized, it would alter the regime created by the Withdrawal Rule and readopt policies that are the same or similar to those in the OLPP Rule." Id.

In its supplemental memorandum filed on March 24, 2022, OTA advised the Court of a new draft rule already submitted by the USDA to the Office of Management and Budget ("OMB") and noticed on the OMB website on December 3, 2021. See Pl. Suppl. Mem. at 3-4; OMB, List of Regulatory Actions Currently Under Review, Organic Livestock and Poultry Standards ("OLPS Draft Rule") (Dec. 3, 2021), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202110&RIN=0581-AE06. In the almost four months since the notice was published, however, neither party brought this OLPS Draft Rule to the Court's attention. OTA now asserts that "USDA's new Draft Rule at OMB greatly weakens if not moots the USDA's motion for remand in this case" because "[t]he Draft Rule is not a reconsideration or re-review of the Withdrawal Rule or that rule's [RIA] that is challenged in this case and does not propose to provide the relief sought." Pl. Suppl. Mem. at 7, 5.

The Court disagrees. In fact, the notice on the OMB website is evidence that that the USDA not only "intends to take further action," but has already begun "to take further action with respect to the original agency decision on review." Limnia, Inc. v. United States Dep't of Energy, 857 F.3d at 386. The fact that the USDA is now working on an updated rule "to clarify the USDA organic standards for livestock and poultry living conditions and health practices"

demonstrates that the agency is serious about following through with the promises made in Secretary Vilsack's press release.  See OLPS Draft Rule.  The Court therefore concludes that the "threshold requirement," American Waterways Operators v. Wheeler, 427 F. Supp. 3d at 97, is satisfied.

### B. Substantial and Legitimate Concerns Justify a Remand and the USDA's Request is Not Frivolous

The USDA's public and unequivocal statement that it intends to revisit the OLPP Rule, along with the interpretation of the OFPA used to justify the Withdrawal Rule, suggests that the USDA's request for remand is legitimate, and there is nothing in the record to suggest that it is frivolous or made in bad faith.

The request for remand is a commonsense response to the USDA's conclusion that the OLPP RIA was "seriously flawed and thus did not produce a reliable projection of costs and benefits."  Def. Mot. at 9 (quoting Final Decision, 85 Fed. Reg. at 57,943).  While the agency is not required to confess error in seeking remand, Limnia, Inc. v. United States Dep't of Energy, 857 F.3d at 387, the USDA's acknowledgment that "[i]mplementing the OLPP Rule based on such a flawed economic analysis is not in the public interest," Def. Mot. at 9 (quoting Final Decision, 85 Fed. Reg. at 57,944), underscores the legitimacy of its remand request.  As Judge Seeborg noted in Center for Environmental Health v. Vilsack, "[a]lthough there is some uncertainty about the issuance and timing of a new rule, the USDA's intention to move forward with rulemaking 'in a matter of months' does not appear to be in bad faith."  Center for Environmental Health v. Vilsack, 2022 WL 658965, at *3.

Moreover, "[g]iven the procedural posture of this case, interests of judicial economy counsel in favor of a voluntary remand."  FMBE Bank Ltd. v. Lew, 142 F.

Supp. 3d 70, 74 (D.D.C. 2015). The legal issues in the parties' cross-motions for summary judgment are complex and fact-intensive. It simply would not make sense to proceed to summary judgment and decide "the relative propriety" of the OLPP and withdrawal rules when the USDA has already acknowledged that both rules "incorporated flawed economic assumptions." Def. Mot. at 10. "A remand will allow the case to 'come before the court in a posture that facilitates review on the merits,' . . . [and] more focused judicial review." Bayshore Cmty. Hosp. v. Azar, 325 F. Supp. 3d 18, 23 (D.D.C. 2018) (quoting Ryan v. Bentsen, 12 F.3d 245, 249 (D.C. Cir. 1993)).

OTA's proposal, by contrast, would be an inefficient way to proceed. It would make no sense for the Court to invalidate the Withdrawal Rule and reinstate the OLPP Rule, as OTA requests, Pl. Mot. Summ. J.at 35, now that the USDA has concluded that the analysis that supported the OLPP Rule in the first instance is fatally flawed.

