UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ORGANIC TRADE ASSOCIATION,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*<br><br>    **Defendants.** | **CASE NO. 1:17-cv-01875 (PLF)** |

# MEMORANDUM IN OPPOSITION
# TO DEFENDANT'S MOTION TO DISMISS ON MOOTNESS GROUNDS

# **INTRODUCTION**[1]

Four Presidents have governed while this APA case seeking a binding judicial construction of the Organic Foods Production Act[2] has been pending. Since 2017 the USDA has undertaken a series of interlocking administrative actions that delayed corrective regulations while whipsawing the regulated parties between polar opposite constructions of the OFPA. OTA twice completed summary judgment filings and twice USDA requested and received remands over objection. The result is the corrective measures to relieve the competition distorting and inconsistent regulations that are well analyzed in both the *OLPP* and *OLPS*, are delayed until 2029 or 2030 thus OTA's members have obtained no relief from the harms challenged in this case since 2018. OTA's members' livelihoods are tied to the organic regulations, they are certified organic farmers and businesses, consumers, certifying bodies and former advisory board members and a final disposition would serve them no less than USDA.

USDA has moved "to dismiss the Third Amended Complaint in the above-captioned matter as well as this action in its entirety," ECF 194 at p. 1, claiming the entire action is "moot because the 2018 Rule that OTA challenges in the operative Complaint has been superseded by subsequent notice-and-comment rulemaking." ECF 194 at p. 10. OTA opposes the motion to dismiss the TAC and this case as improvident and at best premature. The record discloses that the OTA had standing

---

[1] The naming conventions used herein:

1. 2017 *Organic Livestock Production Practices Final Rule*. ("*OLPP*");
2. 2018 *Final Withdrawal Rule* ("*Withdrawal*");
3. 2023 *Final Organic Livestock and Poultry Standards* rule ("*OLPS*");
4. *Third Amended Complaint* ("TAC").
5. *Third Supplemented Amended Complaint* ("STAC).
6. The National Organic Standards Board ("NOSB").

[2] Organic Foods Production Act of 1990, Pub. L. No. 101-624, § 2102, 104 Stat. 3359 (1990)(codified at 7 U.S.C. §§ 6501-6522) ("OFPA"); 7 C.F.R. pt. 205 (National Organic Program); S. Rep. No. 101-357 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 4656, 4949.

and the TAC was pending when USDA asked to "revisit the issues in this case, through further rulemaking." ECF Dkt. No. 142 at p. 1 (motion for voluntary remand). Following remand, USDA's rulemaking, the 2023 *OLPS* reinstated the majority of the animal welfare standards of the 2017 *OLPP*[3] but it failed to require the new production practices be followed by presently certified organic livestock operations until 2029, or in some cases until 2030, thus leaving fully intact a major adverse outcome of the *Withdrawal* rule. A key purpose of both the *OLPP* and the *OLPS* was to restore consumer confidence in the organic seal by eliminating and refreshing the old regulations that allowed unfair competition and inconsistent national standards for organic products.

While USDA contends the OLPS "supercedes" the *Withdrawal*, it ignores OTA has alleged, in each of the amended complaints filed in this case, that the USDA failed to comply with the mandatory consultation duty imposed on the Secretary under the OFPA.[4] Judge Collyer's first remand order noted the legal issues were the core of the case. *See* Remand Order, at p. 2, ECF Dkt. No. 112. USDA failed again to discharge this duty in its post-remand administrative proceedings and the STAC reflects this. (¶¶'s 319-325). Moreover, the extension of the compliance periods in the *OLPS* as far out as 2030 has undoubtedly perpetuated the harm in this case and any further delay in reaching the merits, as would occur if the case needed to be refiled, should be declined.[5]

---

[3] *See e.g.* Fall 2021 NOSB Meeting Transcript, at p. 670 (Statement of Under Secretary J. Moffit) ("In June, the Secretary announced that the National Organic Program would work on Organic Livestock and Poultry Practices rule. This rule has been written and is based on the 2017 Organic OLPP…").

[4] *See* ECF Dkt. No. 1 (Sept. 17, 2017) (Opening Complaint) (¶¶'s 139-48); ECF Dkt. No. 80 (Oct. 4, 2018) (Second Amended Complaint) (¶¶'s 295-304); ECF Dkt. No. 121 (Third Amended Complaint) (Nov. 2, 2020) (¶¶'s 269-275); ECF Dkt. No. 193 (Third Supplemented Amended Complaint) (June 23, 2025) (¶¶'s 319-325).

