**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ORGANIC TRADE ASSOCIATION,** *et al.*, | |
| *Plaintiff*, | |
| v. | Case No. 1:17-cv-01875-PLF |
| **UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION..............................................................................................................1

I.    Promulgation of a Superseding Rule After a Remand Order Moots a
Proceeding for Judicial Review of the Original Rule. ...........................................2

II.    The Voluntary Cessation Doctrine Is Not Applicable..........................................3

III.    The Relief Requested in the Operative Complaint Would be Advisory in
Nature and Therefore Ineffectual. ........................................................................5

IV.    OTA's Request for a Declaratory Judgment Does Not Save This Case
from Dismissal........................................................................................................9

    A.    The TAC Pleads No Claim for Relief from an Ongoing Policy of
Non-Consultation.................................................................................10

    B.    Even if the TAC's Allegations Stated a Claim for Relief from an
Ongoing Policy, the Challenge is Unripe and OTA Never
Established Standing to Challenge that Ongoing Policy.......................14

        1.    Any Abstract Claim for Declaratory Relief is Not Ripe..............14

        2.    OTA Has Not Demonstrated Standing to Attack Future
Applications of any Abstract Policy of Non-Consultation..........17

    C.    Insofar as TAC Alleges a Claim for Declaratory Relief from an
Ongoing Policy, the Court Should Require OTA to Show Cause
Why Judgment Should Not Be Entered for Defendants for Failure
to Challenge Discrete Final Agency Action.........................................21

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
  827 F.3d 100 (D.C. Cir. 2016) ................................................................ 1, 5, 6

*Alaska v. USDA.*,
  17 F.4th 1224 (D.C. Cir. 2021) ................................................................ *passim*

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011) ................................................................ 22

*Am. Bar Ass'n v. FTC*,
  636 F.3d 641 (D.C. Cir. 2011) ................................................................ 3

*Am. Hosp. Ass'n v. Azar*,
  385 F. Supp. 3d 1 (D.D.C. 2019) ............................................................ 2

*Bark v. U.S. Forest Serv.*,
  37 F. Supp. 3d 41 (D.D.C. 2014) ............................................................ 23

*Bennett v. Donovan*,
  703 F.3d 582 (D.C. Cir. 2013) ................................................................ 2, 7, 8

*Biden v. Texas*,
  597 U.S. 785 (2022) ............................................................................... 22

*Bongiovanni v. Austin*,
  Case No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445 (M.D. Fla. July 5, 2023) .............. 12

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*,
  Civ. A. No. 20-cv-11297-PBS, 2024 WL 5346305 (D. Mass. Dec. 6, 2024) ................. 7

*Buck v. Am. Airlines, Inc.*,
  476 F.3d 29 (1st Cir. 2007) ..................................................................... 22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................... 21

*Changji Esquel Textile Co. v. Raimondo*,
  40 F.4th 716 (D.C. Cir. 2022) ................................................................ 25

*City of Houston v. Dep't of Hous. & Urb. Dev.*,
  24 F.3d 1421 (D.C. Cir. 1994) ................................................................ *passim*

*Coal. for Competitive Elec., Dynegy, Inc. v. Zibelman*,
  272 F. Supp. 3d 554 (S.D.N.Y. 2017), *aff'd*, 906 F.3d 41 (2d Cir. 2018) .............. 24

*Cobell v. Kempthorne*,
   455 F.3d 301 (D.C. Cir. 2006)........................................................................22

*Cobell v. Norton*,
   240 F.3d 1081 (D.C. Cir. 2001)......................................................................22

*Coker v. Austin*,
   688 F. Supp. 3d 1116 (N.D. Fla. 2023)............................................................3

*Colonel Fin. Mgmt. Officer v. Austin*,
   Case No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767 (M.D. Fla. Apr. 3, 2023)..............13

*Conservation Force, Inc. v. Jewell*,
   733 F.3d 1200 (D.C. Cir. 2013)..........................................................14, 17, 18

*Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*,
   709 F.2d 1521 (D.C. Cir. 1983)......................................................................24

*Ctr. for Biological Diversity v. Raimondo*,
   Civ. A. No. 18-112 (JEB), 2024 WL 324103 (D.D.C. Jan. 29, 2024),
   *appeal dismissed*, 2024 WL 2061696 (D.C. Cir. May 3, 2024)................10, 12, 13

*Ctr. for Env't Health v. Perdue*,
   Case No. 18-cv-01763-RS, 2018 WL 9662437 (N.D. Cal. Aug. 21, 2018)..........25

*Davis v. Untied States*,
   499 F.3d 590 (6th Cir. 2007)..........................................................................22

*DeFunis v. Odegaard*,
   416 U.S. 312 (1974)........................................................................................3

*Del Monte Fresh Produce Co. v. United States*,
   570 F.3d 316 (D.C. Cir. 2009)........................................................................19

*Dep't of Educ. v. Brown*,
   600 U.S. 551 (2023)......................................................................................19

*EPA v. Brown*,
   431 U.S. 99 (1977)..........................................................................................5

*Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*,
   604 U.S. 542 (2025)........................................................................................4

*Glob. Health Council v. Trump*,
   153 F.4th 1 (D.C. Cir. 2025), *denying reh'g en banc*,
   2025 WL 2709437 (D.C. Cir. Aug. 28, 2025)..................................................23

*GPA Midstream Ass'n v. U.S. Dep't of Transp.*,
67 F.4th 1188 (D.C. Cir. 2023) ..................................................................... 8

*Gulf Oil Corp. v. Simon*,
502 F.2d 1154 (Temp. Emer. Ct. App. 1974) ............................................... 16

*Heartland Reg'l Med. Ctr. v. Leavitt*,
415 F.3d 24 (D.C. Cir. 2005) .......................................................................... 2

*Hewitt v. Helms*,
482 U.S. 755 (1987) ........................................................................................ 5

*Humane Soc'y of the U.S. v. USDA*,
41 F.4th 564 (D.C. Cir. 2022) ........................................................................ 8

*In re AOV Indus., Inc.*,
792 F.2d 1140 (D.C. Cir. 1986) ...................................................................... 6

*J.T. v. Dist. of Columbia*,
983 F.3d 516 (D.C. Cir. 2020) ........................................................................ 9

*La. ex rel. Landry v. Biden*,
64 F.4th 674 (5th Cir. 2023) .................................................................... 18, 19

*Larsen v. U.S. Navy*,
525 F.3d 1 (D.C. Cir. 2008) ................................................................. 6, 10, 12

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .................................................................................. 22, 24

*Mass. Coal. for Immigr. Reform v. U.S. Dep't of Homeland Sec.*,
---F. Supp. 3d---, 2025 WL 2674765 (D.D.C. Sep. 18, 2025) .................... 4, 9

*Moharam v. Transp. Sec. Admin.*,
134 F.4th 598 (D.C. Cir. 2025) ...................................................................... 6

*N. Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) ........................................................................ 7

*Nat'l Ass'n of Home Builders v. EPA*,
667 F.3d 6 (D.C. Cir. 2011) .......................................................................... 18

*Nat'l Council of Agric. Emps. v. U.S. Dep't of Lab.*,
143 F.4th 395 (D.C. Cir. 2025), *denying reh'g en banc*,
2025 WL 2808442 (D.C. Cir. Oct. 1, 2025) ................................................... 8

*Nat'l Mining Ass'n v. U.S. Dep't of Interior*,
251 F.3d 1007 (D.C. Cir. 2001) ................................................................... 7, 8

*Nat'l Treasury Emps. Union v. Vought,*
    149 F.4th 762 (D.C. Cir. 2025) ................................................................*passim*

*Nat'l Wildlife Fed'n v. Hodel,*
    839 F.2d 694 (D.C. Cir. 1988) .......................................................................2, 3

*New York State Rifle & Pistol Ass'n v. City of New York,*
    590 U.S. 336 (2020) ............................................................................................6

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) .............................................................................................22

*Nuclear Regul. Comm'n v. Texas,*
    605 U.S. 665 (2025) ..............................................................................23, 24, 25

*OTA v. USDA,*
    370 F. Supp. 3d 98 (D.C. Cir. 2019) .......................................................*passim*

