UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ORGANIC TRADE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-01875 (PLF) |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

OPINION

This matter is before the Court on the defendants' Motion to Dismiss the Third

Amended Complaint [Dkt. No. 194] and the plaintiff's Request for Leave to File Supplemental

Complaint [Dkt. No. 193].[1] Judge Rosemary Collyer said it best some six years ago: "This

---

[1]    The documents considered by the Court in connection with the pending motions include: Complaint for Declaratory and Injunctive Relief ("Compl.") [Dkt. No. 1]; First Amended Complaint ("FAC") [Dkt. No. 13]; Request for Leave to File Second Amended Complaint ("Mot. for Leave to File SAC") [Dkt. No. 34]; Second Amended Complaint ("SAC") [Dkt. No. 80]; Order dated October 4, 2018 ("Order Oct. 4, 2018") [Dkt. No. 74]; Order dated March 12, 2020 ("Order Mar. 12, 2020") [Dkt. No. 112]; Third Amended Complaint for Declaratory and Injunctive Relief ("TAC") [Dkt. No. 121]; Order dated May 27, 2021 ("Order May 27, 2021") [Dkt. No. 139]; Defendants' Motion for Voluntary Remand ("Mot. Remand") [Dkt. No. 142]; Notice of Voluntary Dismissal of Plaintiff's Fourth Claim for Relief in its Third Amended Complaint Under LCvR 7 ("Notice") [Dkt. No. 148]; Order dated March 30, 2022 ("Order Mar. 30, 2022") [Dkt. No. 169]; Joint Status Report dated October 29, 2024 ("Joint Status Rep. Oct. 29, 2024") [Dkt. No. 185]; Plaintiff's Request for Leave to File Supplemental Complaint [Dkt. No. 193]; Memorandum in Support of Plaintiff's Rule 15 Request for Leave to File a Supplemental Complaint ("Pl. Mot") [Dkt. No. 193-1]; Plaintiff's Proposed Supplemental Third Amended Complaint ("STAC") [Dkt. No. 193-2]; Defendants' Motion to Dismiss the Third Amended Complaint and Opposition to Plaintiff's Motion for Leave to File Supplemental Complaint ("Defs. Mot.") [Dkt. No. 194]; Reply Memorandum in Support of Plaintiff's Rule 15 Motion for Leave to File Supplemental Complaint ("Pl. Reply") [Dkt. No. 197]; Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss on Mootness Grounds ("Pl.

lawsuit represents the administrative process at its never-ending worst." Order Mar. 12, 2020.[2] In the nearly nine years in which this case has been pending, the Organic Trade Association (the "OTA") has amended its complaint three times, the parties have undertaken two rounds of summary judgment briefing, and the Court has twice remanded to the U.S. Department of Agriculture (the "USDA") for further rulemaking. Now, the OTA asks the Court to grant it leave to file yet another complaint in response to yet another final action by the USDA. Upon careful consideration of the parties' written submissions, the relevant authorities, and the record as a whole, the Court will grant the USDA's motion to dismiss and deny the OTA's request for leave to supplement its third amended complaint.

I. FACTUAL AND PROCEDURAL BACKGROUND

*A. The Organic Foods Production Act and the Organic Livestock and Poultry Practice Rule*

Congress enacted the Organic Foods Production Act of 1990 (the "OFPA") "to establish national standards governing the marketing of certain agricultural products as organically produced products"; "to assure consumers that organically produced products meet a consistent standard"; and "to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501. Consistent with those purposes, the OFPA requires the Secretary of Agriculture to "establish an organic certification program for producers and handlers of" organic agricultural products to ensure that those products are "produced and

---

Opp.") [Dkt. No. 198]; and Defendants' Reply in Support of Their Motion to Dismiss ("Defs. Reply") [Dkt. No. 199].

[2]     Judge Collyer was responsible for this case until she retired from the bench. The case was randomly reassigned to the undersigned on March 12, 2020.

2

handled in compliance with an organic plan" and, as a general matter, "without the use of synthetic chemicals." Id. §§ 6503(a); 6504(1), (3).

To support this undertaking, the OFPA requires the Secretary to "establish a National Organic Standards Board . . . to assist in the development of standards for substances to be used in organic production and to advise the Secretary on any other aspects of the implementation of [the OFPA]." 7 U.S.C. § 6518(a). The National Organic Standards Board (the "Board") has fifteen members appointed for staggered terms and drawn from a cross section of consumers, conservationists, scientists, and the organic agricultural industry. Id. § 6518(b), (d). Under the OFPA, "[t]he Board shall provide recommendations to the Secretary regarding the implementation" of that statute. Id. § 6518(k)(1).

Pursuant to the OFPA, the USDA has promulgated a series of rules regulating the care of organic livestock. As relevant here, in April 2016, the USDA published a proposed rule that sought to "amend the organic livestock and poultry production requirements by: adding new provisions for livestock handling and transport for slaughter and avian living conditions; and expanding and clarifying existing requirements covering livestock health care practices and mammalian living conditions." National Organic Program; Organic Livestock and Poultry Practices, 81 Fed. Reg. 21,956 (Apr. 13, 2016). On January 19, 2017, after receiving and considering public comments to the proposed rule, the USDA issued its final rule, titled the Organic Livestock and Poultry Practices Rule (the "OLPP Rule"). 82 Fed. Reg. 7,042 (Jan. 19, 2017). The purpose of the OLPP Rule was to provide "additional specificity and clarity to better ensure consistent compliance by certified organic operations" and "to assure consumers that organically produced products meet a consistent and uniform standard." Id. The OLPP

Rule was to take effect on March 20, 2017, and be fully implemented (with two exceptions) by March 20, 2018.  See id.