### C. Remand Would Not Unduly Prejudice OTA

OTA contends that remand would result in prejudice to OTA, both because the delay in implementing the original OLPP rule would exacerbate ongoing market and economic harms, and because, at the time OTA filed its opposition to the motion to remand, briefing on summary judgment was already underway. Pl. Opp. at 19-23.

While OTA may have legitimate concerns about delay, this is not a reason to deny remand. Even if the Court were to reach the merits of the cross-motions for summary judgment, as OTA requests, and even if OTA were to prevail on summary judgment, the USDA is correct that "[a]ny victory . . . would be short-lived if the OLPP Rule were reinstated only to be the subject of new legal challenge[s]" on the basis of the catalogued flaws in the OLPP RIA. Def. Mot. at 11. There simply is no plausible alternative path forward whereby the Withdrawal Rule

is struck down and the OLPP Rule is reinstated for any meaningful amount of time, now that the USDA has publicly acknowledged the flawed reasoning underlying the OLPP Rule. To be sure, the remand may cause delay; however, that delay is "time well spent." Bayshore Cmty. Hosp. v. Azar, 325 F. Supp. 3d at 23. Remand is a necessary procedural step for the USDA to reconsider conclusions in the Withdrawal Rule (i.e., the agency's statutory authority to promulgate the OLPP Rule under the OFPA) and to confront the noted defects in the RIAs. OTA instead urges the Court to "forc[e] a rule onto the public which the agency has acknowledged is unsound[,] [which] would undermine consumers' faith in the organic label—the main prejudice Plaintiff[] seek[s] to avert." Center for Environmental Health v. Vilsack, 2022 WL 658965, at *4.

OTA's next argument, that voluntary remand is particularly inappropriate where it leaves non-movants subject to a purportedly invalid regulation – here, the Withdrawal Rule – similarly fails. See Pl. Opp. at 20 (discussing Chlorine Chemistry Council v. EPA, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (denying motion for voluntary remand where remand "would have left petitioners subject to a rule they claimed was invalid.")). In contrast to Chlorine Chemistry Council, where the agency "made no offer to vacate the rule," 206 F.3d at 1288, here the USDA seeks to reconsider and remedy the very concerns identified in OTA's challenge to the Withdrawal Rule. The parties differ only on whether this should occur through the remand process or through this Court's adjudication of summary judgment.[3] The Court concludes that these concerns are best resolved by remand to the agency.

---

[3] OTA's reliance on this Court's determination in American Waterways Operators v. Wheeler, 427 F. Supp. 3d 95, is also misplaced. In that case, Judge Amit Mehta determined that environmental plaintiffs would be unduly prejudiced in part because remand would hamper ongoing and "significant environmental progress." 427 F. Supp. 3d at 99. Here, by contrast, granting the USDA's motion to remand for further consideration of the Withdrawal Rule does not interfere with any ongoing regulation; if anything, it removes a barrier to reinstating the OLPP Rule.

Finally, OTA argues that the USDA's purpose in seeking voluntary remand is to moot the case, and according to OTA, "remands for new rulemakings for the purpose of mooting merit[orious] challenges to existing regulations are inequitable, inherently prejudicial, and disallowed." Pl. Opp. at 19 (alterations omitted). The Court does not read or understand the referenced case law as supporting the foregoing proposition. See generally Utility Solid Waste Activities Grp. v. EPA, 901 F.3d 414 (D.C. Cir. 2018); Limnia, Inc. v. United States Dep't of Energy, 857 F.3d 379 (D.C. Cir. 2017). Even if Utility Solid Waste and Limnia stood for that proposition, however, this Court has already recognized that it is legitimate for an agency to moot claims against it by promulgating a new rule in order to "cure previous procedural defects or supersede previous rules." Organic Trade Ass'n I, 370 F. Supp. 3d at 111; see Center for Sci. in the Pub. Interest v. Regan, 727 F.2d 1161, 1164 (D.C. Cir. 1984) ("[I]t is not improper for an agency to engage in new rulemaking to supersede [prior] defective rulemaking."). Concern that "remand could require [OTA] to submit new or updated evidence and analysis, participate in another round of notice and comment, and re-litigate the next petition for review" does not demonstrate undue prejudice. See, e.g., Clean Wisconsin v. EPA, 964 F.3d at 1175-76. For the foregoing reasons, the Court concludes that granting the USDA's motion for voluntary remand will not unduly prejudice OTA.