[5] OTA has argued throughout this case that its members have continued to suffer the very harms the 2017 publication was designed to alleviate, and the legal questions were at the core of its dispute with USDA, particularly in the pleadings debating the second request for voluntary remand. *See e.g.,* Dkt. No. 167 at p. 11-12 (Supplemental Briefing).

3

Nothing USDA accomplished on remand renders this controversy moot, and the fact that it delayed the solution until 2029 or 2030 and did not expressly rescind the *Withdrawal* vindicates well-grounded skepticism of voluntary cessation of unlawful conduct that functions to insulate challenged actions from review. USDA has plainly fallen far short of making it "impossible for a court to grant 'any effectual relief whatever'" to OTA should it prevail before this Court. *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (quoting Erie, 529 U.S. at 287) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)).

## BRIEF FACTUAL AND PROCEDURAL BACKGROUND

**A.  The Organic Livestock Production Practices Final Rule of 2017 ("OLPP")**

On January 19, 2017, after more than ten years of public hearings and formal recommendations from the USDA's expert advisory board, the National Organic Standards Board[6] ("NOSB"), and USDA's Office of Inspector General, USDA published the *Organic Livestock and Poultry Practices Rule*. *See* 82 Fed. Reg. at 7042-92 (January 19, 2017) (hereinafter "*OLPP*").

> AMS is conducting this rulemaking to maintain consumer confidence in the USDA organic seal. This action is necessary to augment the USDA organic livestock production regulations with clear provisions to fulfill one purpose of the Organic Foods Production Act: To assure consumers that organically produced products meet a consistent and uniform standard. OFPA mandates that detailed livestock regulations be developed through notice and comment rulemaking and intends for the involvement of the National Organic Standards Board (NOSB) in that process. (all citations omitted)

*   *   *   *

> This rule [is] consistent with recommendations provided by USDA's Office of Inspector General and nine separate recommendations from the NOSB. This rule adds requirements for the production, transport, and slaughter of organic livestock and poultry. The

---

[6] The National Organic Standards Board ("NOSB") was created by Congress to hold public meetings and propose standards *inter alia* for "the care of" livestock, like the *OLPP*. *See e.g.* 7 U.S.C. §§'s 6509(d)(2) and 6518.

provisions for outdoor access and space for organic poultry production are the focal areas of this rule.[7]

*       *       *       *

This variability perpetuates an uneven playing field among producers and sows consumer confusion about the meaning of the USDA organic label." 82 Fed. Reg. at 7082. The effective date of the OLPP was March 20, 2017 and the implementation date was March 20, 2018. *See* 82 Fed. Reg. at 7042. However, certified organic egg producers (layers) needed to implement the outdoor access requirements no later than March 21, 2022 and certified organic broiler operations needed to implement the indoor space requirements no later than March 20, 2020. *Id.*

### B. The Withdrawal of the *OLPP* in 2018.

On March 13, 2018 USDA published "*Final Rule; Rescission*" See 83 Fed. Reg. 10,775- 783 (March 13, 2018) ("*Withdrawal*"). Despite over 63,000 comments to the contrary (and only 50 in support of *Withdrawal*), USDA made the following key conclusions:

1. "AMS is withdrawing the *OLPP* final rule because it now believes OFPA does not authorize the animal welfare provisions of the *OLPP* final rule." 83 Fed. Reg. at 10,776; *accord* at 10,781 ("AMS maintains that the *OLPP* final rule exceeds AMS' scope of authority...");

2. "OFPA does not require AMS to consult with the NOSB prior to undertaking a rulemaking to withdraw the *OLPP* final rule." 83 Fed. Reg. 10,778 at n. 6.

### C. The Second Amended Complaint and the First Remand.

Plaintiff promptly requested leave to file its Second Amended Complaint ("SAC") following publication of the *Withdrawal* to challenge the two legal conclusions cited above, ECF Dkt. No. 34,

---

[7] 82 Fed. Reg. at 7082.