*OTA v. USDA,*
    Civ. A. No. 17-1875 (PLF), 2022 WL 951335 (D.D.C. Mar. 30, 2022) ........2, 4, 7

*Planned Parenthood of Wis., Inc. v. Azar,*
    942 F.3d 512 (D.C. Cir. 2019) ...........................................................9, 10, 12, 13

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
    489 F.3d 1279 (D.C. Cir. 2007) .......................................................................20

*Puerto Rico v. United States,*
    490 F.3d 50 (1st Cir. 2007) ..............................................................................24

*Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. USDA,*
    Civ. A. No. 20-2552 (RDM), 2025 WL 947475 (D.D.C. Mar. 28, 2025) ............18

*Reno v. Cath. Soc. Servs., Inc.,*
    509 U.S. 43 (1993) .............................................................................................16

*Rhodes v. Stewart,*
    488 U.S. 1 (1988) ................................................................................................5

*S. Co. Servs., Inc. v. Fed. Energy Regul. Comm'n,*
    416 F.3d 39 (D.C. Cir. 2005) ...........................................................................13

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ..........................................................................................20

*Texas v. United States,*
    523 U.S. 296 (1998) ..........................................................................................15

*The Fund for Animals v. Norton*,
    390 F. Supp. 2d 12 (D.D.C. 2005) .................................................................... 2, 5

*Toilet Goods Ass'n v. Gardner*,
    387 U.S. 158 (1967) ........................................................................................... 15

*United States v. Brundage*,
    903 F.2d 837 (D.C. Cir. 1990) ............................................................................. 8

*Vill. of Bensenville v. Fed. Aviation Admin.*,
    376 F.3d 1114 (D.C. Cir. 2004) ........................................................................ 14

*Webb v. Dep't of Health & Hum. Servs.*,
    696 F.2d 101 (D.C. Cir. 1982) .......................................................................... 16

*Women's Equity Action League v. Cavazos*,
    906 F.2d 742 (D.C. Cir. 1990) .......................................................................... 25

*Wong Yang Sung v. McGrath*,
    339 U.S. 33 (1950) ............................................................................................. 24

*Wyoming v. Zinke*,
    871 F.3d 1133 (10th Cir. 2017) ........................................................................ 16

**STATUTES**

5 U.S.C. § 551 ........................................................................................................ 8, 22

5 U.S.C. § 704 ............................................................................................................ 22

**REGULATIONS**

Proposed Rule, National Organic Program (NOP); Organic Livestock and Poultry Standards,
    87 Fed. Reg. 48,562 (Aug. 9, 2022) .................................................................... 4

National Organic Program (NOP); Organic Livestock and Poultry Standards,
    88 Fed. Reg. 75,394 (Nov. 2, 2023) ................................................... 6, 7, 12, 14

**OTHER AUTHORITIES**

10A Wright & Miller's Federal Practice & Procedure § 2720.1 (4th ed. 2025 update) ............. 21

33 Wright & Miller's Federal Practice & Procedure Judicial Review § 8307
    (2d ed. 2025 update) ......................................................................................... 24

Letter from John L. Smeltzer, Attorney, Env't & Nat. Res. Div., U.S. Dep't of Just., to
    Mark J. Langer, Clerk, U.S. Court of Appeals for the D.C. Cir. (Sep. 3, 2021) ........................ 4

## INTRODUCTION

Consistent with the "perfectly uncontroversial and well-settled principle of law [that] . . . when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot[,]" *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016), the Court should dismiss this case because the organic regulations that Plaintiff Organic Trade Association ("OTA") challenges in the operative complaint have been replaced and superseded. Although OTA may continue to desire a purely advisory opinion as to the validity of the rules affecting organic livestock and poultry practices that were on the books between 2018 and 2023 or as to the nature of the United States Department of Agriculture ("USDA")'s statutory obligations to consult with the National Organic Standards Board ("NOSB" or the "Board") in the abstract, this Court lacks jurisdiction to provide such relief.

OTA's opposition fails to provide any reason to believe this case remains live. The D.C. Circuit has repeatedly held that a superseding rule issued as a prudent response to a district court's remand order will moot a challenge to the original rule. And OTA has not established that any mootness exception applies. Nor do the allegations and claims in the operative complaint challenge any putative ongoing "policy of non-consultation." *See* Mem. in Opp'n to Def.'s Mot. to Dismiss on Mootness Grounds at 15, ECF No. 198. And even if they did, the applicable analysis would still compel dismissal because OTA has not demonstrated that any request for declaratory relief is ripe and that it has standing to bring such a forward-looking challenge. Nor does OTA have a cause of action to challenge a putative abstract "policy of non-consultation" with the Board, *see id.*, divorced from any specific final agency action, as that term is defined by the Administrative Procedure Act ("APA"). The Court should dismiss this action without prejudice.

## I.    Promulgation of a Superseding Rule After a Remand Order Moots a Proceeding for Judicial Review of the Original Rule.

OTA cites no authority to support its contention that "the mere existence of a final, post-remand" superseding rule does not "compel[] dismissal" of a lawsuit for judicial review of the original rule on mootness grounds. *Id.* at 11. Insofar as OTA is arguing that this Court's previous remand order somehow renders D.C. Circuit precedent addressing mootness arising from superseding rulemaking inapplicable, OTA misses the mark. On the contrary, the D.C. Circuit has held that a superseding rule issued as "a prudent response to [a] district court's remand order" will moot a challenge to the original rule. *Alaska v. USDA.*, 17 F.4th 1224, 1228 (D.C. Cir. 2021) (quoting *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 742 (D.C. Cir. 1988)). And again, this Court has already rejected, in this very case, the notion that "remands for new rulemakings for the purpose of mooting [claimed] merit[orious] challenges to existing regulations are" somehow "disallowed." *OTA v. USDA*, Civ. A. No. 17-1875 (PLF), 2022 WL 951335, at *8 (D.D.C. Mar. 30, 2022) ("*OTA*") (quoting Pl.'s Opp'n to USDA's Request for Remand Without Vacatur at 19, ECF No. 151).

As is always the case, insofar as a plaintiff is "'dissatisfied with [the agency's] remedy [on remand], [it] would always have the option to seek review' of that remedy under the APA" in a new case. *See Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019) (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)). But a plaintiff may not resurrect the proceeding in which the district court remanded the original rule to the agency. *See Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 30 (D.C. Cir. 2005) ("[W]hether or not [an] agency's post-[remand agency action] was arbitrary is a determination that must be made in [the plaintiff's] separate APA action challenging [the agency's] post-remand decisions."); *The Fund for Animals v. Norton*, 390 F. Supp. 2d 12, 14-15 (D.D.C. 2005) (rejecting a plaintiff's effort to challenge new rule in the same district court proceeding in which a court remanded the original rule).

## II.    The Voluntary Cessation Doctrine Is Not Applicable.

OTA is wrong to argue that the voluntary cessation doctrine saves this case from mootness. ECF No. 198 at 14-15. The voluntary cessation doctrine is not applicable here for at least two reasons. First, the post-remand proceedings that USDA conducted were compelled by the Court's entry of the remand order itself, which was issued to resolve OTA's claims for judicial review of the original rule. The remand order compelled USDA to reconsider the challenged rule. Order, ECF No. 169 (ordering USDA to conduct "further consideration of the issues presented"). True, USDA began further rulemaking on its own initiative and sought entry of a remand order from the Court voluntarily given its desire to reconsider the challenged rule. But entry of that order transformed an entirely voluntary rulemaking into a reconsideration process compelled by force of the Court's order. In other words, after the Court entered the remand order, there was no longer anything voluntary about USDA's reconsideration of the challenged rule, which culminated in the 2023 Rule. *See DeFunis v. Odegaard*, 416 U.S. 312, 318 (1974) ("mootness in the present case depends not at all upon a 'voluntary cessation'"); *Alaska*, 17 F.4th at 1227 ("[T]here [is] nothing 'voluntary' about [a] federal agency's" compliance with a court order.); *Coker v. Austin*, 688 F. Supp. 3d 1116, 1124 (N.D. Fla. 2023) ("Whether [plaintiffs] can rely on [the voluntary cessation] exception is questionable because there was nothing voluntary about" an agency's decision compelled by "duly enacted legislation"). Again, applying the voluntary cessation doctrine to keep litigating OTA's challenge to regulations that were on the books between 2018 and 2023 would be entirely inconsistent with D.C. Circuit precedent holding that a superseding rule issued "merely [as] a prudent response to [a] district court's remand order" moots a challenge to the original rule. *E.g., Hodel*, 839 F.2d at 742.