### B. The Delay Rules and the Withdrawal Rule

On January 20, 2017, the day of the first inauguration of President Trump, the Trump administration issued a moratorium mandating the reconsideration of all federal regulations finalized under the prior administration but not yet in effect at the time of the presidential transition.  See The White House, Memorandum for the Heads of Executive Departments and Agencies, 2017 WL 280678, at *1 (Jan. 20, 2017).  Adhering to that directive, in early February 2017, the USDA published a rule delaying the effective date of the OLPP Rule from March 20, 2017, until May 19, 2017 (the "February Delay Rule").  See 82 Fed. Reg. 9,967 (Feb. 9, 2017).  The USDA subsequently issued two additional delay rules in May and November 2017.  See 82 Fed. Reg. 21,677-01 (May 10, 2017) (the "May Delay Rule"); 82 Fed. Reg. 52,643 (Nov. 14, 2017) (the "November Delay Rule").

In September 2017, the OTA brought suit alleging that the February and May Delay Rules violated the OFPA and the Administrative Procedure Act (the "APA") by postponing the effective date of the OLPP Rule without consulting the Board and without proper notice and opportunity for public comment.  See Compl. ¶¶ 1-9.  The OTA sought vacatur of the February and May Delay Rules as well as declaratory and injunctive relief.  See id. ¶¶ 149-57. In December 2017, the OTA amended its complaint to include allegations regarding the November Delay Rule.  See FAC.

In March 2018, the USDA published a final rule withdrawing the OLPP Rule (the "Withdrawal Rule").  See 83 Fed. Reg. 10,775 (Mar. 13, 2018).  The USDA acknowledged that the organic industry strongly supported the OLPP Rule, see id., but it maintained that the

Withdrawal Rule was necessary for two reasons.  First, the USDA questioned its statutory authority to promulgate regulations centered around "stand-alone concerns about animal welfare."  Id. at 10,776.  Second, after revisiting the regulatory impact analysis underlying the OLPP Rule, the USDA determined that the costs of the rule outweighed its potential benefits and that no "significant market failure" had been identified to justify it, meaning that even if the USDA had the authority to regulate stand-alone concerns about animal welfare, it would choose not to do so as a matter of policy.  Id. at 10,779-82.

*C. The First Motion to Dismiss and the Voluntary Remands*

In April 2018, the OTA moved for leave to amend its complaint for a second time.  See Order Oct. 4, 2018.  Along with its leave motion, the OTA submitted a proposed second amended complaint that alleged: in Count I, that the Delay Rules were arbitrary and capricious and in excess of statutory authority; in Count II, that the Withdrawal Rule was arbitrary and capricious and in excess of statutory authority; and in Count III, that the Delay Rules and the Withdrawal Rule violated the OFPA because the USDA did not engage in prior consultation with the Board.  See SAC.  The USDA moved to dismiss the entire complaint for lack of subject matter jurisdiction and Counts I and III for failure to state a claim.  See Organic Trade Ass'n v. U.S. Dep't of Agric. ("OTA I"), 370 F. Supp. 3d 98, 105 (D.D.C. 2019).  Judge Collyer granted the OTA leave to amend in October 2018.  See Order Oct. 4, 2018.

Shortly thereafter, in February 2019, Judge Collyer granted the USDA's motion to dismiss in part and denied it in part based on three determinations.  See OTA I, 370 F. Supp. 3d at 115.  First, Judge Collyer rejected the USDA's argument that the Court lacked subject matter jurisdiction, holding that the OTA had established associational standing to sue on behalf of its members.  See id. at 106-11.  Second, Judge Collyer determined that the OTA's

challenges to the Delay Rules were moot because the Withdrawal Rule superseded them, and the "capable of repetition, yet evading review" exception to mootness was not implicated. Id. at 111-13. She therefore dismissed Count I. See id. at 113. Third, based on the briefing before her, Judge Collyer declined to decide whether the USDA should have consulted with the Board prior to issuing the Withdrawal Rule. See id. at 114-15. She therefore did not dismiss Count III with respect to that rule. See id. The parties then commenced summary judgment proceedings.

In March 2020, Judge Collyer granted the USDA's motion to stay the summary judgment proceedings and for a voluntary remand, which the agency had requested "to correct a series of admitted flaws in the cost/benefit analysis in the OLPP Rule that were carried over into the Withdrawal Rule." Order Mar. 12, 2020. In September 2020, after seeking public comment, the USDA issued a final decision concluding that the regulatory impact analyses underlying the OLPP Rule and Withdrawal Rule were "seriously flawed and thus did not produce a reliable projection of costs and benefits." 85 Fed. Reg. 57,937, 57,943 (Sep. 17, 2020). The USDA stated that it did not intend to prepare another regulatory impact analysis because it did not believe the OFPA granted the agency authority to issue the OLPP Rule in the first place. Id. In November 2020, the OTA filed a third amended complaint that added Count IV, alleging that the USDA's proceedings to rescind the OLPP Rule, including on remand, were unlawful because they were "tainted by an irrevocably closed mind." TAC ¶ 277. The OTA voluntarily dismissed Count IV in July 2021. See Notice.