### D. Vacatur

The final question is whether the Court should vacate the Withdrawal Rule before remanding to the USDA, or deny vacatur and maintain the status quo while the USDA reconsiders the rule on remand. When a Court identifies an infirmity in a rule, vacatur and remand is the "normal" remedy. Allina Health Servs. v. Sebelius, 746 F.3d 1102, 1110 (D.C. Cir. 2014). The D.C. Circuit has recognized, however, that courts have the discretion to remand

without vacatur based on the circumstances of the specific case. See, e.g., Black Oak Energy, LLC v. FERC, 725 F.3d 230, 244 (D.C. Cir. 2013); Delta Air Lines, Inc. v. Exp.–Imp. Bank, 718 F.3d 974, 978 (D.C. Cir. 2013); Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin., 429 F.3d 1136, 1151 (D.C. Cir. 2005) ("While unsupported agency action normally warrants vacatur, . . . this court is not without discretion [to remand without vacatur].").

In considering whether to vacate, courts weigh "the 'seriousness of the [rule's] deficiencies' and the likely 'disruptive consequences' of vacatur." Allina Health Servs. v. Sebelius, 746 F.3d at 1110 (quoting Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). The decision whether to vacate is based on equitable considerations. See Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers, 282 F. Supp. 3d 91, 108-09 (D.D.C. 2017) ("Vacatur is clearly a form of equitable relief that the Court may award, withhold, and craft to fit the circumstances of the case before it.") (quoting Sierra Forest Legacy v. Sherman, 951 F.Supp.2d 1100, 1106 (E.D. Cal. 2013)). The D.C. Circuit has concluded that "[w]hen an agency may be able readily to cure a defect," remand without vacatur is most appropriate. Heartland Reg'l Med. Ctr. v. Sebelius, 566 F.3d 193, 198 (D.C. Cir. 2009).

In this case, equitable considerations weigh heavily in favor of remanding without vacatur. Here, although the USDA has acknowledged "deficiencies" with the Withdrawal Rule's RIA, see Def. Mot. at 6, the Court concludes that these "deficiencies" are minor in light of "the likely 'disruptive consequences' of vacatur." Allina Health Servs. v. Sebelius, 746 F.3d at 1110 (quoting Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d at 150). Furthermore, the USDA "has recognized at least some of the deficiencies [with the Withdrawal Rule] and is already addressing them." Center for Environmental Health v. Vilsack, 2022 WL 658965, at *5; see also Heartland Reg'l Med. Ctr. v. Sebelius, 566 F.3d at 198 ("When an

agency may be able readily to cure a defect . . . the first factor in Allied–Signal counsels remand without vacatur.").

On the other hand, "the likely 'disruptive consequences' of vacatur" are serious. Allina Health Servs. v. Sebelius, 746 F.3d at 1110. In fact, vacating the Withdrawal Rule and reinstating the OLPP Rule makes little sense. Vacatur "would trade one defective rule for another" and force the OLPP Rule to "immediately spring into effect," causing "[m]any regulated entities [to] instantly go out of compliance, without the lead time the OLPP Rule envisioned." Environmental Health v. Vilsack, 2022 WL 658965, at *5, *1. The Court therefore concludes that the "disruptive consequences of vacatur," vastly outweigh maintaining the status quo. Allina Health Servs. v. Sebelius, 746 F.3d at 1110. The motion to remand is granted without vacatur.

## IV.  CONCLUSION

For the reasons set forth in this Opinion, the Court will grant the USDA's motion for voluntary remand without vacatur and deny the parties' cross-motions for summary judgment as moot. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 30, 2022