5

which was granted.[8] Defendants moved to dismiss on standing.[9] The court denied as to Counts 2 and 3, the counts challenging, *inter alia,* the erroneous legal conclusions.[10]

Plaintiff moved for summary judgment on October 31, 2019.[11] Defendants requested and received two extensions, ECF Nos. 98 and 99, and only hours before its opposition was due suddenly requested another 45-day delay.[12] At the end of the 45-day delay the Department agreed with Plaintiff's challenge to the economic modeling and asked for remand to determine "the impact of those findings on the *Rescission Rule*."[13] Judge Collyer authorized a 180-day remand noting the latest delay amounted to "the administrative process at its never-ending worst."[14] Defendants abandoned the *Withdrawal's* challenged economic modeling and reached back to the *OLPP's* unchallenged economic analysis concluding its review of both "conclusively demonstrate[ed] its untrustworthiness."[15] However, it did not address the pending legal questions, thus leaving the *OLPP* withdrawn.[16]

### D. The Third Amended Complaint.

Following the completion of the post-remand administrative activities that left the *Withdrawal* rule in place, on October 15, 2020 this court authorized filing of a *Third Amended Complaint*

---

[8] ECF Dkt. No. 74.
[9] ECF Dkt. No. 43.
[10] ECF Dkt. No. 77; *see also* ECF Dkt. No. 76 (Memorandum Opinion, at pp. 25-28)
[11] *See Motion for Summary Judgment,* ECF No. 98. Plaintiff's motion argued the Department's refusal to consult with the NOSB while considering a major revision to its organic livestock rules violated Congress's command that the Department "shall consult" the NOSB regarding livestock rules. The motion also challenged the Department's conclusion that the *OLPP*'s clarification of the existing "outdoor access" requirements for organic poultry (that had existed since the inception of the National Organic Program in 2000) were not authorized by the OFPA.
[12] ECF Dkt. No. 102.
[13] ECF Dkt. No. 108.
[14] ECF Dkt. No. 112 (Remand Order, at 2) (Judge Collyer noting the case presented "the fundamental question of USDA's authority" and that the "economic modeling" was secondary.)
[15] 85 Fed. Reg. 57937-944 (September 17, 2020)
[16] 85 Fed. Reg. 57937 (Sept. 17, 2020) (*Final Decision on Organic Livestock and Poultry Practices Rule and Summary of Comments on the Economic Analysis Report*).

("TAC").[17] The TAC re-alleged (1) the OFPA authorized the *OLPP* regulations and (2) the statute mandated a meaningful consultation with the National Organic Standards Board ("NOSB") take place *prior* to development or publication of the challenged organic livestock related rulemakings and the admitted error in economic modeling mandated favored vacatur of the *Withdrawal*. The TAC requested declaratory and permanent injunctive relief and sought *vacatur* of the *Withdrawal*.[18] The parties conferred regarding settlement but failed to reach a resolution. The case moved forward and briefing on summary judgment was completed.[19]

    E. **The Second Remand Request and Case Abeyance**.

During the summary judgment briefing period, USDA sought a second remand to "reconsider" the entirety of the *Withdrawal* with an express focus on the legal challenges presented in this lawsuit.[20] USDA projected an initial reconsideration rulemaking timeline of 6-9 months.[21] OTA objected, most specifically arguing that the legal issues were ripe for review, and no judicial, agency or party economy would be achieved, and USDA was improperly seeking to moot OTA's claims and vacatur of the *Withdrawal* should be completed.[22] This court disagreed and on March 30, 2022 a remand without vacatur was accordingly authorized.[23]

The purpose of the first remand request was to revisit the economic modeling challenged in this case.[24] The subject of the second remand request was broader, but Defendants expressly posited resolving a gravamen of this case: whether "the prior Administration's interpretation that the

---

[17] ECF Dkt. No. 120 at p. 3
[18] ECF Dkt. No. 121 at ¶ 4; *Id.* at Count Two, ¶¶'s 258-68.
[19] ECF Dkt. No. 140 (OTA motion for summary judgment) and Dkt. No. 154 (OTA reply).
[20] ECF Dkt. No. 142. (USDA remand motion).
[21] ECF Dkt. No. 142, at p. 11 (USDA remand motion); ECF Dkt. No. 170 at p. 10 (court citing Defendants' proffered timeline as a factor in analysis).
[22] ECF Dkt. No. 151 (OTA Opposition to Remand).
[23] ECF Dkt. No. 169 (Order) and Dkt. No. 170 (opinion).
[24] ECF Dkt. No. 102.