Second, and in any event, "[t]he established law of this circuit is that 'the voluntary cessation exception to mootness has no play' when the agency did not act 'in order to avoid litigation.'" *Alaska*, 17 F.4th at 1229 (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011)). And USDA proposed and then finalized the superseding rule "[f]or the reasons stated in the preamble," Proposed Rule, National Organic Program (NOP); Organic Livestock and Poultry

Standards, 87 Fed. Reg. 48,562, 48,591 (Aug. 9, 2022), not to moot this lawsuit or any other. *See also OTA*, 2022 WL 951335, at *5 (referencing a public statement explaining why the agency had intended to revisit the challenged rule). *See Mass. Coal. for Immigr. Reform v. U.S. Dep't of Homeland Sec.*, ---F. Supp. 3d---, 2025 WL 2674765, at *5 (D.D.C. Sep. 18, 2025) (change in policy "driven by political considerations wholly unrelated to this case" does not trigger voluntary cessation doctrine).[1]

Furthermore, any argument that the voluntary cessation doctrine applies based on OTA's speculation that USDA may—at some undefined point in the future—rescind the 2023 Rule and reimpose rules like those that were on the books in this area between 2018 and 2023 without consulting the Board, *see* ECF No. 198 at 14-15 (noting that "USDA has already proposed rescinding two other final rules regarding organic pet food and organic mushroom standards without consulting the NOSB"), would be flatly inconsistent with the D.C. Circuit's opinion in *Alaska v. United States Department of Agriculture*, 17 F.4th 1224 (D.C. Cir. 2021). In *Alaska*, the State of Alaska challenged a Forest Service rule prohibiting road construction in certain areas on National Forest System lands. *Id*. at 1226. In October 2020, USDA issued a superseding final rule exempting the relevant Alaska national forest from the rule. *Id*. But after "the 2020 Presidential election, the Agriculture Department announced its intention to propose a new rulemaking that would 'repeal or replace [that] 2020 Tongass Exemption' from the Roadless Rule." *Id*. at 1227 & n.3 (quoting Letter from John L. Smeltzer, Attorney, Env't & Nat. Res. Div., U.S. Dep't of Just., to Mark J. Langer, Clerk, U.S. Court of Appeals for the D.C. Cir. (Sep. 3, 2021)). That pronouncement was an insufficient basis to save the case from being moot or to allow the D.C. Circuit to conclude that the agency would certainly promulgate a final rule consistent with the announced intention. *Id*. at 1227-30. Here, even if USDA had announced its intention to propose

---

[1] Any suggestion that the agency's reasoning and statements in the preambles to the proposed and final rules were a sham and that the real reason the agency underwent notice and comment rule making was instead to moot this lawsuit would be inconsistent with the presumption of regularity to which the agency's statements are entitled. *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 577-78 (2025).

a new rulemaking that would repeal or replace the 2023 Rule that superseded the rule at issue in this case—which it has not—this case may not proceed based on "speculat[ion] about future actions by policymakers" and the Court may "not take the 'wholly novel' action of 'review[ing] regulations not yet promulgated.'" *Id*. at 1229 (quoting *EPA v. Brown*, 431 U.S. 99, 104 (1977)). That is especially so when a new rule "must proceed through notice-and-comment rulemaking." *Id*. at 1229 n.5. Whether and by what procedures USDA may decide to make further changes to regulations in the organic livestock and poultry practices area is even more speculative than it was in *Alaska*, given that USDA has not announced any intention to promulgate a new rule in this area.

Ultimately, as discussed above, even if USDA were to change course and promulgate a new rule reflecting some policy embodied in the 2018 Rule, that would give rise to a new challenge to a new rule based on a new administrative record; it would not resurrect a challenge to the 2018 Rule. *See The Fund for Animals*, 390 F. Supp. 2d at 15 ("[A] new 'final agency action' resulting from an entirely new rule making process" is "based upon a different administrative record[.]").

## III.    The Relief Requested in the Operative Complaint Would be Advisory in Nature and Therefore Ineffectual.

This case is also moot because the relief sought in the Third Amended Complaint ("TAC"), ECF No. 121, would be advisory and thus ineffectual. In short, there is no effectual relief the Court can order Defendants to provide OTA as to former regulations without current legal effect.

The problem with OTA's argument that the Court may still provide effectual relief is that it contradicts *Akiachak Native Community v. United States Department of Interior*, 827 F.3d 100 (D.C. Cir. 2016), and the many cases it cites. *Id*. at 113-14. Contrary to OTA's assertions, a "'well-settled principle of law' is this: 'when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot.'" *Alaska*, 17 F.4th at 1226 (quoting *Akiachak Native Cmty.*, 827 F.3d at 113). Mootness occurs when entry of relief prayed for in the complaint would do nothing to affect the defendant's immediate conduct toward the plaintiff. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988); *Hewitt v. Helms*, 482 U.S. 755, 761 (1987). In that circumstance, entry of the relief demanded would be ineffectual because it "would

accomplish nothing—amounting to exactly the type of advisory opinion Article III prohibits." *Akiachak Native Cmty.*, 827 F.3d at 106 (quoting *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008)). A ruling on the merits of an APA challenge to a superseded rule "would be advisory." *Alaska*, 17 F.4th at 1228. The 2023 Rule's provisions—including the implementation dates included in its preamble—not the 2018 Rule, now govern covered entities in this area.

OTA is wrong to contend that, in *New York State Rifle & Pistol Ass'n v. City of New York*, 590 U.S. 336 (2020) ("*NYSR&P*") (per curiam), the Supreme Court held that mootness in this area can occur "*only* when [the new rule] provides 'the precise relief that petitioners requested in the prayer for relief in their complaint.'" ECF No. 198 at 15 (quoting *NYSR&P*, 590 U.S. at 339). In *NYSR&P*, the Court held that a new legal framework providing "the precise relief that petitioners requested in the prayer for relief in their complaint" was a sufficient condition for mootness. 590 U.S. at 338-39. But the Court did not conclude that such a framework is a necessary condition for mootness. Again, mootness also occurs when the relief demanded would be advisory in nature and therefore ineffectual because it would not affect the defendant's immediate conduct toward the plaintiff. *Supra* at pp. 5-6.[2]

OTA misses the mark in arguing that "USDA failed to vacate, revoke or rescind the [2018] rule." ECF No. 198 at 15. Rather, it is undisputed that the agency entirely revised (and thus replaced) the relevant provisions of Part 205 of Title 7 of the Code of Federal Regulations in 2023. National Organic Program (NOP); Organic Livestock and Poultry Standards, 88 Fed. Reg. 75,394, 75,444-49 (Nov. 2, 2023). Any opinion regarding whether the prior provisions were valid when they were on the books between 2018 and 2023 would thus be merely advisory. *See Moharam v. Transp. Sec. Admin.*, 134 F.4th 598, 605 (D.C. Cir. 2025). "To determine whether anything remains of [OTA's] case, [the Court] need[s] to identify which regulations [OTA] challenges and

---

[2] Moreover, "[e]ven when the moving party is not entitled to dismissal on article III grounds, common sense or equitable considerations may justify a decision not to decide a case on the merits." *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986). "Determinations of mootness in this latter sense cannot be cabined by inflexible, formalistic rules, but instead require a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail." *Id.* at 1147-48.

whether the [2023 Rule] altered those regulations." *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1010 (D.C. Cir. 2001). Although that can be "no small task" in cases like this one where OTA's papers "refer generally to" rules "without, in many instances, providing any citations to the C.F.R.[,]" the "old set of rules, which are the subject of this lawsuit, cannot be evaluated as if nothing has changed." *See id.* at 1010-11. Here, though, OTA challenges the old set of rules on the books between 2018 and 2023, which have been replaced in all relevant respects by the provisions codified in 2023. 88 Fed. Reg. at 75,444-49. And the materials that the agency considered in deciding both what to include in Part 205 of Title 7 as well as the implementation dates for those provisions are reflected in the administrative record for the 2023 Rule, not the administrative record for the 2018 Rule that OTA challenges. Issuing an opinion based on the administrative record for the 2018 Rule would therefore be advisory.