Following the inauguration of President Biden in January 2021, the parties jointly moved to stay the proceedings to explore a potential settlement. See Organic Trade Ass'n v. U.S. Dep't of Agric. ("OTA II"), Civil Action No. 17-1875 (PLF), 2022 WL 951335, at *3 (D.D.C. Mar. 30, 2022). The parties failed to reach an agreement, and the Court entered a

scheduling order to govern summary judgment briefing.  See Order May 27, 2021.  The Court

made clear, however, that if "the United States wishes to file a motion for voluntary remand, it

may do so at any time."  Id.  In June 2021, the USDA did just that, filing a motion for a

voluntary remand to "reconsider the prior Administration's interpretation [in the Withdrawal

Rule]" that the OFPA did not authorize the issuance of the OLPP Rule.  Mot. Remand (alteration

in original).  The Court granted the USDA's motion in March 2022, concluding that remand

would allow the agency to "revisit the issues in this case on its own initiative, through further

rulemaking" and that remand would not unduly prejudice the OTA.  OTA II, 2022 WL 951335,

at *5-8.  The Court simultaneously denied the parties' cross-motions for summary judgment as

moot.  Id. at *9.  In addition, the Court ordered the parties to submit regular status reports to keep

it updated on the USDA's rulemaking on remand.  See Order Mar. 30, 2022.

### D. The Organic Livestock Poultry Standards Rule and the Instant Motions

In November 2023, the USDA published a final rule, titled the Organic Livestock

and Poultry Standards Rule (the "OLPS Rule").  See 88 Fed. Reg. 75,394 (Nov. 2, 2023).  The

OLPS Rule was "the culmination of a rulemaking on remand that sought to address 'topics that

were the subject of the OLPP [F]inal [R]ule,' and at issue in this litigation."  Joint Status Rep.

Oct. 29, 2024.  The OLPS Rule reinstated much of the OLPP Rule by enacting "provisions for

livestock handling and transport, slaughter, and avian (poultry) living conditions; and expanding

and clarifying existing requirements covering livestock care and production practices and non-

avian living conditions."  88 Fed. Reg. at 75,394; see also Pl. Opp. at 9 (acknowledging that the

OLPS Rule "differ[s] only very slightly from the 2017 OLPP" Rule).  The OLPS Rule went into

effect on January 2, 2024, and was fully implemented by January 2, 2025, with three exceptions.

See 88 Fed. Reg. at 75,394.  The excepted operations are required to comply fully with the OLPS Rule by January 2029.  See id.

On June 23, 2025, following the parties' unsuccessful attempt at settlement, the OTA filed a motion for leave to supplement its third amended complaint to add Count V, alleging that the implementation deadlines outlined in the OLPS Rule are arbitrary and capricious and that the USDA failed to consult with the Board before issuing the rule, in violation of the OFPA.  See Pl. Mot.; STAC at 88-90.  On July 28, 2025, the USDA filed a motion to dismiss the third amended complaint as moot and an opposition to the OTA's request for leave to supplement.  See Defs. Mot.  The OTA filed an opposition and reply on September 15, 2025, see Pl. Opp; Pl. Reply, and the USDA filed a reply on December 8, 2025, see Defs. Reply.  The parties' motions are now ripe for decision.

## II. MOTION TO DISMISS

The USDA has moved to dismiss the OTA's third amended complaint, arguing that the issuance of the OLPS Rule has mooted the OTA's claims regarding the Withdrawal Rule.  The USDA further contends that the OTA has not established that an exception to mootness applies.  The Court agrees and therefore must dismiss the complaint.

### A. Legal Standard

Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3); see Phx. Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv., Civil Action No. 19-00788 (APM), 2020 WL 2044000, at *3 (D.D.C. Apr. 28, 2020).  Mootness deprives the Court of subject matter jurisdiction.  See Ruseva v. Rosenberg, 490 F.

Supp. 3d 320, 322 (D.D.C. 2020).  The mootness doctrine "limits federal courts to deciding 'actual, ongoing controversies,'" meaning that "[e]ven where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (first quoting Honig v. Doe, 484 U.S. 305, 317 (1988); and then quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)); see also Pub. Citizen, Inc. v. FERC, 92 F.4th 1124, 1127-28 (D.C. Cir. 2024).  "A case becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)).  But an "exception to that rule" may exist "for cases in which a party voluntarily ceases the challenged activity."  Pub. Citizen, Inc. v. FERC, 92 F.4th at 1128.