Organic Foods Production Act does not authorize… the 2017 Organic Livestock and Poultry Practices (OLPP) final rule."[25]  Regarding the NOSB consultation duty failure, in its summary judgment pleadings USDA maintained: "Although the OFPA requires USDA to consult with the NOSB on specified topics, livestock production practices are not one of those topics."[26]  USDA added: "[i]f the anticipated proposed rule is finalized, it would alter the regime created by the Withdrawal Rule and *readopt policies that are the same or similar to those in the OLPP Rule*."[27] (emphasis by Plaintiff).  USDA said:

> USDA has already instructed AMS to begin work on a proposed rule to reconsider the Withdrawal Rule at issue in this case and expects to be in a position to report back to the Court on the status of that rule within six to nine months of remand. While that work is ongoing, USDA does not object to this Court retaining jurisdiction, should this Court conclude that such an approach is necessary.[28]

The court agreed: "USDA seeks to reconsider and remedy the very concerns identified in OTA's challenge to the Withdrawal Rule."[29]  The court concluded "A remand will allow the case to "come before the court in a posture that facilitates review on the merits' . . . [and] more focused judicial review."[30]  The court declined to vacate the *Withdrawal* rule and ordered USDA to conduct "further consideration of the issues presented."[31]  A follow-up status report from the parties was ordered.[32] Following the first status report, and for every one filed thereafter, the Minute Order accepting the report recognized "The docket will remain open for appropriate submission by either party during this time."[33]  The parties duly filed ongoing status reports and the responsive Minute Orders all

---

[25] ECF Dkt. No. 142, at p. 1 (USDA remand motion).
[26] ECF Dkt. No. 150 at p. 31.
[27] ECF Dkt. No. 142, at p. 11 (USDA remand motion); *see also* ECF Dkt. No. 170 at p. 11 (court citing argument in memorandum opinion).
[28] ECF Dkt. No. 142 at 16.
[29] ECF Dkt. No. 170 at p. 14 (Memorandum Opinion)
[30] ECF Dkt. No. 170 at p. 13 (Memorandum Opinion, citations omitted by Plaintiff).
[31] ECF Dkt. No. 169 (Remand Order).
[32] ECF Dkt. No. 169 (Remand Order) and Dkt. No. 170 (Remand Memorandum Opinion).
[33] ECF Dkt. No. 172 (Joint Status Report); Minute Order of September 7, 2022.

noted the docket remained open. Final administrative action was published approximately one and half years later on November 2, 2023.[34]

F.  **The 2023 Organic Livestock and Poultry Standards .**

In late 2023 USDA published a revised final rule that differed only very slightly from the 2017 OLPP.[35] The publication was captioned, *The National Organic Program (NOP); Organic Livestock and Poultry Standards Rule*, 88 Fed. Reg. 75,394 (Nov. 2, 2023) (*"OLPS"*).

Regarding its statutory authority, which it denied in the *Withdrawal*,

> USDA now disagrees with the rationale and narrow textual reading in the Withdrawal Rule, and USDA finds it has ample authority to issue this final rule based on the text and structure of sec, 6509 and the statute's plain meaning (at sec. 6509 and elsewhere, including 7 U.S.C. 6501, 7 U.S.C. 6503(a), 7 U.S.C. 6506(a)(11)). 88 Fed. Reg. at 75397.

Regarding the market failure, competitive harms and absence of a single consistently applied national standard, which it denied in the *Withdrawal* the OLPS said,

> USDA is using its authority to address regulatory issues that (1) prevent fair competition among producers (as the regulations are not interpreted consistently or applied equally to producers), and (2) lead to such widely varying practices among some producers that consumers cannot be assured an organic product meets a consistent standard—a key purpose of OFPA. 88 Fed. Reg. at 75397.