OTA is also wrong insofar as it is suggesting that the Court somehow has the power to reanimate the rules in this area that were once on the books between 2017 and 2018. *See* ECF No. 198 at 15. OTA "brought a complaint under the [APA] to set aside an unlawful agency action, and in such circumstances, it is the prerogative of the agency to decide in the first instance how best to provide relief" after a "'remand to the agency[.]'" *See Bennett*, 703 F.3d at 589 (quoting *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012)). The Court has already remanded the challenged rule to the agency[3] and the agency exercised that prerogative when it promulgated the 2023 Rule. The Court certainly lacks power to reanimate a rule that has been "twice superseded . . . with new sets of regulations" as has now happened here. *See Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, Civ. A. No. 20-cv-11297-PBS, 2024 WL 5346305, at *1 (D. Mass. Dec. 6, 2024). OTA cites no authority that the Court "has the power to reanimate the [2017] Rule's provisions." *See id.* The 2023 Rule's provisions are now on the books and the notion that the Court can reanimate some old set of rules simultaneously defies common sense. *See id.* Rather, issuing an opinion analyzing and setting aside the "old set of rules"

---

[3] In doing so, the Court concluded that remand without vacatur was the appropriate remedy. *See OTA*, 2022 WL 951335, at *8-9.

that were on the books between 2018 and 2023 "would be merely advisory." *See Nat'l Mining Ass'n*, 251 F.3d at 1011.

Insofar as OTA is arguing that the 2023 Rule's future implementation dates render something that was promulgated in 2018 still operative and reviewable, *see* ECF No. 198 at 15, OTA misunderstands how duly prescribed rules operate. "Like an enacted statute, which becomes 'valid law' once enacted even if not yet 'effective,' . . . a duly prescribed rule is law even if it sets a future effective date." *See Humane Soc'y of the U.S. v. USDA*, 41 F.4th 564, 571 (D.C. Cir. 2022) (quoting *United States v. Brundage*, 903 F.2d 837, 843 (D.C. Cir. 1990)); *see also Nat'l Council of Agric. Emps. v. U.S. Dep't of Lab.*, 143 F.4th 395, 406 (D.C. Cir. 2025) ("A 'final rule is prescribed when it is established authoritatively'" and "[t]hat occurs when the rule 'is duly fixed and so becomes binding on the public, even if it sets a future effective date.'" (quoting *GPA Midstream Ass'n v. U.S. Dep't of Transp.*, 67 F.4th 1188, 1195 (D.C. Cir. 2023))), *denying reh'g en banc*, 2025 WL 2808442 (D.C. Cir. Oct. 1, 2025). By duly prescribing the provisions of the 2023 Rule after this Court's remand order, USDA has entirely replaced the prior set of rules that were on the books between 2018 and 2023 due to the 2018 Rule. *See Humane Soc'y*, 41 F.4th at 571; *Nat'l Mining Ass'n*, 251 F.3d at 1010-11. In other words, OTA's real complaint is that the rules in this area continue not to affirmatively require what OTA desires of other firms in the organic market until the future implementation dates outlined in the preamble to the 2023 Rule. But the 2023 Rule's preamble statement—not the 2018 Rule's provisions—is the now-operative agency statement of future effect on that issue. *See* 5 U.S.C. § 551(4). The implementation dates as well as substantive Part 205 livestock provisions reflect "the prerogative of the agency to decide in the first instance [after remand] how best to provide relief." *See Bennett*, 703 F.3d at 589. And OTA retains "the option to seek review" of this new action under the judicial review provisions of the APA in a new suit. *See id. See also* Defs.' Mot. to Dismiss the Third Am. Compl. & Opp'n to Pl.'s Mot. for Leave to File Suppl. Compl. At 5-15, ECF No. 195.

## IV.     OTA's Request for a Declaratory Judgment Does Not Save This Case from Dismissal.

OTA is wrong to suggest that it may avoid mootness by gesturing toward the request for a declaratory judgment prayed for in the operative complaint. ECF No. 198 at 11 (citing TAC at 84, Request for Relief (b), (c)); *id.* at 15 (claiming "OTA's request for a judicial declaration does not seek an advisory opinion" because "USDA has not met its burden of showing the unlawful policy of non-consultation has ended"). "When a plaintiff's specific claim is moot or otherwise fully resolved, there are three potential outcomes to a request for declaratory relief." *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). "First, if a plaintiff has made no challenge to some ongoing underlying policy, but merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful, unless the specific claim fits [one of the mootness] exception[s.]" *Id. See J.T. v. Dist. of Columbia*, 983 F.3d 516, 522-23 (D.C. Cir. 2020); *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516-17 (D.C. Cir. 2019); *Mass. Coal. for Immigr. Reform*, 2025 WL 2674765, at *8. "Second, if a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, then the mooting of the plaintiff's specific claim obviously leaves the court unable to award relief." *City of Houston*, 24 F.3d at 1430. Third, "if a plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy, then declaratory relief may be granted if the claim is ripe for review." *Id.*

The claims in the TAC that have not already been dismissed attack isolated agency action—the 2018 Rule. The TAC does not plausibly allege nor challenge an ongoing agency policy. Thus, the claims alleged in the TAC that have not already been dismissed are moot under the first *City of Houston* outcome. But even if the TAC's allegations did go to an ongoing policy, as discussed below, OTA has not pled the existence of an agency action, as defined by the APA, reflecting that policy and that satisfies the APA's mandatory requirement of finality, nor has OTA

demonstrated that its request for declaratory relief is ripe or that it has standing to bring such a forward-looking challenge.

**A. The TAC Pleads No Claim for Relief from an Ongoing Policy of Non-Consultation.**

The TAC's allegations place this case into the first *City of Houston* outcome. "It is true that 'a plaintiff's challenge will not be moot where it seeks declaratory relief as to an ongoing policy.'" *Planned Parenthood of Wis.*, 942 F.3d at 516 (citation omitted). But where the operative complaint "allege[s] no such policy" and the pleading's "claims focus[] exclusively on" a particular agency action, no such claim for relief is properly before the Court at all. *See id.* at 516-17. The operative complaint must include more than a nominal request for declaratory relief from a policy in the pleading's demand for relief sought. It must include plausible "allegations" going to the existence of and stating a claim for relief against enforcement of that "ongoing policy[.]" *City of Houston*, 24 F.3d at 1430. *See also Larsen*, 525 F.3d at 5 ("declin[ing] to revive this case by reading into plaintiffs' complaint an argument not adequately presented" after examining the "four relevant counts" in the operative complaint); *Ctr. for Biological Diversity v. Raimondo*, Civ. A. No. 18-112 (JEB), 2024 WL 324103, at *5-6 (D.D.C. Jan. 29, 2024), *appeal dismissed*, 2024 WL 2061696 (D.C. Cir. May 3, 2024).

Here, the TAC did not plausibly allege, let alone challenge, an ongoing policy of non-consultation with the NOSB. On the contrary, the TAC alleged a longstanding policy of consultation with the NOSB that, OTA claimed, did not occur with respect to the 2018 Rule. Specifically, the TAC alleged that "[s]ince the creation of the NOSB and the inception of the National Organic Program, USDA has observed a well-settled practice of publishing proposed and final organic livestock standards solely upon the receipt and consideration of recommendations from the NOSB following significant public input." TAC ¶ 272. Indeed, OTA alleged that "[i]n accordance with the [Organic Foods Production Act of 1990 ('OFPA')], the Department consulted with the NOSB and obtained advice and received formal recommendations, many of which were incorporated into its 54-page *OLPP* final rule published in the Federal Register on January 19,

2017 with an effective date of March 20, 2017." *Id*. ¶ 260. But OTA complained that USDA "failed to consult with the NOSB on each of the three delay rules that amended the effective date of the *OLPP* and failed to consult on the proposed and final [2018 Rule.]" *Id*. ¶ 273. It is only because isolated actions—three challenged rules issued in 2017 and 2018—allegedly departed from this alleged longstanding and "well-settled practice" of consultation, *id*. ¶ 272, did OTA claim that these several "isolated agency action[s]," *see City of Houston*, 24 F.3d at 1429, "are *ultra vires*, harm Plaintiff and its members, and should be vacated[,]" TAC ¶ 275.