### B. Discussion

The USDA argues that the claims pressed by the OTA in its operative complaint—the third amended complaint—are moot, meaning that the Court lacks Article III jurisdiction over this litigation.  See Defs. Mot. at 1.  Because Judge Collyer dismissed Count I, and the OTA voluntarily withdrew Count IV, only Counts II and III are before the Court.  See Pl. Mot. at 2.  In Count II, the OTA asserts that the Withdrawal Rule is arbitrary and capricious and in excess of statutory authority.  See TAC ¶¶ 258-268.  In Count III, the OTA alleges that the Withdrawal Rule is contrary to the OFPA because the USDA issued it without first consulting the Board.  See id. ¶¶ 269-275.  The OTA seeks vacatur of the Withdrawal Rule as well as declaratory and injunctive relief.  See id. at 84-85.

9

It is established in this circuit that an agency's replacement of a challenged regulation renders a lawsuit challenging the original regulation moot.  See Alaska v. U.S. Dep't of Agric., 17 F.4th 1224, 1226 (D.C. Cir. 2021) ("A well-settled principle of law is this: when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot." (citation modified)); Akiachak Native Cmty. v. U.S. Dep't of Interior ("Akiachak"), 827 F.3d 100, 113-14 (D.C. Cir. 2016) (collecting cases); Citizens for Responsibility & Ethics in Wash. v. Pompeo, Civil Action No. 19-3324 (JEB), 2020 WL 5748105, at *8 (D.D.C. Sep. 25, 2020).  Indeed, the Court applied that principle in this very case when it dismissed Count I as moot.  See OTA I, 370 F. Supp. 3d at 113 ("The Court concludes that OTA's complaint against the Delay Rules is moot and no longer presents an Article III case or controversy.").  The USDA argues that this case presents a straightforward application of that settled principle of law: the OLPS Rule supersedes the Withdrawal Rule, so the litigation over the legality of the latter is moot.  See Defs. Mot. at 3-5; see also Alaska v. U.S. Dep't of Agric., 17 F.4th at 1226.

In the OTA's view, the mootness inquiry is not so straightforward.  Although the OTA concedes "that the OLPS [Rule] supersedes the Withdrawal [Rule] in some respects," Pl. Opp. at 11, the OTA maintains that it may continue to challenge the Withdrawal Rule.  Its primary contention appears to be that the Withdrawal Rule remains in effect because the USDA has "failed to vacate, revoke or rescind" it.  Id. at 15.  That contention is premised on the absence of an express statement in the OLPS Rule announcing the revocation of the Withdrawal Rule.  See id. (quoting memorandum cited in Biden v. Texas, 597 U.S. 785, 808 (2022), in which the Secretary of Homeland Security stated, "I hereby supersede and rescind the June 1 memorandum.").  To be sure, there is no explicit statement in the OLPS Rule that the

Withdrawal Rule has been vacated, revoked, or rescinded.  See 88 Fed. Reg. at 75,394.

Nevertheless, the Court agrees with the USDA that the Withdrawal Rule is no longer in effect.

The Withdrawal Rule expressly rescinded provisions of Part 205 of Title 7 of the

Code of Federal Regulations that were inserted via the OLPP Rule in January 2017.  See 83 Fed.

Reg. at 10,775 ("This final rule withdraws the Organic Livestock and Poultry Practices final rule

published in the Federal Register on January 19, 2017 . . . ."); 82 Fed. Reg. at 7,088 ("For the

reasons set forth in the preamble, 7 CFR part 205 is amended as follows . . . .").  It is undisputed

that the OLPS Rule substantively revises that same part of the Code of Federal Regulations.

See 88 Fed. Reg. at 75,394 ("The Organic Livestock and Poultry Standards (OLPS) final rule

amends the USDA organic regulations (7 CFR part 205) related to the production of livestock,

including poultry, marketed as organic."); see Pl. Opp. at 9 (observing that the OLPS Rule

"differ[s] only very slightly from the 2017 OLPP [Rule]").  Indeed, the OTA does not point to a

single regulatory provision that was initially impacted by the Withdrawal Rule but not affected

by the issuance of the OLPS Rule.  See Nat'l Min. Ass'n v. U.S. Dep't of Interior, 251

F.3d 1007, 1010 (D.C. Cir. 2001) (explaining that "to determine whether anything remains of

[the plaintiff's] case" the court must "identify which regulations [the plaintiff] challenged and

whether the new rules altered those regulations").  Stated differently, although the OTA insists

that the OLPS Rule does not entirely supersede the Withdrawal Rule, it fails to identify anything

that remains of the Withdrawal Rule.

It follows that since its promulgation, the OLPS Rule—not the Withdrawal

Rule—has governed the regulated entities.  The Court therefore "has no power to effectuate the

injunctive relief sought" by the OTA in its third amended complaint, "and any opinion on the

lawfulness of the [Withdrawal Rule] would be improperly advisory."  Am. Forest Res. Council

11

v. Williams, Civil Action No. 21-601 (RJL), 2022 WL 2290536, at *3 (D.D.C. June 24, 2022), aff'd, 96 F.4th 417 (D.C. Cir. 2024).  Furthermore, because the Withdrawal Rule is no longer in force, "there is nothing for the Court to vacate." Clean Water Action v. Pruitt, 315 F. Supp. 3d 72, 86-87 (D.D.C. 2018).  The Court thus cannot afford the OTA the relief it seeks in the operative complaint.