Regarding NOSB consultation:

> Congress directed USDA to consult with the NOSB to establish a national organic certification program (7 U.S.C. 6503(c), 6509(d)) and develop detailed livestock regulations with notice and public comment (7 U.S.C. 6509(g)). USDA has done just that in developing [this regulation].  88 Fed. Reg. at 75,400

---

[34] 88 Fed. Reg. 75394 (Nov. 2, 2023).
[35] *See e.g.* Fall 2021 NOSB Meeting Transcript, at p. 670 (Statement of Under Secretary J. Moffit) ("In June, the Secretary announced that the National Organic Program would work on Organic Livestock and Poultry Practices rule. This rule has been written and is based on the 2017 Organic OLPP…").

9

Regarding implementation the 2017 *OLPP* implementation deadlines of March 2022 for organic laying operations and March 2020 for broiler operations, each was extended in the *OLPS* to 2029 or 2030. 82 Fed. Reg. at 7042.

The *OLPS* reported the last recommendation of the NOSB the Secretary considered was from 2011-- no consultations since that time were cited. 88 Fed. Reg. at 75401. The *OLPS* adopted implementation deadlines that extended to 2029 and in some cases 2030. 88 Fed. Reg. at 75394. The OLPS did not vacate or rescind the *Withdrawal* rule. *Passim.* However, USDA repeated what is said in 2017: "Market failure, uneven production costs, and loss of trust in the organic label are three consequences that AMS seeks to address with this rule." 88 Fed. Reg. at 75397.

G. Post Administrative Action Conferrals.

Following publication of the *OLPS*, the parties conferred regarding settlement but once again a change in administration occurred, and the attorney assigned to the case resigned thus slowing and ultimately ending the discussion. This court set a briefing schedule and authorized OTA to file an updated pleading. OTA now supplements its TAC and requests the court proceed to review the merits—OTA's proposed Supplemented TAC seeks *inter alia* vacatur of the *Withdrawal* rule and declaratory relief on the statutory arguments--contentions raised in each of its four complaints. *See* ECF No. 1 (Sept. 17, 2017) (first complaint); ECF No. 80 (Second Amended Complaint); ECF No. 121 (Third Amended Complaint) ("TAC").

## LEGAL STANDARD

A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) "[T]he government's abandonment of a challenged regulation …can moot an issue." *Samma v. Dep't of Def.*, 136 F.4th 1108, 1113 (D.C. Cir. 2025) (citations omitted). However, "A case becomes

10

moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (cleaned up). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307-08; *see also, e.g., Chafin 13 v. Chafin*, 568 U.S. 165, 172 (2013).

When a suggestion of mootness for an entire case is advanced because of "a change in the legal framework governing the case" the court must focus on "the precise relief that [the non-movant] requested in the prayer for relief in their complaint. *"New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 338–39 (2020). Under this standard, "A case becomes moot "only when it is *impossible* for a court to grant '*any* effectual relief whatever' to the prevailing party." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 526 (D.C. Cir. 2025) (emphasis by court).

## ARGUMENT

The principal flaw in USDA's request for dismissal of OTA's pending case without an opportunity to supplement under Rule 15(d) is that it asserts the mere existence of a final, post-remand action compels dismissal—USDA is wrong. To be sure, OTA agrees with USDA that the *OLPS* supersedes the *Withdrawal* rule in some respects, Dkt. No. 194, at 9 (noting livestock production practices rules are amended) but the *OLPS* did not resolve all of the pending claims in this case, ECF Dkt. No. 121 (Third Amended Complaint) (Nov. 2, 2020) (¶¶'s 269-275) (alleging USDA failed to consult NOSB); ECF Dkt. No. 193 (Third Supplemented Amended Complaint) (June 23, 2025) (¶¶'s 319-325) (same). In the TAC OTA requested this court:

> Enter a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the OFPA requires the Department to consult with the NOSB prior to amending existing organic livestock regulations, including the *OLPP*. ECF No. 121 at p. 84 (Prayer for Relief)

On the state of the pleadings, the *OLPS* is an unexamined final administrative action the "superficial mootness" of which cannot be the basis of dismissal of OTA's case on mootness grounds. *Alphabet*

11

*Workers Union-Commc'n Workers of Am., Loc. 9009 v. Nat'l Lab. Rels. Bd.*, 134 F.4th 1217, 1225 (D.C. Cir. 2025) quoting *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (*en banc*). USDA's motion to dismiss should be denied, the filing of the STAC authorized, and the impact of the post-remand administrative actions on the pending claims fully vetted.