Indeed, attached to the TAC are witness declarations that entirely undermine any notion that the TAC pleaded an ongoing policy of non-consultation. OTA attached testimony from twelve witnesses in the form of witness declarations. ECF No. 121-2. In those declarations, former members of the NOSB testify that, when the complaint was filed, the agency had a longstanding policy of consulting with the NOSB and that the discrete rules challenged in the TAC deviated from that ongoing policy. Consider the testimony of Robert Anderson, a past member of the NOSB who attests to continuing to follow the development of organic policy and the work of the National Organic Program. ECF No. 121-2, Decl. of Robert Anderson ¶ 2. Mr. Anderson attests that in his "experience any action by the [National Organic Program ('NOP')] or Secretary that required public notice and comment, whether guidance or legislative rulemakings, was conducted solely in the aftermath of consultation with the NOSB." *Id*. ¶ 5. And he testifies that a statement in the preamble to the 2018 Rule regarding the consultation requirements in the OFPA was "inconsistent" with those "past practices[.]" *Id*. Indeed, all twelve witnesses provide the exact same testimony indicating that, at the time the TAC was filed, there was no ongoing policy of non-consultation. *See* ECF No. 121-2. Rather, their testimony suggests that they viewed the 2018 agency action as an isolated incident. *See id*. Notably, there are no allegations in the TAC involving post-2023 accusations of non-consultation.

Rather than allege any ongoing policy in the operative complaint, OTA first alleges the existence of an ongoing policy in its opposition to Defendants' motion to dismiss the TAC on mootness grounds. *See* ECF No. 198 at 14-15 ("As noted *in the Factual Background section*

*herein*, USDA has already proposed rescinding two other final rules regarding organic pet food and organic mushroom standards without consulting the NOSB." (emphasis added).[4] But putting aside the fact that the factual allegations included in OTA's opposition brief hardly plausibly allege an ongoing policy given its allegations that USDA did consult with the NOSB in promulgating the 2023 Rule, *see id.* at 9 ("[r]egarding NOSB consultation: Congress directed USDA to consult with the NOSB . . . . USDA has done just that" (quoting 88 Fed. Reg. at 75,400)),[5] OTA simply cannot first raise allegations purporting to state that claim in an opposition brief. *See Planned Parenthood of Wis.*, 942 F.3d at 517 (concluding that plaintiffs forfeited challenge to ongoing policy when they "first alleged an ongoing policy in the final footnote of their opening appellate brief"); *Larsen*, 525 F.3d at 5 ("Finally, plaintiffs argue that they challenge the Navy's current hiring policy . . . . Plaintiffs' complaint, however, focuses on the Thirds Policy."); *Ctr. for Biological Diversity*, 2024 WL 324103, at *6 ("While it is undoubtedly true that a change to a policy 'is not necessarily mooted merely because the challenge to the particular agency action is moot,' . . . Plaintiffs have alleged no such policy. Not in Count VI and not elsewhere." (internal citation omitted)); *Bongiovanni v. Austin*, Case No. 3:22-cv-580-MMH-MCR, 2023 WL 4352445, at *8 (M.D. Fla. July 5, 2023) (plaintiffs' contention that case is not moot because Navy "policies and procedures for evaluating [religious accommodation requests] remain in place" fails when "in the Complaint, Plaintiffs do not challenge [that] process as a whole or assert that [it] is defective with regard to other requests for accommodations"). Although OTA "remain[s] free to challenge ongoing

---

[4] The Factual Background section of OTA's memorandum in opposition to Defendants' motion to dismiss on mootness grounds does not appear to include the referenced factual allegations. *See* ECF No. 198 at 4-10. OTA may have intended to reference the Factual Background section of its reply memorandum in support of its Rule 15 motion for leave to file a supplemental complaint. *See* ECF No. 197 at 4.

[5] The testimony that OTA adduces from Thomas Chapman, dated June 12, 2025, also supports the view that OTA never challenged an ongoing policy in the TAC but rather challenged isolated actions reflecting an alleged change in policy. Decl. of Thomas Chapman, ECF No. 193-3. Specifically, Mr. Chapman testifies that "[u]ntil the cycle of rulemakings at issue in [this] lawsuit, the Secretary [of Agriculture] routinely consulted the NOSB prior to undertaking any notice and comment rulemaking regarding the NOP regulations, and to my knowledge there were no organic livestock regulations ever adopted without consultation." *Id.* ¶ 10.

[USDA] policies in a separate action," it cannot state that claim for the first time in its briefing in opposition to Defendants' motion to dismiss. *See Planned Parenthood of Wis.*, 942 F.3d at 517.

OTA's conduct and representations throughout this action also indicate that it has not seriously pressed any claim for relief from an ongoing policy. *See, e.g. Ctr. for Biological Diversity*, 2024 WL 324103, at *5 ("In considering whether the city's request for declaratory judgment saved the case from mootness, the D.C. Circuit faulted the plaintiff for having 'focused almost exclusively on its attempt to recover the 1986 penalty' during much of the litigation and expressed doubt as to whether its 'passing references to HUD's alleged policy of acting without a hearing suffice to prevent the mooting of its entire case'" (quoting *City of Houston*, 24 F.3d at 1430)); *Colonel Fin. Mgmt. Officer v. Austin*, Case No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023) (considering, among other indicia, claims for relief plaintiffs had pressed "during hearings throughout this action"). Consider for example OTA's briefing in support of its motion for summary judgment on the claims in the TAC. ECF Nos. 140, 154. That briefing in no way articulates nor substantiates any purported claim for relief from an ongoing policy unmoored from its challenge to the 2018 Rule. *Id.* Nor did it even mention its purported request for a declaratory judgment as to an ongoing policy. *See, e.g.*, ECF No. 140-1 at 35 ("For the foregoing reasons OTA respectfully requests judgment be entered in its favor on Counts Two, Three, and Four of its Third Amended Complaint and the [2018 Rule] be vacated.").

Because OTA "has made no challenge to some ongoing underlying policy, but merely attacks isolated agency action" its claims are moot unless they fit a mootness exception. *City of Houston*, 24 F.3d at 1429-30. The only mootness exception OTA presses is the voluntary cessation doctrine. ECF No. 198 at 14. Again, that doctrine does not apply. *Supra* at pp. 3-5.[6]

---

[6] OTA has not invoked the mootness exception for controversies capable of repetition, yet evading review. Because OTA bears the burden of showing the requirements for this exception are met, *S. Co. Servs., Inc. v. Fed. Energy Regul. Comm'n*, 416 F.3d 39, 43-44 (D.C. Cir. 2005), OTA has forfeited any reliance on this exception.

**B. Even if the TAC's Allegations Stated a Claim for Relief from an Ongoing Policy, the Challenge is Unripe and OTA Never Established Standing to Challenge that Ongoing Policy.**

Even if the TAC included allegations stating a claim for relief from an abstract policy of non-consultation—which it does not—the claim would not save this case from dismissal under *City of Houston* because OTA has nowhere demonstrated that its request for declaratory relief is ripe and that it has standing to bring such a challenge. *See* 24 F.3d at 1430. "[P]laintiffs who challenge an ongoing policy must still demonstrate both that 'the request for declaratory relief is ripe' and that they have 'standing to bring such a forward-looking challenge." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1206 (D.C. Cir. 2013) (citation omitted).