The OTA makes a related argument that the issuance of the OLPS Rule has not "completely resolved [the] OTA's challenges" to the Withdrawal Rule.  Pl. Opp. at 14 (emphasis omitted).  Specifically, the OTA points to the allegation in its third amended complaint that the USDA failed to consult the Board prior to the issuance of the Withdrawal Rule, in violation of the OFPA.  The OTA now asserts that the Board similarly was not consulted before the OLPS Rule was issued.  See id. at 12-15.  In the OTA's telling, this means that the "USDA has not met its burden of showing [its] unlawful policy of non-consultation has ended." Id. at 15.

The OTA is correct that "if a plaintiff challenges both a specific agency action and the policy that underlies that action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot." City of Houston v. Dep't of Hous. & Urb. Dev. ("City of Houston"), 24 F.3d 1421, 1428 (D.C. Cir. 1994).  That said, the Court agrees with the USDA that the OTA does not allege the existence of an ongoing policy of non-consultation in the third amended complaint.  See Defs. Reply at 10.  To the contrary, the OTA alleges a longstanding policy of consultation with the Board that did not occur with respect to specific agency actions—namely, the Delay Rules and the Withdrawal Rule.  City of Houston, 24 F.3d at 1428.  For example, the third amended complaint states that "[s]ince the creation of the [Board] and the inception of the National Organic Program, [the] USDA has observed a well-settled practice of publishing proposed and final organic livestock standards

12

solely upon the receipt and consideration of recommendations from the [Board] following significant public input."  TAC ¶ 272; see also Pl. Opp. at 13 (contending that each "declaration[] appended to the [third amended complaint] . . . attests to the well settled consultative practice that prevailed before the Withdrawal [Rule]").  The USDA apparently adhered to that well-settled practice with respect to the OLPP Rule.  See TAC ¶¶ 111-14.  But the OTA asserts that the USDA later departed from that practice: specifically, the USDA "failed to consult with the [Board]" on the Delay Rules and "the proposed and final [Withdrawal Rules]."  Id. ¶ 273.

The first mention of this asserted "unlawful policy of non-consultation" appears in the OTA's opposition to the USDA's motion to dismiss the third amended complaint.  There, the OTA asserts that "[a]s noted in the Factual Background section herein, [the] USDA has already proposed rescinding two other final rules regarding organic pet food and organic mushroom standards without consulting the [Board]."  Pl. Opp. at 14-15.[3]  "When combined with the failure to consult the [Board] prior to the Withdrawal [Rule] and OLPS [Rule]," the OTA continues, those proposed rescissions demonstrate an ongoing "unlawful policy of non-consultation."  Id. at 15.  Setting aside whether those factual assertions come close to plausibly alleging an ongoing policy of non-consultation by the USDA, the OTA cannot raise a challenge to an agency policy for the first time in an opposition brief.  See Planned Parenthood of Wis., Inc. v. Azar, 942 F.3d 512, 516-17 (D.C. Cir. 2019) (rejecting "the plaintiffs['] attempt to recast their suit as challenging ongoing [agency] policies" because "the plaintiffs first alleged an

_____

[3]    The Factual Background section of the OTA's opposition to the USDA's motion to dismiss on mootness grounds does not appear to include the referenced factual assertions.  See Pl. Opp. at 4-10.  The OTA may have intended to reference the Factual Background section of its reply in support of its Rule 15 motion for leave to file a supplemental complaint.  See Pl. Reply at 4.

ongoing policy in the final footnote of their opening appellate brief"); Ctr. for Biological Diversity v. Raimondo, Civil Action No. 18-112 (JEB), 2024 WL 324103, at *6 (D.D.C. Jan. 29, 2024) ("While it is undoubtedly true that a challenge to a policy is not necessarily mooted merely because the challenge to the particular agency action is moot, Plaintiffs have alleged no such policy.  Not in Count VI and not elsewhere." (citation modified)), appeal dismissed, No. 24-5071, 2024 WL 2061696 (D.C. Cir. May 3, 2024).[4]

The OTA also appears to suggest that the Withdrawal Rule is still in effect and can be invalidated by this Court because the rule sets future effective and final implementation dates.  See Pl. Opp. at 15 ("[A]bsent judicial intervention the harmful consequences of the 2018

---

[4]    Even if the OTA had alleged an ongoing policy of non-consultation in its third amended complaint, the Court is not persuaded that such a "claim is ripe for review." City of Houston, 24 F.3d at 1431.  In determining whether a case is ripe, courts "generally evaluate two factors: '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" Conservation Force, Inc. v. Jewell, 733 F.3d 1200, 1206 (D.C. Cir. 2013) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).  The former "element is dispositive" here. Id.  Indeed, this case is entirely similar to City of Houston itself. There, although the plaintiff's claim for specific monetary relief stemming from a grant reduction was moot, the plaintiff requested a declaration that the agency was "required to provide notice and an opportunity for a hearing before reducing a grantee's [grant award]" in similar cases going forward. City of Houston, 24 F.3d at 1431.  The court of appeals rejected that request, concluding that there was "no way for [the] court to consider whether [the agency] can act without a hearing in some amorphous category of 'cases such as this one,' because the actual contours of the cases within the category are potentially determinative of their outcome." Id. at 1431.  The court observed that the "case would be quite different if, for example, [the agency] announced a firm policy, applicable in all cases." Id.  The court of appeals' reasoning applies here with force.  This Court previously has observed that "[t]he OFPA describes [the] USDA's consultation obligations with varying degrees of specificity" and thus has declined to hold that the OFPA contains a "blanket requirement for [the] USDA to consult with the Board on livestock regulations." OTA I, 370 F. Supp. 3d at 114.  And the OTA points to no rule, guidance, or other similarly firm statement by the USDA outlining the parameters of a narrower alleged policy of non-consultation.  The Court thus discerns no way for it to determine the USDA's consultation obligations on a forward-looking basis because the "contours of the cases" in which such an obligation might arise "are potentially determinative of their outcome." City of Houston, 24 F.3d at 1431; see id. ("Here, . . .  we are presented with a situation in which we require a concrete dispute in order to even know what [the agency's] policy is.").