### USDA Has Failed to Establish This Case is Moot.

USDA suggests "that this action is moot because the 2018 Withdrawal that OTA challenges in the operative Complaint has been superseded" by the *OLPS*. ECF Dkt. No. 194 at 12. (USDA' Memorandum in Support). USDA's conclusion is based on a misapplication of governing law and misstatement of facts. At a minimum, it would be impossible to render judgment in USDA's favor at this juncture without resolving disputed issues arising from the post-remand administrative action and it would be particularly difficult to reach such a conclusion before arguments are sharpened by the production of the necessary portions of the administrative record.

A motion to dismiss for lack of case or controversy by claiming the dispute is moot is evaluated under Federal Rule of Civil Procedure 12(b)(1). *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 441 (D.C. Cir. 2020). Here USDA asserts what is essentially a facial challenge to the existence of subject-matter jurisdiction thus "the Court will accept factual allegations in the complaint as true." *Jordan v. Rubio*, No. 1:24-CV-01844 (TNM), 2025 WL 2144093, at *4 (D.D.C. July 29, 2025). In the circumstance of this motion to dismiss, it is the Third Amended Complaint that USDA challenges.

The TAC asserted statutory claims, *inter alia*, that USDA failed to consult the NOSB prior to conducting rulemaking on organic livestock production practices. ECF Dkt. No. 121 (Third Amended Complaint) (Nov. 2, 2020) (Count Three--¶¶'s 269-275); at ¶¶'s 24-30; *see also* ECF Dkt. No. 193 (Third Supplemented Amended Complaint) (June 23, 2025) (Count Three-¶¶'s 319-325) (same). This Court has already determined OTA has standing to assert the statutory rights secured by

the OFPA, including the consultation duty that appears several times in the statute. *See* ECF Dkt. No. 77 (order denying motion to dismiss on standing grounds); *see also* ECF Dkt. No. 76 (Memorandum Opinion, at pp. 25-28); *see e.g.* 7 U.S.C. §6503; §6509(d)(2); §6518(k). Similarly, OTA's TAC asserted standing to vindicate its members right to a federal regulatory program that ensures a single national standard that is consistently applied is settled to ensure fair competition and protect consumers. *See* 7 U.S.C. 6501; *see also* ECF Dkt. No. 77 (Collyer standing order); *see also* ECF Dkt. No. 76 (Memorandum Opinion, at pp. 25-28)(discussing competitive harm). Failure to observe these statutory duties is alleged in the pending TAC and the supplementations proposed in the STAC under Rule 15(d). ECF Dkt. No. 193 (Third Supplemented Amended Complaint) (June 23, 2025) (¶¶'s 319-325).

Based on the allegations in the TAC. and STAC, OTA has alleged and continues to allege redressable injuries-in-fact under the *Withdrawal* and *OLPS*. *See e.g.* ECF Dkt. No. 193 (proposed STAC) Exhibits 3-8 (declarations); ECF Dkt. No. 34 (Second Amended Complaint) Exhibits 5-13 (declarations). The declarations appended to the TAC and the STAC in this case include each former chairperson of the NOSB save one since it was first convened following its creation in the 1990 Farm Bill. *See* ECF Dkt. No. 193 Exhibits 5-6 (adding board chairpersons during the two remands). Each declaration attests to the well settled consultative practice that prevailed before *Withdrawal*. The failure to consult the NOSB prior to the *Withdrawal* and the *OLPS* rulemakings are unredressed harms. *See e.g. Ctr. for Biological Diversity*, 861 F.3d at 182 (quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) (describing an agency's failure to meet its statutory consultation requirement as the "archetypal procedural injury."); *see also City of Dania Beach v. FAA*, 485 F.3d 1181, 1186 (D.C. Cir. 2007) (Plaintiff "never has to prove that if he had received the procedure the substantive result would have been altered."). OTA alleged in the TAC that the failure to consult led to the unlawful rescission of the *OLPP*. *See* ECF Dkt. No. 121 at 268.