**1. Any Abstract Claim for Declaratory Relief is Not Ripe.**

Consider first the issue of ripeness. The ripeness inquiry requires courts "to consider the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 778 (D.C. Cir. 2025) (quoting *Vill. of Bensenville v. Fed. Aviation Admin.*, 376 F.3d 1114, 1119 (D.C. Cir. 2004)). And "issues are not fit for review" when a claim for prospective relief is not based on a "definitive [agency] statement regarding" the challenged alleged policy and plaintiffs instead "seek to infer [the claimed policy] from various specific acts[.]" *Id*. at 785.

Here, OTA's claim for declaratory relief against enforcement of the putative policy of non-consultation is not based on a definitive agency statement that it seeks to review but instead based on inferences from proposals to rescind "two other final rules regarding organic pet food and organic mushroom standards . . . combined with the [alleged] failure to consult the NOSB prior to the [2018 Rule] and the [2023 Rule.]" ECF No. 198 at 14-15. And although OTA asserts in the argument section of its brief that no consultation occurred before USDA issued the 2023 Rule, *id*. at 15, in the background section it quotes the preamble to that rule as including an agency statement that "Congress directed USDA to consult with the NOSB" in certain circumstances and "USDA has done just that in developing [this regulation]." *Id*. at 9 (quoting 88 Fed. Reg. at 75,400). "Because the exact scope of the putative" policy of non-consultation "is thus unclear, judicial

review 'is likely to stand on a much surer footing in the context of a specific application.'" *Vought*, 149 F.4th at 785-86 (quoting *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967)).

Moreover, even assuming as true OTA's allegations in its brief that USDA did not consult with the NOSB before issuing two recent proposed rules, ECF No. 198 at 14-15, those are proposed rules, not final rules. USDA thus retains "an opportunity to change course before" issuance of any final rule. *See Vought*, 149 F.4th at 786. Indeed, during the comment period, OTA may urge USDA to consult with the NOSB before finalizing any proposed rule, undermining the notion that these claims are fit for abstract review. *See Alaska*, 17 F.4th at 1229 n.5 ("Here, [USDA] must proceed through notice-and-comment rulemaking. We will not presume that the Department is violating the law by going into that process with its mind made up.").

This Court's earlier opinions in this case provide further grounds to conclude that OTA's claim for declaratory relief against enforcement of the putative policy of non-consultation is not fit for review in the absence of a specific application. This Court previously rejected the notion that the OFPA includes any "blanket requirement for USDA to consult with the Board on livestock regulations[.]" *OTA v. USDA*, 370 F. Supp. 3d 98, 114 (D.C. Cir. 2019). And the Court noted that the "OFPA describes USDA's consultation obligations with varying degrees of specificity" applying in different contexts. *Id*. Because the context in which USDA acts may matter when analyzing whether the agency has sufficiently consulted with the Board, OTA's claim is not fit for abstract review. *See id*.

Nor has OTA demonstrated "unusual hardship from postponing review" until it raises its claim in the context of a challenge to a concrete agency action, as that term is defined in the APA. *Vought*, 149 F.4th at 786. OTA has not pointed to any rulemaking involving a proposed or final rule that would require its members "to engage in, or to refrain from, any conduct." *Id*. (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)). Rather, the interests OTA has sought to protect in this lawsuit involve protecting its members from increased competition by others—a protection it has hoped to maintain through USDA enforcement of the type of provisions at issue in the 2023 Rule against competitors of OTA's members. *See OTA*, 370 F. Supp. 3d at 106-10. But OTA's

interest in "benefit[s] from the regulatory protection of the" 2023 Rule—or rules like it, "which [OTA] hope[s the Court's] judicial review will insure . . . is not a 'hardship' contemplated by the prudential ripeness rubric." *Wyoming v. Zinke*, 871 F.3d 1133, 1143 (10th Cir. 2017); *see also Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 58 (1993) (agency actions do not impose hardship when they "impose no penalties for violating any newly imposed restriction, but [rather] limit access to a benefit created by [statute] but not automatically bestowed on" beneficiaries).

What is more, insofar as OTA is complaining that raising a challenge to the implementation dates included in the 2023 Rule in a new lawsuit—rather than as part of an abstract claim for a declaratory judgment here—would impose hardship, that "is not a hardship; it is par for the course" regarding how agency action is traditionally challenged under the APA. *Vought*, 149 F.4th at 786. *See also* ECF No. 195 at 5-15 (describing how challenges to superseding regulations must be brought in a new lawsuit). "That filing should not be significantly more burdensome than" proceeding to review the claims for declaratory relief from a putative ongoing policy of non-consultation that OTA includes in its recent briefing. *Cf. Gulf Oil Corp. v. Simon*, 502 F.2d 1154, 1156 (Temp. Emer. Ct. App. 1974). When the "only hardship" that a plaintiff "will endure as a result of delaying consideration of [an] issue is the burden of having to file another suit[,]" the plaintiff fails to show hardship sufficient to demonstrate a claim that is ripe for review. *City of Houston*, 24 F.3d at 1432 (quoting *Webb v. Dep't of Health & Hum. Servs.*, 696 F.2d 101, 107 (D.C. Cir. 1982)). That "is hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form." *Webb*, 696 F.2d at 107.

Dismissing any putative claim for declaratory relief as unripe would be consistent with the D.C. Circuit's application of these principles in *City of Houston* itself. *See* 24 F.3d at 1430-32. In *City of Houston*, a city sued the Department of Housing and Urban Development ("HUD") claiming that the agency's decision to reduce, without a hearing, a previously-issued grant award for fiscal year 1986 violated a statutory provision, the APA, and the city's due process rights. *Id.* at 1424-25. The district court granted summary judgment to HUD on mootness grounds because "the lapse of the appropriation from which fiscal 1986 [grant] monies were drawn meant that there

were no funds available from which HUD could lawfully repay" the city. *Id*. at 1424. On appeal, like OTA, the city argued that "even if its claim for specific monetary relief is moot . . . it nevertheless is entitled to a declaratory judgment that HUD is required to provide notice and an opportunity for a hearing before reducing a grantee's [grant]." *Id*. at 1428.

The *City of Houston* court rejected that argument, concluding that any such claim for declaratory relief was unripe. *Id*. at 1430-32. The D.C. Circuit first concluded that there was "no way for [the] court to consider whether HUD can act without a hearing in some amorphous category of 'cases such as this one,' because the actual contours of the cases within the category are potentially determinative of their outcome." *Id*. at 1431. That is equally true here given that, again, this Court has already held that the OFPA does not include a "blanket requirement for USDA to consult with the Board on livestock regulations" and that the context of a particular agency action matters in evaluating any statutory consultation requirement. *OTA*, 370 F. Supp. 3d at 114. *See supra* at p. 15. In *City of Houston*, the D.C. Circuit also found that the "case would be quite different if, for example, HUD announced a firm policy, applicable in all cases, under which it claimed the authority to reduce grantees' [grants] without ever holding a hearing." 24 F.3d at 1431. In this case as well, OTA does not contend the putative policy of non-consultation it challenges is itself set forth in any USDA rule, guidance, or other agency statement describing the contours of the putative policy. *See supra* at pp. 14-15.

### 2. OTA Has Not Demonstrated Standing to Attack Future Applications of any Abstract Policy of Non-Consultation.

Nor has OTA established "standing to bring such a forward-looking challenge" to a putative ongoing policy of non-consultation. *See Jewell*, 733 F.3d at 1206 (citation omitted). Again, the D.C. Circuit requires that OTA demonstrate "standing to attack future applications of" the putative ongoing "policy[.]" *See City of Houston*, 24 F.3d at 1430. But OTA's standing arguments and the Court's standing analysis have focused on injury due to enforcement of the 2018 Rule—not due to any putative policy of non-consultation in the abstract. Earlier in this litigation, OTA argued, and the Court agreed, only that "its members have 'competitor standing'

because they will face increased competition in the marketplace as a result of the [2018] Rule." *OTA*, 370 F. Supp. 3d at 106. The Court held that the 2018 Rule had "prevent[ed] a shrinkage of the pool of producers eligible to compete in the organic livestock market, to the detriment of OTA's members." *Id*. at 107. The TAC does not allege, nor does OTA argue, nor has the Court concluded, that OTA's members suffer an injury-in-fact due to any future applications of USDA's putative ongoing policy of non-consultation. *See Jewell*, 733 F.3d at 1207; *City of Houston*, 24 F.3d at 1430. In fact, the Court has already concluded that "OTA does not plausibly allege that it will be party to another final rule that will be subject to repeated short-term delays." *OTA*, 370 F. Supp. 3d at 112. The same is true for the TAC's failure to allege that OTA will be party to additional final rules harming OTA's members due to enforcement of a putative policy of non-consultation with the NOSB. "[I]f a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, then the mooting of the plaintiff's specific claim obviously leaves the Court unable to award relief." *City of Houston*, 24 F.3d at 1430.