Withdrawal [Rule] on competition and consumer protection will continue until 2029.").  To the USDA's point, this suggestion evinces a misunderstanding of the effect of agency rulemaking. See Defs. Reply at 8.  The court of appeals has explained that "a duly prescribed rule is law even if it sets a future effective date."  Humane Soc'y of the U.S. v. U.S. Dep't of Agric., 41 F.4th 564, 572 (D.C. Cir. 2022); see also Nat'l Council of Agric. Emps. v. U.S. Dep't of Lab., 143 F.4th 395, 406 (D.C. Cir. 2025) ("A final rule is prescribed when it is established authoritatively . . .  [and] [t]hat occurs when the rule is duly fixed and so becomes binding on the public, even if it sets a future effective date." (citation modified)).  The OLPS Rule thus became binding law the moment it was duly fixed, notwithstanding that it did not take effect until January 2, 2024.  See 88 Fed. Reg. at 75,394.  In any event, the effective date of the OLPS Rule has come and gone.  The OTA therefore is wrong to suggest that the OLPS Rule is not yet "law" such that the Withdrawal Rule continues to have legal effect.  See Humane Soc'y of the U.S. v. U.S. Dep't of Agric., 41 F.4th at 572.

Persisting still, the OTA contends that even if its third amended complaint is moot, it should not be dismissed because the "voluntary cessation" exception to mootness applies.  See Pl. Opp. at 14.[5]  "As a general rule, a defendant's 'voluntary cessation of allegedly illegal conduct does not deprive [a court] of power to hear and determine the case.'"  Cierco v. Mnuchin, 857 F.3d 407, 414 (D.C. Cir. 2017) (alteration in original) (quoting City of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).  Rather, voluntary cessation will moot a case only if "there is no reasonable expectation that the alleged violation will recur and interim relief or

---

[5]    The OTA does not invoke the "capable of repetition, yet evading review" exception to mootness, so the Court will not address it.  The Court also notes that the OTA's "voluntary cessation" argument is underdeveloped and largely overlaps with the OTA's contention that it has challenged and ongoing policy of non-consultation.  The Court nonetheless will explain why it finds the exception inapplicable.

events have completely and irrevocably eradicated the effects of the alleged violation."

Id. at 414-15 (citation modified); see also Pub. Citizen, Inc. v. FERC, 92 F.4th at 1128 ("When

the [voluntary cessation] exception applies, the case remains live unless it is 'absolutely clear the

allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting Friends of the

Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 190 (2000))).  This exception "is

grounded in concerns that a party may be manipulating 'the judicial process through the false

pretense of singlehandedly ending a dispute.'" Pub. Citizen, Inc. v. FERC, 92 F.4th at 1128

(quoting Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 920 F.3d 1, 15 (D.C.

Cir. 2019) (per curiam)).

The voluntary cessation exception is not implicated with respect to the agency

action challenged in the third amended complaint.  For one, it is questionable whether the

USDA's reconsideration of the Withdrawal Rule was in fact voluntary in light of the Court's

entry of a remand order with instructions to consider further the issues presented in this

litigation, albeit that the remand was at the USDA's request.  See Order Mar. 30, 2022; cf.

Alaska v. U.S. Dep't of Agric., 17 F.4th at 1227 (explaining that "there was nothing 'voluntary'

about the federal agency's ceasing to apply" a regulatory provision that was "vacated and set

aside").  In any event, there is no reasonable expectation that the USDA will resume its allegedly

unlawful conduct.  See Cierco v. Mnuchin, 857 F.3d at 414.  This is not "a situation in which the

agency voluntarily ceased an informal action but might reinstate the same action at any time."

Clean Water Action v. Pruitt, 315 F. Supp. 3d at 87.  The USDA enacted the OLPS Rule upon

"deliberation via full notice-and-comment rulemaking." Id.  The notion that the USDA might at

some point rescind the OLPS Rule and reissue the Withdrawal Rule without consulting the

Board is purely speculative.  "But such speculation is insufficient to establish that the challenged

16

[rule] will likely recur."  Id. at 88; see Alaska v. U.S. Dep't of Agric., 17 F.4th at 1229 (declining to apply the voluntary cessation exception when doing so "would require [the court] to speculate about future actions by policymakers").  Moreover, intervening events have completely eradicated the effects of the allegedly unlawful Withdrawal Rule.  As explained above, because the Withdrawal Rule was replaced by the duly issued OLPS Rule, the former is "now devoid of any legal effect."  Clean Water Action v. Pruitt, 315 F. Supp. 3d at 89 (quoting Coal. of Airline Pilots Ass'ns v. FAA, 370 F.3d 1184, 1191 (D.C. Cir. 2004)).  To the extent that the OTA suffers any harm from the USDA's alleged failure to consult with the Board or "from the modified compliance deadlines going forward, the harmful effects will stem from the [OLPS Rule], not the [Withdrawal Rule]."  Id.