13

Moreover, the TAC alleged consumer and competitive harm arising from the failure to implement a single national standard that is consistently implemented. ECF Dkt. No. 121 at ¶214; ¶220(bb). The *OLPS* reported the last recommendation of the NOSB the Secretary considered was from 2011-- no consultations since that time were cited. 88 Fed. Reg. at 75401. The *OLPS* adopted implementation deadlines that extended to 2029 and 2030. 88 Fed. Reg. at 75394. The *OLPS* did not vacate or rescind the *Withdrawal* rule. Accordingly, the allegations in the TAC are unsatisfied and the OLPS cannot be a basis for a finding of mootness for this case. *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 339 (2020); *see also Jordan v. Rubio*, No. 1:24-CV-01844 (TNM), 2025 WL 2144093, at *7 (D.D.C. July 29, 2025) (case not moot; plaintiff suffering ongoing harms).

Moreover, even if USDA could show that the *OLPS completely* resolved OTA's challenges, which it can't, and ceased its unlawful refusal to consult the NOSB, it is well-established that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *see Trinity Lutheran Church of Columbia, Inc.v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (governor's repeal of policy did not moot case where "there is no clearly effective barrier that would prevent the [Department] from reinstating [its] policy in the future" (internal quotation marks omitted)). Voluntary cessation cannot moot a claim unless the moving party satisfies the "heavy burden" of showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). "[B]ald assertions of a defendant—whether governmental or private—that it will not resume a challenged policy fail to satisfy any burden of showing that a claim is moot." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). As noted in the Factual Background section herein, USDA has already proposed rescinding two other final rules regarding organic pet food and organic

14

mushroom standards without consulting the NOSB.  When combined with the failure to consult the NOSB prior to the *Withdrawal* and the *OLPS*, USDA has not met its burden of showing the unlawful policy of non-consultation has ended.  USDA has failed to carry its burden of demonstrating that "it is *impossible* for a court to grant '*any* effectual relief whatever' to the prevailing party." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 526 (D.C. Cir. 2025) (emphasis in original).  For these reasons, OTA's request for a judicial declaration does not seek an advisory opinion

In *New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 590 U.S. 336, 339 (2020) the Supreme Court affirmed that a change in the governing legal framework while a case is pending can moot a challenge to that law or regulation *only* when it provides "the precise relief that petitioners requested in the prayer for relief in their complaint."  Here the USDA failed to vacate, revoke or rescind the *Withdrawal* rule. *Compare Biden v. Texas*, 597 U.S. 785, 808 (2022) (Supreme Court noting rescission statement marks a final decision "I hereby supersede and rescind the June 1 memorandum.").  The absence of recission highlights the fundamental difference between judicial action, which is inherently retroactive and declares what the law has always been, and regulatory action, which is presumptively prospective. *See, e.g.*, *James M. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982). USDA also failed to conduct the necessary NOSB consultation, 88 Fed. Reg. at 75401, thus demonstrating that the non-consultation policy is ongoing, as the recent proposed rescission of the Pet Food and Mushroom rules demonstrates.  And additionally, absent judicial intervention the harmful consequences of the 2018 *Withdrawal* on competition and consumer protection will continue until 2029.  "As such OTA's members are "direct and current competitor[s] whose bottom line may be adversely affected by the challenged government action."  ECF Dkt. No. 76 at p 15 (Memorandum Opinion).

> Our precedent is clear that "if a plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well," the plaintiff may seek declaratory relief notwithstanding a "moot or otherwise fully resolved" claim, so long as the plaintiff has

standing and the claim is ripe for review.

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 530 (D.C. Cir. 2025). Under these circumstances, this case is not moot and USDA's motion should be denied and the request for leave to file the STAC should be granted. *Jordan v. Rubio*, No. 1:24-CV-01844 (TNM), 2025 WL 2144093, at *1 (D.D.C. July 29, 2025) (rejecting mootness—"Jordan continues to suffer consequences from the Department's years-long refusal to issue her a passport. So much is obvious: She still lacks a passport.").

## **Conclusion**

For the foregoing reasons OTA requests USDA's motion to dismiss this case be denied.

Respectfully Submitted:

/s/  William J. Friedman
William J. Friedman (*admitted pro hac vice)*
107 S. West St.
Alexandria, VA 22314
Tel.:  571.217.2190
Email:  pedlarfarm@gmail.com

Counsel for OTA

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the forgoing motion, memorandum, proposed order, and all attachments and exhibits thereto were served by the Court's CM/ECF system on this 15th day of September 2025 upon:

U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Counsel for Defendants

/s/
William J. Friedman