Given that the putative policy at issue seemingly applies only in the context of USDA organic rulemakings, OTA faces substantial obstacles to demonstrating standing to attack future applications of the putative policy in the abstract rather than as part of a challenge to a final rule. Insofar as OTA "rel[ies] on harms wrought by regulations that *may*" be impacted by USDA's future application of a putative policy of non-consultation, "[i]t is well accepted that the mere 'possibility of regulation' [or insufficient regulation of others] fails to satisfy injury in fact." *La. ex rel. Landry v. Biden*, 64 F.4th 674, 681 (5th Cir. 2023) (quoting *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 13 (D.C. Cir. 2011)). Even if USDA does not consult with the Board during a rulemaking proceeding, OTA can only speculate that USDA will promulgate any final regulation that harms an identified OTA member. "[T]he procedural nature of [a] plaintiff['s] claims d[oes] not excuse [it] 'from demonstrating . . . a concrete interest that [is] affected by the deprivation of the claimed right.'" *Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. USDA*, Civ. A. No. 20-2552 (RDM), 2025 WL 947475, at *12 (D.D.C. Mar. 28, 2025) (quoting

*Dep't of Educ. v. Brown*, 600 U.S. 551, 562 (2023)). And "[t]he actual rulemaking considerations of a federal agency are not determinable in advance." *Landry*, 64 F.4th at 682.[7]

Contrast the TAC's allegations with cases in which the D.C. Circuit has held that a plaintiff maintains standing to attack future applications of an ongoing policy after the mooting of a plaintiff's specific claim. Consider, for example, *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009). In *Del Monte*, a produce company claimed that an agency's failure to act on its application for a license to export agricultural commodities to ten entities in Iran violated 5 U.S.C. § 706(1). 570 F.3d at 320. But the company also alleged that, "'[b]ecause facilitating sales of, and selling, food products to Iran is, and has been, a part of [the company's] ongoing business plan, [the company] will continue to apply [to the agency] for [similar] licenses in the future on a continuing basis' . . . and '[t]here is a reasonable expectation that [the company] will be subject to the same inaction and/or action by [the agency] again in the future with respect to future license applications[.]'" *Id*. at 320-21 (citation omitted). Because the agency granted the company's application and issued the requested license after the company filed suit, the district court dismissed the case as moot. *Id*. The D.C. Circuit reversed the dismissal, holding "that the injury to [the company] was capable of repetition because [it] had to re-apply for the license each year and the government had confirmed that it expected similar delays in the future." *See OTA*, 370 F. Supp. 3d at 112 n.10 (analyzing *Del Monte*, 570 F.3d at 320, 325-26). As this Court already held as part of a capable of repetition, yet evading review analysis addressing OTA's claims regarding the 2017 Delay Rules, "[n]o similar facts are alleged here." *Id*.

*City of Houston v. Department of Housing & Urban Development*, 24 F.3d 1421 (D.C. Cir. 1994), also involves a fact pattern that—on the standing issue—meaningfully differs from this one. In *City of Houston*, the plaintiff received a grant from the defendant agency annually, "and so

---

[7] Similar issues confront OTA's assertion that "[t]he failure to consult the NOSB prior to the *Withdrawal* and the *OLPS* rulemakings are unredressed harms." ECF No. 198 at 13. USDA's putative failure to consult with the NOSB is not itself an injury to any OTA member. "[A] procedural right *in vacuo*—is insufficient to create Article III standing." *Brown*, 600 U.S. at 562 (citation omitted).

presumably would be at sufficiently imminent risk of injury from . . . a policy [of reducing those grant funds without a hearing] to satisfy standing requirements." *Id.* at 1430. Again, no similar facts are alleged here; this Court found that the TAC's allegations go to injuries suffered by OTA members from competition with other livestock producers under the conditions of the 2018 Rule. *See OTA*, 370 F. Supp. 3d at 107.

In contrast to *City of Houston* and *Del Monte*, OTA has not shown—and cannot shown— that an identified member will face injury due to enforcement of future final regulations promulgated under any putative policy of non-consultation with the NOSB. Any argument that an OTA member faces competitive injury due to USDA's choice of implementation dates in the preamble to the 2023 Rule, *see* ECF No. 198 at 13-14, does not show standing to attack future applications of any putative policy of non-consultation as necessary to justify forward-looking declaratory relief. The 2023 Rule and its preamble have already been promulgated. Prospective application of a declaratory judgment in future rulemakings would not implicate the 2023 Rule. Again, OTA is free to challenge and seek appropriate APA relief against the implementation dates included in the 2023 Rule's preamble in a separate action.

Nor can OTA argue that, because it is a trade association made up of many individual members that are active in the organic industry, some of those members are statistically likely to face injury due to enforcement of future final regulations promulgated under any putative policy of non-consultation with the NOSB. The Supreme Court has rejected that style of associational standing reasoning as a "novel approach" that "would make a mockery of [its] prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member . . . would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). "[T]he doctrine of standing to sue is not a kind of gaming device that can be surmounted merely by aggregating the allegations of different kinds of plaintiffs, each of whom may have claims that are remote or speculative taken by themselves." *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1294 (D.C. Cir. 2007) (citation omitted). That principle is "critically important to increased-risk cases brought by organizations" on behalf of members. *Id.*

**C.  Insofar as TAC Alleges a Claim for Declaratory Relief from an Ongoing Policy, the Court Should Require OTA to Show Cause Why Judgment Should Not Be Entered for Defendants for Failure to Challenge Discrete Final Agency Action.**

Even if this Court were to conclude that there is no jurisdictional bar to OTA's purported claim for a declaratory relief against enforcement of a putative "policy of non-consultation[,]" ECF No. 198 at 15, the TAC does not allege a cause of action to press any such claim. Insofar as the Court concludes that OTA has standing to challenge a ripe claim for relief from a putative ongoing policy of non-consultation pleaded in the TAC, the Court should still dismiss Counts Two and Three (which challenge the 2018 Rule) as moot and then consider ordering OTA to show cause why the Court should not enter judgment for Defendants on OTA's purported claim for declaratory relief for failure to plead a cause of action. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). *See* 10A Wright & Miller's Federal Practice & Procedure § 2720.1 (4th ed. 2025 update).

Insofar as the TAC states a claim for declaratory relief against enforcement of a putative "policy of non-consultation[,]" ECF No. 198 at 15, Defendants would be entitled to judgment on that claim because Plaintiffs have not pleaded a cause of action. Neither the Declaratory Judgment Act nor the APA provides OTA with a cause of action to challenge such a putative ongoing policy. Nor would OTA be able to satisfy the stringent criteria required for nonstatutory *ultra vires* review of a putative ongoing policy of non-consultation with the NOSB.

First, the Declaratory Judgment Act does not provide OTA with a cause of action to raise a claim for declaratory relief from any putative ongoing policy of non-consultation with the NOSB. The Request for Relief included in the TAC includes a demand for "a declaratory judgment pursuant to 28 U.S.C. § 2201(a),"—the Declaratory Judgment Act—"that the OFPA requires the Department to consult with the NOSB prior to amending existing organic livestock regulations, including the *OLPP*," TAC at 84, Request for Relief (b). To the extent that OTA suggests that the Declaratory Judgment Act itself provides OTA with a cause of action to press a claim for declaratory relief from a putative ongoing USDA policy of non-consultation with the NOSB, OTA

is mistaken. It is well established that "the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201" does not "provide a cause of action." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). *Accord Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007) (DJA "creates a remedy, not a cause of action"); *Davis v. Untied States*, 499 F.3d 590, 594 (6th Cir. 2007) (same).