In short, the claims advanced in the OTA's third amended complaint are moot, and the OTA has not established that a mootness exception applies.  The Court therefore must dismiss the third amended complaint.

## III. REQUEST FOR LEAVE TO SUPPLEMENT

The OTA seeks to file a supplemental third amended complaint realleging its pending challenges to the Withdrawal Rule and adding a new challenge to the OLPS Rule.  See STAC; Pl. Mot.  For the reasons explained above, the OTA's challenges in the third amended complaint that are realleged in the supplemental complaint are moot.  And as explained below, permitting the OTA to supplement its complaint with the proposed new challenge would unduly delay and alter the scope of this litigation.  The Court therefore will exercise its discretion to deny the OTA's request for leave to supplement.

*A. Legal Standard*

An addition to a pleading may be an "amendment" under Rule 15(a) or a "supplement" under Rule 15(d) of the Federal Rules of Civil Procedure.  The distinction "is in most instances of little moment," but an amendment "typically rest[s] on matters in place <u>prior to</u> the filing of the original pleading," while the "distinguishing feature of [a supplement] is that it sets forth 'transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'"  <u>United States v. Hicks</u>, 283 F.3d 380, 385 (D.C. Cir. 2002) (quoting FED. R. CIV. P. 15(d)).  To be more precise, Rule 15(d) is used to present "new facts that update the original pleading or provide the basis for additional relief; to put forward new claims or defenses based on events that took place after the original complaint or answer was filed; [and] to include new parties where subsequent events have made it necessary to do so."  <u>Competitive Enter. Inst. v. McCarthy</u>, Civil Action No. 21-1238 (CKK), 2021 WL 9937858, at *2 (D.D.C. Oct. 7, 2021) (alteration in original) (quoting <u>Thorp v. District of Columbia</u>, 325 F.R.D. 510, 513 (D.D.C. 2018)).  Because the OTA seeks to add claims challenging a rule promulgated after the third amended complaint was filed, the OTA's request is best considered as a motion for leave to supplement governed by Rule 15(d).

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading" and "may order that the opposing party plead to the supplemental pleading."  FED. R. CIV. P. 15(d).  "While both the decision whether to allow amendment and supplementation are within the discretion of the district court, the plain text of Rule 15(d) suggests the district court has wider discretion to deny supplementation than leave to amend."  <u>Powder River Basin Res. Council v. U.S. Dep't of the Interior</u> ("<u>Powder River Basin</u>"), Civil Action No. 22-2696 (TSC), 2026 WL 555013, at *9

18

(D.D.C. Feb. 27, 2026) (citation omitted); see also Clean Water Action v. Pruitt, 315 F. Supp. 3d at 80 ("The plain text of Rule 15(d) . . . permits a court to grant leave to supplement, but imposes no standard requiring a court to do so."); Thorp v. District of Columbia, Civil Action No. 15-195 (JEB), 2016 WL 10833538, at *2 (D.D.C. Apr. 12, 2016) ("[T]he court has broad discretion in determining whether to allow supplemental pleadings in the interests of judicial economy and convenience." (quoting The Fund For Animals v. Hall, 246 F.R.D. 53, 54 (D.D.C. 2007))). Motions for leave to supplement "are to be 'freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" Hall v. CIA, 437 F.3d 94, 101 (D.C. Cir. 2006) (quoting WRIGHT, MILLER, & KANE, FEDERAL PRACTICE & PROCEDURE § 1504 (3d ed. 2010)). By contrast, leave to supplement "'should be denied' when 'the complaint, as amended, would radically alter the scope and nature of the case.'" Powder River Basin, 2026 WL 555013, at *9 (quoting Miss. Ass'n of Coops. v. Farmers Home Admin., 139 F.R.D. 542, 544 (D.D.C. 1991)).

### B. Discussion

The Court determines that permitting the OTA to file a supplemental complaint to challenge the OLPS Rule would not enhance "the economic and speedy disposition of the entire controversy" and would "prejudice the rights" of the USDA. Hall v. CIA, 437 F.3d at 101. The third amended complaint challenges a specific agency action—namely, the issuance of the Withdrawal Rule. In response to that challenge, the USDA compiled and produced the relevant administrative record in 2020, the parties filed and briefed cross-motions for summary judgment, and the Court disposed of those motions by remanding to the agency to "revisit the issues in this case on its own initiative, through further rulemaking." OTA II, 2022 WL 951335, at *5; see

19

also id. at \*1.  The USDA has undertaken that rulemaking and has promulgated the OLPS Rule, which supersedes the Withdrawal Rule.  See Joint Status Rep. Oct. 29, 2024 (explaining that the OLPS Rule was "the culmination of a rulemaking on remand that sought to address 'topics that were the subject of the OLPP [F]inal [R]ule,' and at issue in this litigation").  The new rule thus moots the "controversy" presented in the operative complaint, and the present action properly is disposed of on that basis.