Second, the TAC does not state an APA claim for declaratory relief from a putative ongoing USDA policy of non-consultation with the NOSB because that claim would not involve a challenge to a final agency action, as defined by the APA. Only "final agency action" is reviewable under the APA. 5 U.S.C. § 704. That requirement has two distinct parts. A plaintiff must seek judicial review of an "agency action" that must be "final." The APA defines the term "agency action" to include a specific "rule, order, license, sanction, relief, or the equivalent[.]" *Id.* § 551(13). The Act further defines each of these terms. *Id.* § 551(4) ("rule"), 551(6) ("order"), 551(8) ("license"), 551(10) ("sanction"), 551(11) ("relief"). Such an action must be a "discrete" action, as plaintiffs are prohibited from leveling a "broad programmatic attack," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), in which they are seeking "general judicial review of [an agency's] day-to-day operations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990). The issue is that, while construed expansively, the terms the APA defines as "agency action" do not permit judicial review of an ongoing general practice, to include any putative ongoing practice of non-consultation with the NOSB. Rather, "an on-going program or policy is not, in itself, a final agency action under the APA[.]" *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) (quoting *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001)).

OTA's recent submissions confirm that its claim for declaratory relief from a putative policy of non-consultation does not challenge a discrete agency action, as that term is defined by the APA, let alone final agency action. OTA's claim for declaratory relief does not seek relief from a specific "agency statement . . . designed to implement, interpret, or prescribe law or policy[,]" *See Biden v. Texas*, 597 U.S. 785, 810 (2022) (quoting 5 U.S.C. § 551(4)), but rather tries to impute such a policy from isolated actions. But the APA does not permit a plaintiff "to dress up . . . 'many individual actions' as a single decision in order to challenge all of them at once[.]" *Vought*, 149

F.4th at 784 (citation omitted). *See also Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) (holding plaintiffs challenged no agency action when they "point[ed] to no written rules, orders, or even guidance documents of the [agency] that set forth the supposed policies challenged here" and plaintiffs instead "appear to have attached a 'policy' label to their own amorphous description of the [agency's] practices."). The putative ongoing policy that OTA describes in its opposition appears to be nothing more than OTA's way of referring to USDA conduct during a constellation of different discrete USDA rulemaking actions. *See* ECF No. 198 at 14-15 ("USDA has already proposed rescinding two other final rules regarding organic pet food and organic mushroom standards without consulting the NOSB. When combined with the failure to consult the NOSB prior to the *Withdrawal* and the *OLPS*, USDA has not met its burden of showing the unlawful policy of non-consultation has ended."). "[A]n APA challenge may not bundle together discrete actions in order to challenge them all together" in this manner. *Vought*, 149 F.4th at 789.

Third, the TAC does not state a claim for nonstatutory review of any putative ongoing USDA policy of non-consultation with the NOSB. "Courts have 'recognized a right to equitable relief' from executive action that is 'unauthorized by any law and in violation of the rights of the individual.'" *Glob. Health Council v. Trump*, 153 F.4th 1, 20 (D.C. Cir. 2025) (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 680 (2025)), *denying reh'g en banc*, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025). "'Because ultra vires review could become an easy end-run around the limitations of . . . judicial-review statutes,' the Supreme Court has strictly limited nonstatutory ultra vires review[.]" *Id.* (quoting *NRC*, 605 U.S. at 681). To prevail on such a claim, "the plaintiff must establish that (1) review is not expressly precluded by statute, (2) 'there is no alternative procedure for review of the statutory claim' and (3) the challenged action is 'plainly' in 'excess of [the agency's] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory.'" *Id.* (citation omitted).

At a minimum, any claim for nonstatutory review of a putative USDA policy of non-consultation fails because the APA provides an adequate procedure for review of the claim via review of discrete final agency actions, such as judicial review of each of the individual discrete

final rules that OTA contends would violate the OFPA without sufficient NOSB consultation. *See id.* at 21 n.18 ("To the extent that APA review may be available afterwards or on the basis of another statutory provision, that would provide an alternative procedure for review and thereby . . . foreclose [an] ultra vires claim."); 33 Wright & Miller's Federal Practice & Procedure Judicial Review § 8307 (2d ed. 2025 update) ("[I]f the APA or a special statutory review proceeding can provide adequate relief, an equitable remedy via nonstatutory review ought not be available.").

The APA's framers legislated against background principles from courts of equity and understood that, by creating an adequate statutory cause of action for judicial review, they were limiting the circumstances in which extraordinary equitable jurisdiction—available when there is no adequate alternative—could be invoked. To override that understanding and permit a plaintiff to bypass the APA's procedural requirements for judicial review would render those procedural limits surplusage. The APA's "consideration and hearing, especially of agency interests, was painstaking." *Wong Yang Sung v. McGrath*, 339 U.S. 33, 40 (1950). It "represents a long period of study and strife; it settles long-continued and hard-fought contentions, and enacts a formula upon which opposing social and political forces have come to rest[,]" and "contains many compromises[.]" *Id.* For example, those compromises require OTA to "direct its attack against some particular 'agency action' that causes it harm." *Lujan*, 497 U.S. at 891. "[T]he existence of the APA as a means for reviewing [Defendants'] actions at least implies that nonstatutory review is inappropriate." *Puerto Rico v. United States*, 490 F.3d 50, 60 (1st Cir. 2007) *see also Coal. for Competitive Elec., Dynegy, Inc. v. Zibelman*, 272 F. Supp. 3d 554, 566 (S.D.N.Y. 2017) ("The limited private right of action provided by [a statute] is by itself sufficient to establish that Congress intended to foreclose equitable" jurisdiction), *aff'd*, 906 F.3d 41 (2d Cir. 2018).

The case-by-case approach required by the APA "is the traditional, and remains the normal, mode of operation of the courts." *Lujan*, 497 U.S. at 894. Even if that approach is "frustrating" to OTA who seeks "across-the-board" declaratory relief, *see id.*, that does not make case-by-case APA review inadequate. *See Council of & for the Blind of Del. Cnty. Valley, Inc. v. Regan*, 709 F.2d 1521, 1532 (D.C. Cir. 1983) ("Even if we agreed that one nationwide suit would be *more*

*effective* than several [discrete] suits, that does not mean that the remedy provided by Congress is *inadequate*"); *see also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 752 (D.C. Cir. 1990) (holding that a "generalized action . . . against federal executive agencies lacks the requisite green light from the legislative branch" and that courts "may not . . . create the claim for relief").

The TAC's allegations with respect to the putative ongoing policy of non-consultation with the NOSB also fail to satisfy the third requirement for nonstatutory *ultra vires* review—that "the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (citation omitted). "The third requirement is especially demanding." *Id.* OTA's claim is now entirely unmoored from any discrete agency action dealing with a particular type of organic standard, like livestock. OTA seemingly argues that the statute imposes on USDA a duty to consult with the NOSB before taking any action regardless of context—even issuing proposed, not final, rules in areas outside of livestock to include "organic pet food and organic mushroom standards[.]" ECF No. 198 at 14-15. But, again, this Court has already concluded that it "cannot find a blanket requirement [in the statute] for USDA to consult with the Board [even] on livestock regulations[.]" *OTA*, 370 F. Supp. 3d at 114. And a district court in California similarly concluded that "there is no requirement that the Secretary consult with the NOSB before deciding to withdraw a particular rule." *Ctr. for Env't Health v. Perdue*, Case No. 18-cv-01763-RS, 2018 WL 9662437, at *7 (N.D. Cal. Aug. 21, 2018). "Even if one were to disagree with [this Court's and the California district court's] conclusion[s], the statutory argument falls well shy of" the standard necessary to state the type of blanket claim for declaratory relief that OTA now raises in its briefing. *See NRC*, 605 U.S. at 682.

## CONCLUSION

The Court should dismiss this case without prejudice.

DATED: December 8, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director

*/s/ Liam C. Holland*
LIAM C. HOLLAND
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

*Counsel for Defendants*