Because the third amended complaint is moot, "permitting the [OTA] to supplement would effectively swap the current complaint for an entirely new complaint."  Clean Water Action v. Pruitt, 315 F. Supp. 3d at 85.  The Court struggles to see how allowing the OTA to use supplementation in this way—essentially to start from scratch under the same case caption—would bring about "the economic and speedy disposition of" the matter currently before it.  Hall v. CIA, 437 F.3d at 101.  To the contrary, such substitution of complaints would only further "unduly delay and alter the scope of" this already interminable litigation.  Clean Water Action v. Pruitt, 315 F. Supp. 3d at 85; see Miss. Ass'n of Coops. v. Farmers Home Admin., 139 F.R.D. at 544 (denying leave to amend because it "would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action" but rather would "permit plaintiff to transform their case into something entirely new").  That determination is reinforced by the fact that the OLPS Rule is based on decisional documents that are specific to it, which the USDA would need to compile and produce in response to the OTA's challenge.  The OTA's proposed claim thus "would necessitate yet another round of briefing based on a different administrative record."  Clean Water Action v. Pruitt, 315 F. Supp. 3d at 84; see also City of Williams v. Dombeck, 203 F.R.D. 10, 11 (D.D.C. 2001) (denying leave to amend in part because the time needed to compile the administrative record and brief "yet another round" of dispositive

20

motions "would delay resolution of the case"); cf. Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs, Civil Action No. 20-103 (RDM), 2021 WL 14929, *2 (D.D.C. 2021) (declining to retain jurisdiction on remand and observing that "any post-remand proceedings in this case will necessarily focus on the action the [agency] takes on remand" and that "the case would likely need to start from scratch with a new final agency action, a new complaint, and a new administrative record").

The OTA offers a few reasons why it should be granted leave to supplement its third amended complaint, but the Court is not persuaded. For one, the OTA contends that it "has alleged ongoing harm" stemming from the USDA's alleged failure to consult with the Board on the Withdrawal Rule and that dismissing this case would not "facilitate a disposition on the merits" of that allegation. Pl. Reply at 8-9. But the Court has already explained that the OTA has not in fact alleged an ongoing policy of non-consultation in its third amended complaint or otherwise established such "ongoing harm." Instead, as noted above, any harmful effects of the USDA's alleged non-consultation with the Board "will stem from the [OLPS Rule], not the [Withdrawal Rule]." Clean Water Action v. Pruitt, 315 F. Supp. 3d at 89. Further, the OTA asserts that it will be prejudiced if its request for leave to supplement is denied because it will have to bring a separate action, which will add expense and delay the resolution of its challenge to the OLPS Rule. See Pl. Reply at 7-8, 15. Though it undoubtedly would be inconvenient for the OTA to file a new suit, "[t]his form of inconvenience is not something uncommon to federal litigation" and "is not the type of inconvenience that implicates the principles of fairness and judicial economy that justify" granting leave to file a supplemental pleading. Cause of Action Inst. v. U.S. Dep't of Just., 282 F. Supp. 3d 66, 76 (D.D.C. 2017). Moreover, "the desire to avoid filing fees is no justification for maintaining a single case as an ongoing forum for raising

21

a perpetual series of . . . disputes with an agency." Sai v. Transp. Sec. Admin., 155 F. Supp. 3d 1, 8 (D.D.C. 2016). Finally, the OTA gestures toward a need to "avoid the dismissal of potentially meritorious claims due to procedural missteps." Pl. Mot. at 6 (quoting Aftergood v. CIA, 225 F. Supp. 2d 27, 30 (D.D.C. 2002)). The OTA has not, however, identified any such "procedural misstep," nor has it suggested that it would be unable to file a complaint against the OLPS Rule in a new suit.

The Court therefore will exercise its discretion pursuant to Rule 15(d) to deny leave to supplement the complaint. The OTA remains free to challenge the OLPS Rule by filing a new lawsuit. See Akiachak, 827 F.3d at 113-14 ("If new considerations provide a basis for challenging the validity of significantly different superseding regulations that now are in effect, that can appropriately be done in a new suit." (quoting Gulf Oil Corp. v. Simon, 502 F.2d 1154, 1156 (Temp. Emer. Ct. App. 1974))); New York v. Raimondo, Civil Action No. 19-09380, 2021 WL 1339397, at *3 (S.D.N.Y. Apr. 9, 2021) ("Although this case is moot, Plaintiffs are not without recourse. Where, as here, a new regulation moots an action, the challenger can cure its mootness problem by simply starting over again—by challenging the regulation currently in force." (citation modified) (quoting Akiachak, 827 F.3d at 113-14)).

22

## IV. CONCLUSION

For the foregoing reasons, the Court will GRANT the defendants' Motion to Dismiss the Third Amended Complaint [Dkt. No. 194] and DENY the plaintiff's Request for Leave to File Supplemental Complaint [Dkt. No. 193]. An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 5/5/26

23